David R. Shoop, Esq. (SBN 220576)
Thomas S. Alch, Esq. (SBN 136860)
**SHOOP | A PROFESSIONAL LAW CORPORATION**
9701 Wilshire Blvd., Suite 950
Beverly Hills, California 90212
Telephone: (310) 620-9533
David.shoop@shooplaw.com
Thomas.alch@shooplaw.com

Perry L. Segal (SBN 250947)
**Charon Law**
303 Twin Dolphin Drive, Suite 600
Redwood City, California 94065-1422
(650) 542-7935
perry.segal@charonlaw.com

Jason P. Sultzer, Esq.*
Mindy Dolgoff, Esq.*
**THE SULTZER LAW GROUP P.C.**
270 Madison Avenue, Suite 1800
New York, NY 10016
Telephone: (212) 969-7810
sultzerj@thesultzerlawgroup.com
dolgoffm@thesultzerlawgroup.com
***Admitted Pro Hac Vice***

Jeffrey K. Brown, Esq. *
Michael A. Tompkins, Esq.*
**Leeds Brown Law, P.C.**
One Old Country Road, Suite 347
Carle Place, NY 11514
Telephone: (516) 873-9550
jbrown@leedsbrownlaw.com
mtompkins@leedsbrownlaw.com

*Counsel for Plaintiff and the Putative Class*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIANNA ARREDONDO, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>THE UNIVERSITY OF LA VERNE,<br><br>Defendant. | Case No. 2:20-cv-07665-MCS-RAOx<br><br>Hon. Mark C. Scarsi, U.S.D.J.<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**<br><br>Date: January 3, 2022<br>Time: 9:00 a.m.<br>Crtrm: 590, 5th Floor |

PLAINTIFF'S NOTICE OF MOTION FOR CLASS CERTIFICATION

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

I. NATURE OF THE CASE ...................................................................................3

II. STANDARD FOR CLASS CERTIFICATION ....................................................6

III. THE PROPOSED CLASS MEETS THE REQUIREMENTS OF Rule 23(a)....8

  A. RULE 23(a)(1) – NUMEROSITY........................................................8

  B. RULE 23(a)(2) – COMMONALITY................................................9

  C. RULE 23(a)(3) – TYPICALITY.......................................................12

  D. RULE 23(a)(4) – ADEQUACY OF REPRESENTATION ............................17

IV. THE PROPOSED CLASS MEETS THE REQUIREMENTS OF 23(b)(3).....19

V. PREDOMINANCE ........................................................................................20

  A. SUPERIORITY........................................................................28

VI. The Court Should Appoint Plaintiffs As Class Representatives AND Their Counsel As CLASS COUNSEL ...........................................................30

VII. CONCLUSION ........................................................................................32

i

# TABLE OF AUTHORITIES

**Cases**

*Abels v. JBC Legal Group, P.C.*, 227 F.R.D. 541, 543 (N.D. Cal. 2005) ..............22

*Allied Canners & Packers v. Victor Packing Co.*, 162 Cal. App. 3d 905 (1st Dist. Ct. App. Dec. 18, 1984).............................................................................................26

*Amavizca v. Nutra Mfg.*, LLC, No. 8:20-cv-01324-RGK-MAA, 2021 U.S. Dist. LEXIS 36009, * 17 (C.D. Cal. Jan. 27, 2021)......................................................12

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 117 S. Ct. 2231, 2245, 138 L.Ed.2d 689 (1997)...........................................................................................................6

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013)..............7

*Astorga v. County of L.A.*, Case No. CV 20-9805-AB (AGRx), 2021 U.S. Dist. LEXIS 78138, *7 (C.D. Cal. March 17, 2021)......................................................8

*Ballard v. Equifax Check Servs., Inc.*, 186 F.R.D. 589, 600 (E.D. Cal. 1999)........29

*Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 712, 724 (9th Cir. 2010) ..........7

*Bergeron v. Rochester Inst. of Tech.*, No. 20-CV-6283 (CJS), 2020 U.S. Dist. LEXIS 241125, *22 (W.D.N.Y. Dec. 18, 2020) ................................................25

*Blackie v. Barrack*, 524 F.2d 891, 900- 01 n.16 and 17 (9th Cir. 1975) ...................6

*Bowerman v. Field Asset Servs., Inc.*, 242 F. Supp. 3d 910, 933 (N.D. Cal. 2017)..7

*Brown v. Hain Celestial Grp., Inc.*, No. 11-CV-03082-LB, 2014 U.S. Dist. LEXIS 162038, at *46 (N.D. Cal. Nov. 18, 2014) ..............................................21

*Carpenter v. Boeing, Co.*, 456 F.3d 1183, 1187 (10th Cir. 2006) ............................28

*Congdon v. Uber Techs., Inc.*, 291 F. Supp. 3d 1012, 1027-28 (N.D. Cal. 2018) ..12

*Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995)...9

*Cross v. Univ. of Toledo*, Case No. 2020-00274JD, 2021 Ohio Misc. LEXIS 43, *10-11 (Ohio Ct. Claims, April 26, 2021)...........................................................8

*Edwards v. First American Corp.*, 798 F.3d 1172, 1178 (9th Cir. 2015)................20

*Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) .....................10

*Esplin v. Hirschi*, 402 F.2d 94, 99 (10th Cir. 1968) ...............................................22

*Feltz v. Cox Communs. Cal., LLC*, SACV 19-2002 JVS (JDEx), 2021 U.S. Dist. LEXIS 146447, *12-13 (C.D. Cal. June 1, 2021) .................................................13

*Gonzales v. City of Albuquerque*, No. CIV 09-0520 JB/RLP, 2010 U.S. Dist. LEXIS 98271, at *33 (D. New Mexico, Aug. 21, 2010)......................................28

*Gete v. INS*, 121 F.3d 1285, 1299-30 (9th Cir. 1997).............................................29

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) ...........................10

*Hartstein v. Hyatt Corp.*, CV 20-4874 DSF (JPRx), 2021 U.S. Dist. LEXIS 115647, *5 (C.D. Cal. May 25, 2021) .................................................................9

ii

*Hatamian v. Advanced Micro Devices, Inc.,* No. 14-CV-00226 YGR, 2016 WL
1042502, at *5 (N.D. Cal. Mar. 16, 2016) ................................................................13

*Haynes v. Logan Furniture Mart, Inc.*, 503 F.2d 1161, 1165 (7th Cir. 1974) .........29

*Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 262 (S.D. Cal. 1988) ................9

*In re Checking Account Overdraft Litigation*, 286 F.R.D. 645, 657 (S.D. Fla. 2012)
........................................................................................................................................22

*In re Rubber Chems. Antitrust Litig.*, 232 F.R.D. 346, 350-51 (N.D. Cal. 2005) .....8

*Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998) .................................................6

*KGM Harvesting Co. v. Fresh Network*, 36 Cal. App. 4th 376 (6th Dist. Ct. App.,
June 30, 1995) ..............................................................................................................26

*Kleiner v. First National Bank of Atlanta* 97 F.R.D. 683, 692 (N.D. Ga. 1983).....22

*Lerwill v. Inflight Motion Pictures, Inc.,* 582 F.2d 507, 512 (9th Cir. 1978) ...........17

*Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 513-14 (9th Cir. 2013) .......................7

*Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) .......................................10

*Parsons v. Ryan*, 754 F.3d 657, 673 (9th Cir. 2014) ................................................7

*Rodriguez v. Hayes*, 591 F.3d 1105, 1022 (9th Cir. 2010) .......................................9

*Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992)......................................10

*Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1134 (9th Cir. 2016).............20

*Schonfeld v. Hilliard*, 218 F.3d 164, 175-76 (2d Cir. 2000) ...................................26

*Sueoka v. United States*, 101 F. App'x 649, 653 (9th Cir. 2004) .............................8

*Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) .................................21

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).....................................10

*Walmart v. Dukes*, 131 S. Ct. 2541, 2551 (2011) ....................................................12

*Wolph v. Acer Am. Corp.*, 272 F.R.D. 477, 481 (N.D. Cal. 2011) ...........................6

*Zinser v. Accufix Research Inst., Inc.,* 253 F.3d 1180, 1186 (9th Cir. 2001) ............6

**Statutes**

Cal U Com Code § 2713 ............................................................................................26

Fed. R. Civ. P. 23(b)(3)(A)-(D) ................................................................................28

FRCP Rule 23(a)(1) ....................................................................................................9

**Rules**

Rule 23(a)(1) ........................................................................................9

Rule 23(a)(2) ...................................................................................9, 10

Rule 23(a)(4) .......................................................................................18

Rule 23(b)(3) .......................................................................................19

Rule 23(g).............................................................................................30

Pursuant to Federal Rules of Civil Procedure 23, Plaintiff Arredondo respectfully requests that this Court issue a Certification Order under Rule 23, Fed. R. Civ. P. (i) certifying the claims in this action as a class action; (ii) confirming Plaintiff as class representative; (iii) appointing Plaintiff's counsel Leeds Brown Law, P.C., the Sultzer Law Group, P.C., Charon Law, P.C., and Shoop A Professional Law Corporation, as Class Counsel; and, (iv) ordering the parties' counsel to meet and confer to develop appropriate notice to Class members. Plaintiff seeks certification of the following class:

> All persons who paid tuition and/or the Mandatory Fees at La Verne's Main/Central campus location during the Spring 2020 term/semester ("Class").

As set forth in greater detail below, the Court should grant Plaintiff's motion and certify the proposed Class because every member suffered the same harm when the University of La Verne ("La Verne", "ULV" or "Defendant") breached identical contractual obligations as to each of members of the proposed Class.  This level of uniformity makes this case especially well-suited for resolution as a class action under Rule 23. In support of this motion, Plaintiff submits that all of the requirements of Rule 23(a) and the requirements of Rule 23(b)(2) and/or Rule 23(b)(3) have been met. A discussion of each of the class certification prerequisites, and how they are met in this case, is set forth in this Motion and Memorandum filed in support thereof,

the Declaration of attorney Michael A. Tompkins, all attached exhibits[1], as well as all pleadings and records on file and any such other evidence as may be presented at the time of the hearing.

## MEMORANDUM OF POINTS AND AUTHORITIES

This Memorandum is submitted in support of Plaintiff's Motion for Class Certification.

## I. NATURE OF THE CASE

Plaintiff's action arises out of ULV's decision at the end of the Spring 2020 semester to retain the full amount of tuition and the majority of fees[2], despite being unable to provide students, like Plaintiff, with the in-person and on-campus educational services that they agreed to, contracted for, and paid for. *See* Dkt. 44, Second Amended Complaint ("SAC")[3]. Prior to the beginning of each term or semester, Plaintiff paid the full price of tuition to attend La Verne at their primary physical campus location, as well as the full price in related fees. SAC at ¶¶ 2, 30. Before students like the Named Plaintiff paid tuition and fees, they were told it was for "Main Campus" or "studying at the central campus in La Verne." *See* Exhibits B, ULV000067 (listing "Main Campus" above tuition prices) and A ("Tuition costs

---

[1] All exhibits are attached to the Declaration of Michael A. Tompkins ("Tompkins Dec.") and referred to as "Ex. [Letter]" herein or as otherwise defined.

[2] The ASULV Activity Fee was returned in the amount of $100 per student in or around April 10, 2020. *See* Ex. E, ("University of La Verne students will receive reimbursement this month for services and activities that were cancelled following campus closures for the COVID-19 pandemic…. All students will also be reimbursed $100 for the ASULV fee."). Additionally, the University also refunded the room, board, and meal plan fees. *Id.*

[3] All documents filed via ECF in this matter are referred to as "Dkt. [Number]" or as otherwise defined.

3

and a comprehensive list of fees for undergraduates **studying at the central campus** in La Verne.") (emphasis and underline added)[4]. As alleged, the Named Plaintiff made these payments in advance of and in exchange for in-person and on-campus educational services as offered and detailed in Defendant's policy documents, formal offers of acceptance, course catalogs, marketing materials, and other public representations. *See e.g.*, SAC ¶¶ 8, 36. In response to the COVID-19 pandemic, La Verne closed campus and canceled all in-person and on-campus educational services then transitioned to online only education. Therefore, Plaintiff and the Class did not receive the benefit and services that they bargained for when they paid La Verne tuition and various fees – namely access to campus, its facilities, its technologies, and the in-person community. Accordingly, Plaintiff properly asserts claims for breach of contract and unjust enrichment. This Court's earlier decision and order of April 21, 2021, denying Defendant's Motion to Dismiss confirms the same. *See* Dkt. 50. The question today is whether the thousands of students who bear the same loss as Plaintiff should be allowed to prosecute their claim in a class setting – under identical legal and factual questions and answers.

In the Court's Decision on the Motion to Dismiss, the Court held that:

> These allegations and materials, construed in a light most favorable
> to Plaintiff, support that Defendant made sufficiently specific

---

[4] As of yet, Defendant has been unable to locate a 2019-2020 version of this document, so Plaintiff has provided the Court with the 2020-21 version, as well as the 2021-22 versions. Further, the 2019-2020 version is also unavailable in the Internet Archives via https://archive.org.

PLAINTIFF'S NOTICE OF MOTION FOR CLASS CERTIFICATION

> representations to infer a contractual promise to provide at least some in-person instruction and on-campus services in exchange for Plaintiff's payments. *Nguyen v. Stephens Inst.*, 2021 WL 1186341, at *3 (N.D. Cal. Mar. 30, 2021) (collecting cases finding that plaintiffs sufficiently identified a promise to provide in-person instruction where he or she identified statements touting in-person teaching and on-campus experiences). Defendant's website, for example, promoted "countless" in-person opportunities on campus and its catalog touts the benefits of in-person classroom interaction and instruction. Defendant stresses that its catalogue "reserves the right to make necessary changes in policies, requirements, tuition, fees and calendars contained herein at any time without prior notification." Mot. 15. But for pleading purposes, the SAC's allegations and proffered materials support an inference that Plaintiff reasonably expected to have access to at least some on-campus services and in-person instruction—a catalogue's broad reservation of rights cannot categorically foreclose claims that a university failed to provide promised services.

Doc. 50, pg. 4.

The same standardized and uniform documents form the terms of the contract between students like Named Plaintiff Arredondo and the University – including acceptance letter, course catalogs, marketing materials, websites (e.g. those explaining tuition and fee payments), and other similar policy and offering documents. *See e.g.,* Ex. A, B, C, O, P, Q, DD, and a host of other documents detailed and addressed below; *see infra* Section IV(A).

Therefore, there are the foundational legal and factual issues at the center of this litigation that relate to the entire proposed class. Did ULV breach its contractual obligations to students like Plaintiff Brianna Arredondo ("Arredondo" or "Plaintiff")

PLAINTIFF'S NOTICE OF MOTION FOR CLASS CERTIFICATION

when ULV closed its campus and moved all educational services to an online-only delivery model[5] in reaction to the COVID-19 pandemic AND retained the full amount of tuition and most fees? As answering this straightforward question will ultimately resolve Plaintiff and the entire proposed Class's claims, this matter is ideally suited to be litigated as a class action.

## II.    STANDARD FOR CLASS CERTIFICATION

In determining whether Plaintiff's proposed class should be certified, courts will look to see whether all four requirements of Rule 23(a) have been satisfied along with one of the three categories of Rule 23(b). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 117 S. Ct. 2231, 2245, 138 L.Ed.2d 689 (1997); *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001); *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998). "When evaluating a motion for class certification, the court accepts the allegations made in support of certification as true, and does not examine the merits of the case." *Blackie v. Barrack*, 524 F.2d 891, 900- 01 n.16 and 17 (9th Cir. 1975). "Any doubts regarding the propriety of class certification generally should be resolved in favor of certification." *Wolph v. Acer Am. Corp.*, 272 F.R.D. 477, 481 (N.D. Cal. 2011) (citation omitted). The district court has broad discretion to certify a class, but a grant of class certification is accorded more deference than a

---

[5] Academic research across the country has referred to the online only delivery method that was provided in response to the COVID-19 Pandemic as "emergency remote teaching," which is different from online learning. *See* Ex. GG ("Well-planned online learning experiences are meaningfully different from courses offered online in response to a crisis or disaster.").

PLAINTIFF'S NOTICE OF MOTION FOR CLASS CERTIFICATION

denial. *Parsons v. Ryan*, 754 F.3d 657, 673 (9th Cir. 2014). The district court abuses its discretion when it makes an error of law or a clear error in judgment. *See Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 712, 724 (9th Cir. 2010) (reversing denial of class certification). For instance, individualized damages are not a bar to class certification, so a court abuses its discretion by not certifying a class because of possible individualized damages inquiries. *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 513-14 (9th Cir. 2013). Similarly, "'[m]anageability concerns must be weighed against the alternatives and will rarely, if ever, be sufficient to prevent certification of a class.'" *Bowerman v. Field Asset Servs., Inc.*, 242 F. Supp. 3d 910, 933 (N.D. Cal. 2017) (quotation omitted). The plaintiff need not show that he will prevail on the merits of the claims. *Alcantar v. Hobart Serv.*, 800 F.3d 1047, 1053 (9th Cir. 2015). Instead, the merits should be examined only to the extent needed to examine Rule 23's requirements. *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013).

In the only known college refund case that has proceeded to the class certification stage to date, the Ohio Court of Claims certified the class action and held, "Where [the named plaintiff], as well as those similarly situated, are entitled to remediation for tuition … and fees are questions of law or fact common to [class representative] and those similarly situated, and, in the Court's view, [the class representative]'s claims relate to remediation for tuition … and fees are typical of

the claims of the proposed classes. The Court therefore finds that there are questions of law or fact common to members of the proposed classes …" *Cross v. Univ. of Toledo*, Case No. 2020-00274JD, 2021 Ohio Misc. LEXIS 43, *10-11 (Ohio Ct. Claims, April 26, 2021) (granting certification on behalf of a tuition class, a room and board class, and a fee class).

## III.    THE PROPOSED CLASS MEETS THE REQUIREMENTS OF Rule 23(a)

### A. RULE 23(a)(1) – NUMEROSITY

Rule 23(a)(1) of the Federal Rules of Civil Procedure requires that the class be "so numerous that joinder of all members is impracticable." *See Astorga v. County of L.A.*, Case No. CV 20-9805-AB (AGRx), 2021 U.S. Dist. LEXIS 78138, *7 (C.D. Cal. March 17, 2021)*. To satisfy this requirement, "[p]laintiffs do not need to state the "exact" number of potential class members or be specific as to the number, as long as general knowledge and common sense indicate that the class is sufficiently numerous. *See In re Rubber Chems. Antitrust Litig.*, 232 F.R.D. 346, 350-51 (N.D. Cal. 2005). This is a fact-specific inquiry, and the district court has wide discretion in making this determination, including relying upon "reasonable inference[s] arising from plaintiffs' other evidence…" *Sueoka v. United State*s, 101 F. App'x 649, 653 (9th Cir. 2004). Classes of at least 40 members are presumptively numerous such that joinder is impracticable. *Consolidated Rail Corp. v. Town of Hyde Park*,

47 F.3d 473, 483 (2d Cir. 1995); *Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 262 (S.D. Cal. 1988).

Here, the proposed class is so numerous that joinder of all members in impracticable. The proposed Class is defined as:

> All persons who paid tuition and/or the Mandatory Fees at La Verne's Main/Central campus location during the Spring 2020 term/semester ("Class").

*See* SAC ¶ 1. Plaintiff further alleges that ULV has publicly reported that an aggregate of 2,509 undergraduates enrolled at La Verne's Main Campus beginning the academic year in Fall 2019. Exhibit CC; *see also* SAC ¶¶ 25, 71. In interrogatory responses, La Verne stated that, "Approximately 2,787 undergraduate students were enrolled for Spring 2020 semester under the Central Campus Semester Calendar…" Ex. HH. Further, Defendant cannot contest that more than 40 students were enrolled at the Main/Central La Verne campus location during the Spring 2020 Semester and that those individuals paid tuition and fees. Accordingly, the numerosity requirement of FRCP Rule 23(a)(1) is easily satisfied.

## B. RULE 23(a)(2) – COMMONALITY

Rule 23(a)(2) requires that there be a common question of law or fact. *See e.g., Hartstein v. Hyatt Corp.*, CV 20-4874 DSF (JPRx), 2021 U.S. Dist. LEXIS 115647, *5 (C.D. Cal. May 25, 2021). Courts look to "shared legal issues or common core of facts." *Rodriguez v. Hayes*, 591 F.3d 1105, 1022 (9th Cir. 2010). It is not

necessary that all questions of fact and law be common in order for commonality to be satisfied. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). Instead, "[t]he commonality requirement is met if plaintiffs' grievances share a common question of law or of fact." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997). If amongst diverging facts, courts should consider whether "the issues at the heart of those claims are common such that the class vehicle would facilitate development of a uniform framework for analyzing" the class situation. *See Hartstein*, 2021 U.S. Dist. LEXIS 115647, *5-6 (quoting *Rodriguez*, 591 F.3d at 1122-1123). Indeed, the commonality requirement has "'been construed permissively' and '[a]ll questions of fact and law need not be common to satisfy the rule.'" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) (alteration in original) (quoting *Hanlon*, 150 F.3d at 1019); *see also Rodriguez*, 591 F.3d at 1122 ("common" does not mean "complete congruence"). "A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). "What matters to class certification … is not the raising of common questions – even in droves – but rather, the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

Here, the questions are ones of common or general interest such that there is a well-defined community of interest among the class members. These questions

PLAINTIFF'S NOTICE OF MOTION FOR CLASS CERTIFICATION

significantly predominate over questions that may affect only individual members of the Class because ULV has acted on grounds generally applicable to the class – as part of a policy and standardized practice that applied to all students enrolled at ULV's Main Campus during the Spring 2020 semester. The Second Amended Complaint alleges common legal or factual questions (SAC at ¶ 73) which include, but are not limited to:

     a.     When students paid "Main Campus" (aka "Central Campus" or "La Verne's Campus") tuition and fees, were they entitled to receive access to campus, its facilities, its in-person technologies, and other in-person and campus-based educational services?

     b.     Based on all of the standardized documents and materials including policy documents, would students reasonably expect to receive in-person and campus-based educational services as part of the student-university contract, as an objective test?

     c.     Did the University breach that covenant (to provide on-campus and in-person educational services) during the Spring 2020 semester when it closed campus, limited access to all campus facilities/services, and delivered emergency remote teaching in an online-only format?

     d.     Does the University have any affirmative defense that would allow them to not provide those services AND still retain the monies?

     e.     Did Defendant breached its contracts with Plaintiff and the Class by failing to provide the services and facilities to which the Mandatory Fees pertained after mid-March 2020?

     f.     The amount of damages and other relief to be awarded to Plaintiff and the Class members.

Given that the common questions of law and fact are "capable of class-wide resolution," the commonality requirement of Rule 23(a)(2) is easily satisfied. *See Walmart v. Dukes*, 131 S. Ct. 2541, 2551 (2011).

## C. RULE 23(a)(3) – TYPICALITY

Rule 23(a)(3) requires that the claims of the named plaintiff be typical of the claims of the class. Typicality does not require the claims of the representative to be identical to the claims of the proposed class members – only that "representative claims … [be] reasonably coextensive with those of absent class members…" *Amavizca v. Nutra Mfg.*, LLC, No. 8:20-cv-01324-RGK-MAA, 2021 U.S. Dist. LEXIS 36009, * 17 (C.D. Cal. Jan. 27, 2021) (quoting *Hanlon*, 150 F.3d at 1020). Thus, typicality "focuses on whether the unnamed class members have injuries similar to those of the named plaintiffs, and whether those injuries result from the same injurious course of conduct." *Id*. "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought.'" *Id*. (quoting *Hanon*, 976 F.2d at 508); *see also Congdon v. Uber Techs., Inc.*, 291 F. Supp. 3d 1012, 1027-28 (N.D. Cal. 2018) (rejecting defendant's typicality arguments based on standing and deposition testimony and recognizing that, "for purposes of typicality, it is enough to find that plaintiffs' theory of their injury is the same theory of injury for the entire class"); *Hatamian v. Advanced Micro Devices, Inc.,* No. 14-CV-00226 YGR, 2016 WL 1042502, at *5

12

(N.D. Cal. Mar. 16, 2016) ("[T]ypicality is a 'permissive' standard and 'the focus should be on the defendants' conduct and plaintiff's legal theory, not the injury caused to the plaintiff.'" (citation omitted)).

The Ninth Circuit has articulated a three-part analysis for addressing typicality, including (1) whether other members of the class have the same or similar injury, (2) whether the action is based on conduct which is not unique to the named plaintiff, and (3) whether other class members have been injured by the same course of conduct. *See Ellis*, 657 F.3d at 984; *see also Feltzs v. Cox Communs. Cal., LLC*, SACV 19-2002 JVS (JDEx), 2021 U.S. Dist. LEXIS 146447, *12-13 (C.D. Cal. June 1, 2021) (holding that typicality was satisfied because the proposed class representative seeks recovery based on the same legal theories and factual circumstances as those of the purported class).

Here, Plaintiff and the other Class members each contracted with Defendant for access to the "Main Campus" (also frequently labeled as "central campus" or "La Verne Campus") that would include in-person, on-campus instruction, educational services, and use of facilities in exchange for Plaintiff and the Class's tuition and Mandatory Fee payments. *See* Deposition Transcript of Brianna Arredondo ("Arredondo Dep.")[6], Ex. E, pgs. 77, 92, 308; *See also* Exs. F, G, and H. The

---

[6] All deposition transcripts are attached to the Declaration of Michael A Tompkins, Esq. and are labeled as "Ex. [Letter], [Last Name] Dep. [page number]."

PLAINTIFF'S NOTICE OF MOTION FOR CLASS CERTIFICATION

University stopped providing access to campus, its facilities, its in-person technologies, and other in-person, on-campus instruction, educational services, to Plaintiff and each member of the Class in mid-March of 2020. As Plaintiff testified, Plaintiff and the other members of the Class received a formal offer of admission via her Acceptance Letter and received other documents from ULV that made specific representations about what Plaintiff and the Class would receive in exchange for their tuition and Mandatory Fees. *See* Arredondo Dep., Ex. E, pgs. 77-78.

Thereafter, Plaintiff (i) enrolled as an on-campus student at ULV at its Main or Central Campus, (ii) registered for classes and complied with the school's policies and procedures to remain in good standing, and (iii) paid her tuition and Mandatory Fees for on-campus, in-person instruction, educational services, and use of campus facilities. Plaintiff further testified that she and other Class Members were denied the on-campus, in-person educational services, including access to the campus, access to the in-person community, and use of campus facilities that ULV promised to provide, after it closed all of its facilities and switched to fully remote online learning. *See* Ex. E, Arredondo Dep., pg. 63 ("Many of us students, both myself and other students, were affected by the denial of the access of these resources on campus to us, and yet still paid the full price that we would have paid if we had full access to these resources."); see also SAC. at pp. 30, 34, 38, 44-46.

In fact, other La Verne students tell a similar story, including (1) through declarations supporting class certification here, and (2) via the 1,500 plus individuals that signed the online petition at Change.Org requesting a refund and raising concerns about tuition and fee refunds. For example, other La Verne students like Savanah Gherir, Jovanni Echevarria, and Kaylen Henry have submitted supporting declarations that support the claims and align with the allegations of the SAC. *See* Exs. F, G, and H. Putative Class Member Gherir states, "Notably, I failed to receive the on-campus and in-person educational services that I contracted for and reasonably expected to receive when I paid the tuition and fee rates associated with the 'main' or 'central' campus." Ex. F, ¶ 4; *see* Ex. G, ¶ 4, Ex. H, ¶ 4.

These statements are bolstered further by an Online Petition started on Change.Org that obtained 1,537 supporters in pursuit of an equitable conversation with La Verne concerning the refund of tuition and fees, and noted, "Even though the university claims that they will offer the same education experience through online courses, that is simply not possible." Ex. I, pg. 2. Commentors to the Petition added, "It is not the same education as I would be getting within a classroom. I also am not getting the same experience as I would be getting one on one with my professors. Therefore my tuition should be reduced to half of what I am paying." Ex. I, pg. 6 (obtaining 14 likes). "I respectfully believe with the situation we're in, not

being actually on campus to learn, it's only fair that we get some reimbursement for the time lost." *Id.* (obtaining 13 likes).

Additionally, La Verne's Director of Admission Operations conceded part of the typicality standard is satisfied because students built their reasonable expectations based on the standardized forms and documents supplied to them by the school. *See* Ex. K, pg. 66 (upon being asked if La Verne was promoting its campus services to prospective students, "Yes, I think it's explaining, you know, what's available to them so they're – they're aware of what all their options are on campus."). La Verne's Director of Admission Operations further expounded upon this in the following exchange:

> Q: And so do you think that a student who receives these types of communications showcasing the different options that University of La Verne has to offer, would enroll with the expectation that they would be able to take part in those opportunities?
>
> … [Objection]…
>
> A: If we're explaining to them what options are available to them, then I can't assume, but I would like to say that they would expect that those options be available to them, as well.

*Id.* at 68, line 11-21.

Taken together, typicality is easily satisfied because the Named Plaintiff is asserting the same claim as the putative class members, is seeking the same relief, and has no conflicts between her and the putative class.

16

### D. RULE 23(a)(4) – ADEQUACY OF REPRESENTATION

Rule 23(a)(4) requires that the representative parties "fairly and adequately protect the interests of the class." In the Ninth Circuit, adequacy of representation depends on the resolution of three questions. *See Lerwill v. Inflight Motion Pictures, Inc.,* 582 F.2d 507, 512 (9th Cir. 1978). These questions are: (1) whether the named plaintiff and their counsel are able to prosecute the action vigorously, and (2) whether the named plaintiff has any conflicting interests with unnamed class members, and (3) whether the attorneys representing the class are qualified and competent. *Id*. at 512; *see also Feltzs*, 2021 U.S. Dist. LEXIS 146447, at *13.

Here, Plaintiff clearly understands her responsibility as a class representative, as she has already appeared for a deposition for over 6.5 hours, and she has responded to discovery requests. *See* Arredondo Dep., Ex. E; Ex. Z. As the record demonstrates, Plaintiff has spent numerous hours consulting with class counsel, responding to Defendants' discovery requests and sitting for a deposition. Throughout the deposition, Plaintiff answered questions regarding her experiences at ULV as well as the claims alleged in the Complaint. Plaintiff's testimony makes it clear that she understands the claims asserted on behalf of herself and the class she seeks to represent. In addition, Plaintiff is represented by experienced counsel whose have decades of experience prosecuting cases on behalf of class members. *See infra*, Section V. Thus, both the first and third considerations are demonstrably satisfied.

The second relevant consideration under Rule 23(a)(4) is whether the Named Plaintiff's claims and interests in obtaining relief conflict with those of the class generally such that Plaintiff will vigorously prosecute the case. Plaintiff Arredondo was an undergraduate student during the Spring 2020 semester. ULV charged Plaintiff and the Class approximately the same amount in tuition and Mandatory Fees for both the Spring 2020 Semester, approximately $22,350 in tuition and fees per semester. *See* (SAC at ¶32) (reflecting all charges and payments between Plaintiff Arredondo and ULV for Spring 2020). Plaintiffs seeks, for herself and on behalf of the Class, the return of a portion of their tuition and Mandatory Fees prorated for the portions of the Spring 2020 when the University closed all campus-based services and provided exclusively online-only learning. Given the identical nature of the claims between Plaintiff Arredondo and the class members, there is no potential for conflicting interests of the named plaintiff and those of the class. Since Plaintiff's interests are exactly the same as the proposed class, there are no conflicts, and Plaintiff will have no problem providing fair and adequate protection for the interests of the class.

Furthermore, Plaintiff's counsel is experienced class counsel who have, and will continue to, vigorously litigate this action on behalf of class members. See, Tompkins Dec. Para. 2; Exs. II, JJ, KK, and LL. Thus, the adequacy of counsel is

PLAINTIFF'S NOTICE OF MOTION FOR CLASS CERTIFICATION

established, and the adequacy of representation by both the Named Plaintiff and her

counsel satisfy the requirement of Rule 23(a)(4).

## IV.    THE PROPOSED CLASS MEETS THE REQUIREMENTS OF 23(b)(3)

Under Rule 23(b)(3) a class may be certified if "questions of law or fact

common to class members predominate over any questions affecting only individual

members, and that a class action is superior to other available methods for fairly and

efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b). Rule 23(b)(3) also

sets forth factors for courts to consider in evaluating predominance and superiority.

These factors are: A) the class members' interests in individually controlling the

prosecution or defense of separate actions; (B) the extent and nature of any litigation

concerning the controversy already begun by or against class members; (C) the

desirability or undesirability of concentrating the litigation of the claims in the

particular forum; and (D) the likely difficulties in managing a class action." Fed. R.

Civ. P. 23(b)(3).

To be certified under Rule 23, plaintiffs' claims must "depend on a common

contention" the validity of which is "capable of class-wide resolution – which means

that determination of its truth or falsity will resolve an issue that is central to the

validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. The

requirements of section (b)(3) of Rule 23 are commonly referred to as predominance

and superiority. *See e.g. Edwards v. First American Corp.*, 798 F.3d 1172, 1178 (9th

Cir. 2015) ("under subsection (b)(3), they must demonstrate the superiority of

maintaining a class action and show 'that the questions of law or fact common to

class members predominate over any questions affecting only individual

members'").

## V.    PREDOMINANCE

The predominance standard is akin to the commonality required by Rule

23(a)(2). The difference is that the common issue necessary to satisfy Rule 23(a)(2)

must also be found to be the predominant issue in the case. The predominance

standard is often said to be "far more demanding" than the commonality standard.

*See Amchem Prods. Inc.*, 521 U.S. at 624. "[Q]uestions apt to drive the resolution of

the litigation are given more weight in the predominance analysis over

individualized questions which are of considerably less significance to the claims of

the class." *Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1134 (9th Cir. 2016).

"[T]he Rule 23(b)(3) predominance inquiry tests whether proposed classes are

sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.,*

*Inc.*, 521 U.S. at 624. Critically, "An individual question is one where members of a

proposed class will need to present evidence that varies from member to member,

while a common question is one where the same evidence will suffice for each

member to make a prima facie showing or the issue is susceptible to generalized,

class-wide proof." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (internal cites and quotes omitted). This "inquiry is pragmatic and qualitative and focuses on whether common questions present the overriding issues in a suit." *Brown v. Hain Celestial Grp., Inc.*, No. 11-CV-03082-LB, 2014 U.S. Dist. LEXIS 162038, at *46 (N.D. Cal. Nov. 18, 2014). "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022 (quotation omitted).

Here, the common issues and common proof that exist in this case – whether Defendant breached its contracts with Plaintiff and the members of the Class by failing to provide them with an in-person, on-campus instruction, educational services, and use of facilities after March 13, 2020 — clearly predominates over any individual issues that may exist. Moreover, there is a clear "common nucleus of operative fact," namely, that all class members were subject to the same standardized documents and representations by Defendant throughout the application, acceptance, enrollment, registration, and payment processes. *See* Exs. B, C, D, L, and Z. Further, the contractual arrangements between each of ULV's students and the University—receiving in-person, on-campus instruction, educational services, and use of facilities when they paid tuition and fees at the "Main Campus" — are

effectively identical. Similarly, the nature of Defendant's breach is exactly the same for each member of the Class, regardless of his or her academic major, scholarships, or any other ancillary criteria – the University failed to provide any in-person, on-campus instruction, educational services, or use of campus facilities AND the University elected to maintain the full amount of tuition and fees despite its breaches. Similarly, Defendant's excuse for the breach remains identical in that it relates to the COVID-19 pandemic. Cases dealing with standardized documents and practices are generally appropriate for resolution by class action because the documents are the focal point of the analysis. *Abels v. JBC Legal Group, P.C.,* 227 F.R.D. 541, 543 (N.D. Cal. 2005) ("Class actions are generally appropriate where standardized documents are at issue."); s*ee also Esplin v. Hirschi*, 402 F.2d 94, 99 (10th Cir. 1968) ("if there is an error to be made, let it be in favor and not against the maintenance of a class action."); *Kleiner v. First National Bank of Atlanta* 97 F.R.D. 683, 692 (N.D. Ga. 1983) ("claims arising from interpretations of a form contract appear to present the classic case for treatment as a class action, and breach of contract cases are routinely certified as such"); *In re Checking Account Overdraft Litigation*, 286 F.R.D. 645, 657 (S.D. Fla. 2012) ("[s]ince the reasonable expectations of a party to a standardized form contract are judged objectively, the entire class will win or lose on their contract claims based upon the same evidence and legal standards of contract construction").

Here, there are several standardized policies that affected all class members, which make this case ripe for class certification, including, but not limited to:

- All students entered into standardized contractual arrangements to enroll as ULV students after filling out the same application for admission to ULV and receiving similar, if not identical, documents from the University. *See* Exs. D, L, and DD (reflecting a standardized promissory note for students to sign); *see also* Ex B (reflecting the standardized policies for all students during the 2019-2020 academic year); Ex O (reflecting standardized letters to admitted students for "La Verne's Preview Day").

- All students were bound by the University's policies and procedures to remain in good standing. *See e.g.,* Ex. M (the standardized honor code for all ULV students); Ex. B (the 2019-2020 course catalog).

- All students registered for classes and selected campus-based classes at the La Verne, California campus location, as designed by the "Main Campus" language about tuition prices. *See* Ex. B, ULV000067; see also Ex A (reflecting the tuition costs and fees for students "studying at the central campus in La Verne.").

- All students agreed to receive educational services from the University. Exs. D, B, L, and DD.

- All students received online-only educational services beginning on March 16, 2020.  *See* SAC at ¶ 5.

- All students received online-only educational services beginning on March 16, 2020. See Ex. HH, Response No. 10

- ULV's standardized COVID response was that students would not receive refunds for tuition and certain fees. See Ex. BB; see also https://link.edgepilot.com/s/4c0cb47d/tYraaYxJJES07hYDGBdfVg?u =https://laverne.edu/health/2020/an-update-from-president-lieberman-2/ (on March 27, 2020, acknowledging refund of the ASULV fee but not acknowledging refunds of other fees or tuition). It is this decision and rejection of tuition/fee cuts that this proposed class action is about, and that decision applies to every class member.

ULV retained the full amount of tuition and full amount of most fees[7] paid by each class member. Ex. F; Ex. R. In fact, ULV collected over $47,000,000 in tuition for Spring 2020 semester. *See* Ex. HH, Response No. 5. Therefore, the essential factual predicates for all class members are virtually the same – if not identical.

Predominance is further satisfied here because Plaintiff seeks the same damages for herself and on behalf of all class members, namely, a prorated amount of tuition and fees Plaintiff and students enrolled at the Main Campus paid for the

---

[7] As discussed above, ULV returned a $100 of the ASULV Activity Fee.

PLAINTIFF'S NOTICE OF MOTION FOR CLASS CERTIFICATION

online-only portion of the semester, adjusted for the limited services Plaintiff and students like Plaintiff received. *See Bergeron v. Rochester Inst. of Tech.*, No. 20-CV-6283 (CJS), 2020 U.S. Dist. LEXIS 241125, *22 (W.D.N.Y. Dec. 18, 2020) (finding damages "formulation sufficiently specific" based on the allegations of the operative complaint). Here, Plaintiff has detailed her methodology for calculating damages based on several key data points: (1) the prorated period, i.e. the period of the semester in which COVID-19 affected the services, (2) the cost of market alternatives and the difference between the alternatives and the tuition Plaintiff and the class paid – taking into account the materially different 'emergency response teaching' remote-only educational services that Plaintiff did receive (for example, without limitation, comparing the cost of an online-only alternative provided by the University to the price students paid in the Spring 2020 semester, as discussed below), and (3) the nature of the structure and composition of tuition and fees. Thus, a mathematical equation can easily be established, as part of expert discovery and in accordance with the Court's scheduling order.

However, for class certification purposes, the following would be salient to the calculation:

The ULV Spring 2020 semester began on February 3, 2020 and was scheduled to end on May 31, 2020, for a term length of 118 days. However, on March 11, 2020, ULV closed campus and cancelled in-person instruction for the remainder of the

PLAINTIFF'S NOTICE OF MOTION FOR CLASS CERTIFICATION

term, with classes transitioning to remote instruction on March 16, 2020. Therefore, Plaintiff Arredondo, along with the rest of the students enrolled at ULV's Main Campus for the Spring 2020 term, lost 76 total days, or 64% of the semester, worth of access to campus, in-person instruction, and on-campus services and activities.. Based on Plaintiff's loss of access to in-person instruction and on-campus resources and activities for 64% of the Spring 2020 semester, the damages Plaintiff seeks includes the market value for the 64% of the Spring 2020 semester during which there was no-person instruction and Plaintiff was unable to access campus facilities and services. *See Schonfeld v. Hilliard*, 218 F.3d 164, 175-76 (2d Cir. 2000) ("General damages are sometimes called 'market' damages because, when the promised performance is the delivery of goods, such damages are measured by the difference between the contract price and the market value of the goods at the time of the breach."); *KGM Harvesting Co. v. Fresh Network*, 36 Cal. App. 4th 376 (6th Dist. Ct. App., June 30, 1995) (holding the open market value a reasonable approximation of damages and noting "[T]he object of contract damages is to given the aggrieved party as nearly as possible the equivalent of the benefits of performance.")(internal quotes omitted); Cal U Com Code § 2713 (the measure of damages for non-delivery is the difference between the market price at the time of breach); *Allied Canners & Packers v. Victor Packing Co.*, 162 Cal. App. 3d 905 (1st Dist. Ct. App. Dec. 18, 1984).

PLAINTIFF'S NOTICE OF MOTION FOR CLASS CERTIFICATION

At the class certification stage, Plaintiff's market measure of damages as to their tuition and mandatory fees can be approximated by comparing the tuition and fees Plaintiff paid with the lower tuition and fees charged to students in ULV's online-only education program, known as "La Verne Online." Ex J; Ex. W; Ex X. Here, the analysis of value that La Verne provided can easily be assessed because La Verne itself values its online-only education at 56.7 % less than its campus-based, in-person traditional experience. *Compare* Ex. J (reflecting $645 per credit hour); Ex. A (reflecting $22,350 for an average of 15 credit hours)[8]. In the words of the Change.org Petition, "Being that all our classes will now be online for the remainder of the semester, it would only be logical for the university to charge us the cost of online classes." Ex. I.

Plaintiff's damages expert will provide a detailed set of computations setting forth Plaintiff and the proposed Class's damages after the completion of all fact discovery. However, Plaintiff's proposed methodology for calculating damages aligns with the standards for predominance in the Ninth Circuit and presents an objective and quantifiable methodology such that class answers predominate over individual ones.

---

[8] Utilizing mathematical equation based on a partial discovery record, a campus-based student at La Verne's "Main Campus" would be paying $1,490 per credit hour, while a La Verne Online students pay $645. That's a difference of $845 per credit hour – or approximately 56.7% less expensive.

PLAINTIFF'S NOTICE OF MOTION FOR CLASS CERTIFICATION

## A. SUPERIORITY

Several factors are relevant to assessing superiority including: (1) the class members' interests in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already begun by or against class members; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(A)-(D). The list is non-exhaustive and may include other factors. *See e.g., Feltzs*, 2021 U.S. Dist. LEXIS 146447, *21 ("The Court agrees that because the putative class members are hourly employees with relatively modest individual claims, there is a strong likelihood that individual actions would never be brought.").

All of these need not be fulfilled to satisfy Rule 23(b); in fact, "only one of Rule 23(b)'s subdivisions must be satisfied to meet the class-action requirements." *Gonzales v. City of Albuquerque*, No. CIV 09-0520 JB/RLP, 2010 U.S. Dist. LEXIS 98271, at *33 (D. New Mexico, Aug. 21, 2010) (citing *Carpenter v. Boeing, Co.*, 456 F.3d 1183, 1187 (10th Cir. 2006) (stating that the district court must determine whether a suit "falls within one of the categories of actions maintainable as class actions")). The present case easily satisfies the superiority requirement of Rule 23(b)(3). Efficiency is the primary focus in determining whether the class action is the superior method for resolving the controversy presented. *Gete v. INS*, 121 F.3d

1285, 1299-30 (9th Cir. 1997). The Court is required to determine the best available method for resolving the controversy and must "consider the interests of the individual members in controlling their own litigation, the desirability of concentrating the litigation in the particular forum, and the manageability of the class action." *Ballard v. Equifax Check Servs., Inc.*, 186 F.R.D. 589, 600 (E.D. Cal. 1999). It is proper for the court, in deciding the "best" available method, to consider the "the improbability that large numbers of class members would possess the initiative to litigate individually." *Haynes v. Logan Furniture Mart, Inc.*, 503 F.2d 1161, 1165 (7th Cir. 1974).

In this case, there is no better method available for the adjudication of the claims which might be brought by each individual class member. As set forth in Plaintiff's SAC, there are over 2,500 students enrolled at ULV's Main/Central Campus. It is clear that litigating this action as a class action is more practical and efficient than to litigate more than 2,500 individual cases for amounts that would simply not justify lengthy and complex prosecutions. In addition, Plaintiff is unaware of any other action or controversy commenced that is seeking the same relief on behalf of the same class. Moreover, there is absolutely no reason why it would be undesirable to concentrate this action before this Court. ULV is headquartered in this District. Lastly, there are absolutely no difficulties likely to be

encountered in the management of a class action because it involves straightforward claims for breach of contract and unjust enrichment.

## VI. The Court Should Appoint Plaintiffs As Class Representatives AND Their Counsel As CLASS COUNSEL

Pursuant to Rule 23(g), Plaintiffs request his counsel be appointed to represent the Class and be identified as "Class Counsel." Under Rule 23(g)(1), courts must appoint class counsel. The factors courts must consider in making this appointment are identified and detailed below.

(i)    Factor 1: The work counsel has done in identifying or investigating potential claims in the action.

Proposed Class Counsel has thoroughly investigated the claims at issue, has investigated the composition of the class, and has filed a complaint that survived Defendant's initial legal challenge on the Motion to Dismiss. *See* Dkt. 50 (partially denying Defendant's motion to dismiss). Class Counsel has identified potential publicly available records and documents that form part of the student-university contractual arrangement to highlight in the pleadings and obtained testimony that supports Plaintiff's theory of the case – not just from students and the Named Plaintiff but also Defendants' witnesses. Ex. K pg. 68. Plaintiff has deposed La Verne's witnesses and obtain testimony and documents that support the claims, as those referenced and cited herein.

(ii)    Factor 2: Counsels' experience in handling class actions, other complex litigation, and the types of claims asserted in the action.

Proposed Class Counsel has extensive class action experience as shown by the firm's biographies and resumes, as they are detailed or attached to the Tompkins Declaration. Additionally, Proposed Class Counsel includes two separate firms that are well-credential in California, along with two firms that are actively prosecuting numerous college refund cases across the country, including with other co-counsel.

(iii)    Factor 3: Counsel's knowledge of the applicable law.

As detailed above, proposed Class Counsel includes experienced counsel from the state of California and counsel with knowledge of the contract and quasi-contract claims asserted here, as well as counsel versed in class action litigation and in the college refund lawsuits that are being litigated across the country. Thus, Plaintiff's counsel's experience is substantial and satisfies the requirements of Rule 23(g). Additionally, the interest of class members will be further protected because Plaintiff Evans has retained respected counsel that will help insure that proposed Class Counsel is putting the interest of class members first.

(iv)    Factor 4: The resources that counsel will commit to representing the class.

Proposed Class Counsel has and will continue to dedicate substantial resources to the prosecution of this action, including retaining any necessary outside

experts and incurring all expenses necessary for the successful prosecution of this action. Additionally, Proposed Class Counsel has already spoken with and identified both industry and testifying experts that may aid counsel, the Class, and the Court in resolving the claims asserted herein

## VII.    CONCLUSION

The proposed class meets all the requirements of Rule 23 to be certified as a class. The class meets the tests for numerosity, commonality, and typicality. The class representative is adequate and hired attorneys who have significant experience and will vigorously litigate this action on behalf of class members. Further, in this case virtually all evidence and claims are the same for all class members. Questions of law and fact predominate over individual questions. Finally, a class action is superior for the claims raised as opposed to approximately 2,500 individual actions involving the same discovery and evidence. This class must be certified.

Respectfully submitted this  8  day of November, 2021.

Dated: November 8, 2021

_____/s/ Michael A. Tompkins
**LEEDS BROWN LAW, P.C.**
Michael A. Tompkins, Esq. (admitted Pro Hac Vice)
Jeffry K. Brown, Esq. (admitted Pro Hac Vice)
One Old Country Road, Suite 347
Carle Place, NY 11514
Telephone: (516) 873-9550
mtompkins@leedsbrownlaw.com
jbrown@leedsbrownlaw.com

32
PLAINTIFF'S NOTICE OF MOTION FOR CLASS CERTIFICATION

**SHOOP A PROFESSIONAL LAW CORPORATION**
David R. Shoop, Esq.
Thomas S. Alch, Esq.
9701 Wilshire Blvd., Suite 950
Beverly Hills, California 90212
Telephone: (310) 620-9533

**PERRY L. SEGAL DBA CHARON LAW**
Perry L. Segal, Esq.
303 Twin Dolphin Drive, Suite 600
Redwood City, California 94065-1422
(650) 542-7935
perry.segal@charonlaw.com

**THE SULTZER LAW GROUP P.C.**
Jason P. Sultzer, Esq. (admitted Pro Hac Vice)
Mindy Dolgoff, Esq. (admitted Pro Hac Vice)
270 Madison Avenue, Suite 1800
New York, NY 10016
Telephone: (212) 969-7810
Facsimile: (888) 749-7747

*Counsel for Plaintiff and the Putative Class*

PLAINTIFF'S NOTICE OF MOTION FOR CLASS CERTIFICATION