

LAWYERS

610 NEWPORT CENTER DRIVE, SUITE 700
NEWPORT BEACH, CALIFORNIA 92660
TELEPHONE 949.717.3000
FACSIMILE 949.717.3100

CALLJENSEN.COM

January 20, 2022

OUR FILE NUMBER
UNI13-20

**BY CM/ECF**
Honorable Rozella A. Oliver, Magistrate Judge
United States District Court
Central District of California

    Re:   *Arredondo v. University of La Verne*
           Case No. 2:20-cv-07665 (MCS)(RAO)

Dear Judge Oliver:

This letter is submitted by defendant University of La Verne ("ULV") in response to Plaintiff's letter brief filed on January 12, 2022 (ECF 110), per the Motion re: Informal Discovery Dispute (ECF 109).

Plaintiff's letter brief mischaracterizes the issues raised in the request for IDC, the language of her discovery requests, her allegations of breach of contract, and ULV's discovery responses. Ignoring the scope of the IDC request (which sought the Court's direction regarding whether ULV may take short depositions of three putative class members who submitted declarations in support of class certification, and whether ULV should have to produce ESI about post-breach complaints and post-breach discussions of ULV's contract obligations), Plaintiff attempts to contort the issues into a motion to compel ULV to supplement discovery responses it provided on 9/9/2021 and 10/8/2021, demanding that ULV provide putative class members' private educational and financial records in response to precertification discovery requests that were not mentioned in the request for IDC, and that did not even ask for individual putative class member records in the first place. At the same time, Plaintiff asks the Court to disregard students' privacy rights and statutory FERPA protections, and to issue a preclusion order if ULV does not immediately produce the putative class members' records in precertification discovery. In reality, it was not until after the IDC request that Plaintiff concluded she urgently wanted individual putative class member records for her expert report (exchanged 1/18/2022, with rebuttal reports due 2/16/2022), and, lacking the time to serve

Honorable Rozella A. Oliver
January 20, 2022
Page 2

discovery requests and complete *Belaire* and FERPA processes, opted to strong-arm her demands into the calendared IDC briefing by pretending that ULV's discovery responses last autumn should have included precertification production of putative class members' private education and financial records. As explained here, there is no legal ground to compel the productions Plaintiff demands, but there is ample legal support for allowing ULV to depose the three witnesses who submitted declarations in support of Plaintiff's class certification motion.

### I.      ESI Of Communications After The Alleged Breach

Plaintiff has only one cause of action, for breach of contract (ECF 50), alleging that ULV's "failure to provide in-person instruction and shutdown of campus facilities amounts to a material breach of the contract," in mid-March 2020. (ECF 44, ¶¶ 74, 88.) Plaintiff alleges that she and putative class members formed contracts with ULV when they applied, enrolled, registered, and paid tuition. (ECF 44, ¶ 81.) In addition to the thousands of pages ULV has produced in response to Plaintiff's Requests for Production Nos. 6, 7, 12, 13, 16, and 17, regarding its response to Covid-19, Plaintiff now demands that ULV produce electronic communications *after* the transfer to online classes in March 2020, about complaints from students, parents, or faculty about the move to online classes, or about ULV discussions regarding whether to refund tuition or fees. Specifically, Plaintiff asks that ULV be ordered to search for ESI by 16 different individuals between March and September 2020 that contain generic terms such as "tuition," "credit," "classroom," or "adjust"—a search that would require export and review of estimated tens of thousands if not hundreds of thousands of emails per preliminary searches, not counting attachments.

The ESI production that Plaintiff demands cannot be compelled because any such comments by students or by ULV, after the alleged contract formation and after the alleged breach, are legally irrelevant to a breach of contract claim. Under Rule 26, discovery is limited to matter relevant to the claims and defenses in the case. FRCP 26(b)(1). The elements of Plaintiff's breach of contract claim are (1) the existence of the contract (which she alleges was formed by the 2/1/2020 beginning of the semester)(ECF 44, ¶¶ 31, 80, 85); (2) Plaintiff's performance (her payment of tuition and fees)(ECF 44, ¶ 85); (3) ULV's breach (alleged to be the move to online classes in mid-March 2020)(ECF 44, ¶ 88); and (4) the resulting damages to Plaintiff (which she defines in her Motion for Class Certification as the difference in price between ULV online and in-person courses prorated for 64% of the Spring 2020 semester)(ECF 70-1 at 28:1-30:28). *Oasis West Realty, LLC v. Goldman*, 51 Cal.4th

811, 821 (2011). According to statutory and case law, the demanded ESI is not relevant to any of these elements of breach of contract.

Plaintiff is asking for ULV's internal communications or communications with students or parents *after* the alleged contract had been formed, and even *after* the alleged breach occurred. Even if there were ESI between March and September 2020 in which students or parents complained about the move to online classes or the lack of a tuition refund, or in which ULV employees discussed the move to online teaching or whether tuition should be refunded, any such discussions are not relevant to prove Plaintiff's breach of contract claim. California law is adamant that one contracting party's subjective statements of its understanding of the terms of a contract are irrelevant on a breach of contract claim. *Citron v. Franklin*, 23 Cal.2d 47, 51 (1943); *Zalkind v. Ceradyne, Inc.*, 194 Cal.App.4th 1010, 1022, fn. 2 (2011)(affirming exclusion of declaration about party's subjective understanding of the meaning of contractual language); *Habitat Trust for Wildlife, Inc. v. City of Rancho Cucamonga*, 175 Cal.App.4th 1306, 1339 (2009)(same); *PV Little Italy, LLC v. MetroWork Condominium Assn.* (2012) 210 Cal.App.4th 132, 157 (a party's "subjective statements of 'understanding' are irrelevant"); *Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.*, 109 Cal.App.4th 944, 956 (2003)("The parties' undisclosed intent or understanding is irrelevant to contract interpretation."). See also, *St. Paul Mercury Ins. Co. v. Am. Safety Indem. Co.*, No. 12-CV-05952-LHK, 2014 WL 2120347 at *13 (N.D.Cal. May 21, 2014)(ambiguities in contract cannot be resolved by evidence of a party's subjective understanding stated after the date of contracting); *Atencio v. TuneCore, Inc.*, No. CV 16-1925 DMG, 2018 WL 6164787 at *8 (C.D.Cal. Sept. 21, 2018), *aff'd* 843 F.App'x 42 (9th Cir. 2021)("one party's postcontractual subjective understanding of the terms of the [contract] . . . [is] not probative as an aid to the interpretation of the contract"). Furthermore, ESI of any internal discussions at ULV about whether it should issue tuition refunds would be irrelevant to the breach of contract claim even if Plaintiff contends the alleged breach was the failure to refund tuition and the ESI goes to ULV's reasoning, because under California law, ULV's motive in allegedly breaching the contract is irrelevant and immaterial. See, *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal.4th 503, 516 (1994)("But the law generally does not distinguish between good and bad motives for breaching a contract."); *Rich v. Shrader*, No. 09-CV-0652-MMA (WMc), 2010 WL 3717373 at *4 (S.D. Cal. Sept. 17, 2010) ("Motive is not an element of a breach of contract action."). Nor can ESI between March and September 2020 be relevant to interpreting the contract that was formed in January 2020, as under California law, contracts are interpreted "to give effect to the mutual

Honorable Rozella A. Oliver
January 20, 2022
Page 4

intention of the parties as it existed *at the time of contracting*." *Iqbal v. Ziadeh*, 10 Cal.App.5th 1, 7-9 (2017); Cal. Civ. Code § 1636.

There is no justifiable reason to require discovery of irrelevant statements by ULV employees or by students about the alleged breach after it happened. The ESI Plaintiff demands is irrelevant to her breach of contract claim, so it is not a proper subject for discovery. FRCP 26(b)(1). Even if the ESI were somehow marginally relevant, the discovery is not proportionate to the needs of the case. *Id.* Plaintiff proposes that ULV search electronic communications of 16 different employees for 16 different search terms that are so generic ("agreement," "contract," "complain!," "tuition," "adjust," "classroom," etc.) that the proposed search could require review of hundreds of thousands of emails and their attachments. Complying with Plaintiff's demands would require a herculean effort to produce information having no evident relevance to Plaintiff's sole claim of breach of contract. ULV has already answered that it is not aware of any decision by it to *not* refund tuition, as ULV's focus was on continuing to provide instruction during the pandemic so that students could still advance toward their degrees. (ECF 110-3 at Request No. 6.) ULV produced documents such as a video file of the Town Hall Meeting in which the CFO was asked about possible tuition refunds. Requiring ULV to also produce irrelevant ESI communications is unwarranted under Rule 26.

II. **Plaintiff Should Be Permitted To Depose Putative Class Members Who Submitted Declarations For Class Certification**

The first discovery issue listed in the parties' request for an IDC is whether ULV may take the depositions of three declarants who, as putative class members, submitted declarations in support of Plaintiff's pending motion for class certification. ULV does not seek depositions of any other putative class members, and will limit the depositions to no longer than four hours each, excluding breaks. Defendant intends to question the declarants about their declarations in support of class certification and their claims for damages, as their student records show that, when Plaintiff's pricing methodology is applied, not one of these declarants has any recoverable damages.

When putative class members inject themselves into litigation by submitting declarations in support of class certification, the law allows defendants to take short depositions of those putative class member declarants. *Vasquez v. Leprino Foods Co.*, No. 1:17-cv-796-AWI-BAM, 2019 WL 4670871 at *3-4 (E.D. Cal. Sept. 25, 2019); *Moreno v. Autozone, Inc.*, No. C-05-4432-MJJ-EMC, 2007 WL 2288165 at *1 (N.D. Cal. Aug. 3, 2007); *Antoninetti v. Chipotle, Inc.*, No. 06-cv-2671-BTM-

WMc, 2011 WL 2003292 at *5 (S.D. Cal. May 23, 2011); *Rojas v. Marko Zaninovich, Inc.*, No. 1:09-CV-00705 AWI JLT, 2011 WL 2636071 at *4 (E.D. Cal. July 5, 2011). The case law cited by Plaintiff affirms ULV's right to depose the three declarants. In *Moreno*, 2007 WL 2288165 at *1, the court granted a request to depose two putative class members who had submitted declarations in support of class certification, finding the depositions were not sought to harass and were necessary for trial preparation or opposing class certification because of the very fact that the putative class members had entered the litigation by filing declarations—and the court even ruled that the defendant could depose three additional absent class members who had submitted declarations if it wanted to, even though those depositions had not been requested. Similarly, in *Aldapa v. Fowler Packing Co.*, No. 1:15-cv-00420-DAD-SAB, 2021 WL 2551000 (E.D. Cal. June 22, 2021) at *2, the court gave defendants "leave to conduct a total of fifteen depositions of the absent class members who submitted declarations in support of the motion for class certification." The *Aldapa* court held in contempt the declarants who failed to appear, ordered them to be deposed, and ordered their declarations to be excluded if the declarants did not sit for deposition. *Id.* at *11-15. Likewise, *In re Fedex Ground Package System, Inc., Employment Practices Litigation*, No. 3:05MD527RM, 2007 WL 733753 at *8-9 (N.D. Ind. Mar. 5, 2007) granted a motion to compel deposition of absent class member. Thus, *Moreno*, *Aldapa*, and *In re Fedex* all confirm ULV's right to take short depositions of the three putative class members who submitted declarations in support of Plaintiff's motion for class certification, and that such depositions are necessary and not designed to harass.

Plaintiff cites two rulings that denied discovery from absent class members, but those rulings are highly distinguishable. In *McPhail v. First Command Fin. Planning, Inc.*, 251 F.R.D. 514, 515-518, the court rejected as "impracticable and unrealistic" the defendant's request to serve written interrogatories and requests for admission on all 178,527 absent class members. The defendant in *On the House Syndication, Inc. v. Federal Express Corp.*, 203 F.R.D. 452, 457, wanted to serve written interrogatories on absent class members about issues the court had already ruled on and had "explicitly found to be not relevant to this case." Neither *McPhail* nor *On the House* involved depositions of putative class members who had submitted declarations, and neither suggests that ULV should be denied the right to cross-examine witnesses who gave sworn statements for class certification.

Indeed, Plaintiff does not apparently oppose the depositions if limited in time, but demands (as discussed here in section III) that ULV must first produce individual putative class members' records, regardless of students' privacy rights and statutory protections under FERPA and *Belaire West*, and regardless of the fact that Plaintiff

does not even pretend that precertification discovery of individual student records is necessary for issues like typicality, commonality, and numerosity. *Doherty v. Comenity Capital Bank & Comenity Bank*, No. 2017 WL 1885677 at *3 (S.D.Cal. May 9, 2017)(in the context of precertification discovery dispute, courts will assess whether party seeking discovery has shown that it is relevant to class certification issues).

### III.   Precertification Discovery Of Putative Class Members' Records

In the request for IDC, Plaintiff asserted that "If the depositions [of the three declarants] are allowed, Plaintiff contends that Defendant should be required to produce discovery on the putative class." (ECF 110-4, p. 2.) Plaintiff's letter brief now treats this IDC issue as if it were a motion to compel further responses to specific discovery requests, asking the Court to strike ULV's objections that discovery requests call for private information of individual putative class members, and to order ULV to produce individual putative class member records within 30 days in response to Requests for Production Nos. 8-11, 17, and 19-21.

The first fatal flaw in Plaintiff's argument is that Requests for Production Nos. 8-11, 17, and 19-21 did not ask ULV to produce individual putative class members' records. The Requests asked only for "Documents sufficient to show" or "Documents sufficient to reflect" such things as the total amount of tuition money or fees received for Spring 2020, the total amount of Spring 2020 tuition and fees refunded, the total number of students who attended during Spring 2020, and the actual and projected allocation of fees in Spring 2020 related to provision of student services. (*See* First Request for Documents, ECF 110-1.) Not one of these Requests required ULV to produce the tuition, fees, financial aid, or enrollment records of individual putative class members such as Plaintiff now demands.

The second fatal flaw in Plaintiff's argument is that ULV robustly responded to the Requests in its responses dated 9/9/2021 and 10/8/2021 (ECF 110-2, 110-3), and Plaintiff has failed to show that ULV's responses were inadequate. Even though ULV objected to the extent that requests sought private information of putative class members or FERPA-protected education records, ULV still responded to the Requests and related interrogatories by producing ULV's Tuition assessments for Spring Semester 2020 totaling $75,728,167.37; a breakdown of gross tuition assessments for different programs (ECF 110-2 at Interrogatory No. 5); a list of all Spring 2020 tuition refunds (including the amount, percentage, and reason for the refund, redacting only the names of the students receiving the refunds) (ECF 110-3 at Interrogatory No. 8); counts of the number of students enrolled for Spring 2020,

Honorable Rozella A. Oliver
January 20, 2022
Page 7

breaking down the numbers for different programs and different semester or term calendars (ECF 110-2 at Interrogatory 4); ULV's 2019-2020 Audited Financial Statements (including among other things numbers for total student tuition and fees, student financial aid, and pandemic relief funds received and distributed to students); ULV's Covid-19 community announcements; communications with ULV's President about Covid-19; ULV's 2019-2020 Catalog (containing comprehensive information related to Student Services, Admissions, Financial Aid Policy, Rights and Responsibilities, Academic Programs, Tuitions Rates and Fees, etc.) and Catalog Addendum, as well as comprehensive student records for Plaintiff including her admission communications, financial aid records, payment history, student financial summary report, requests for and awards of emergency relief funds, academic transcripts, student application, and credit transfer communications—more than 5,000 pages of documents and electronic files produced.

The third fatal flaw in Plaintiff's argument is that she offers no legal authority for her request that the Court disregard all privacy rights and statutory FERPA protections for student records that Plaintiff demands. *See, Anders v. California State Univ., Fresno*, No. 121CV00179AWIBAM, 2021 WL 3021454 at *4 (E.D. Cal. July 16, 2021)(granting protective order for defendant where requests overbroad and plaintiff failed to address privacy or FERPA). Under FERPA, educational institutions such as ULV must obtain written consent prior to releasing students' education records, and can lose federal funding or face criminal charges for failure to comply. FERPA defines education records to include any materials that "contain information directly related to the student" and "are maintained by an educational … institution." 20 U.S.C. § 1232g(a)(4)(A). ULV records of tuition payments, financial aid, and other financial data are unquestionably protected by FERPA. *United States ex rel. Munoz v. Computer Sys. Inst., Inc.* No. 11 C 7899, 2015 WL 4052853 at *6 (N.D. Ill. June 30, 2015). In the absence of written consent from each student, ULV may disclose the information only if there is a judicial order instructing it to do so *and* a reasonable effort by ULV at notification. 34 C.F.R. § 99.31(a)(9). The educational records of putative class members are also protected by constitutional privacy rights, and because Plaintiff particularly demands the financial records of putative class members' such as their tuition payments, student loans, grants, and financial aid, a *Belaire* or similar process is necessary before such records can be produced. *Goro v. Flowers Foods, Inc.*, 334 F.R.D. 275, 288, n.14 (a *Belaire* notice or other protections are necessary where information sought is sensitive, such as financial information); *Bottoni v. Sallie Mae, Inc.*, No. C 10-03602 LB, 2012 WL 8304347 at *3 (N.D.Cal. June 1, 2012)(ordering *Belaire* opt out process where information involved class member loans). See *Belaire-West Landcape, Inc. v. Superior Court*, 149 Cal.App.4th 554, 557-558 (2007).

Honorable Rozella A. Oliver
January 20, 2022
Page 8

Finally, as already noted, precertification discovery is generally limited to issues relevant for deciding class certification, rather than invasive production of individual class members' private financial and education records. Plaintiff has made no showing that discovery of individual putative class members' education and financial records is necessary precertification discovery. *Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir. 1985); *Doherty*, 2017 WL 1885677 at *3.

Thus, Plaintiff has not shown that any putative class member records should be ordered produced. If any documents are ordered produced, a FERPA notice will need to precede the production (*see* 34 C.F.R. § 99.31(a)(9)), as should a *Belaire* process. The parties are currently discussing language for a *Belaire* notice as well as a FERPA notice in connection with Plaintiff's most recent document request, and may soon approach the Court for a judicial order to facilitate FERPA compliance. For now, Plaintiff has not shown grounds to compel production of private financial information of putative class members without *Belaire* or FERPA processes.

### IV.   Plaintiff Has Failed To Show Cause For A Preclusion Order

Another issue Plaintiff raises in her letter brief that goes beyond the joint request for an IDC is her request for a preclusion order if ULV does not immediately produce the private financial aid information for each putative class member, including records of each student's loans, scholarships, grants, government aid, "and other financial terms for individual students," without compliance with FERPA or a *Belaire* process. The only basis Plaintiff cites for preclusion is ULV's argument in opposition to class certification that individual issues of fact predominate because Plaintiff's damages model would require individualized review of each student's financial aid information to see what that student actually paid. Neither ULV's opposition to class certification nor its expert report discusses the financial aid information of any individual student other than Plaintiff, and Plaintiff's information has all been produced. There is no reason to conclude that ULV is withholding from production individual student files on which it relies.

Very truly yours,

David R. Sugden
For Call & Jensen
A Professional Corporation

DRS:co