David R. Shoop, Esq. (SBN 220576)
Thomas S. Alch, Esq. (SBN 136860)
**SHOOP | A PROFESSIONAL LAW CORPORATION**
9701 Wilshire Blvd., Suite 950
Beverly Hills, California 90212
Telephone: (310) 620-9533
David.shoop@shooplaw.com
Thomas.alch@shooplaw.com

Jason P. Sultzer, Esq.*
Mindy Dolgoff, Esq.*
**THE SULTZER LAW GROUP P.C.**
270 Madison Avenue, Suite 1800
New York, NY 10016
Telephone: (212) 969-7810
sultzerj@thesultzerlawgroup.com
Dolgoffm@thesultzerlawgroup.com

Jeffrey K. Brown, Esq.*
Michael A. Tompkins, Esq.*
Brett R. Cohen, Esq.
**Leeds Brown Law, P.C.**
One Old Country Road, Suite 347
Carle Place, NY 11514
Telephone: (516) 873-9550
jbrown@leedsbrownlaw.com
mtompkins@leedsbrownlaw.com

Perry L. Segal (State Bar No. 250947)
**Charon Law**
303 Twin Dolphin Drive, Suite 600
Redwood City, California 94065-1422
(650) 542-7935
perry.segal@charonlaw.com

*Admitted Pro Hac Vice*

Counsel for Plaintiff and the Certified Class

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIANNA ARREDONDO, on behalf of herself and all others similarly situated, Plaintiff, vs. THE UNIVERSITY OF LA VERNE, Defendant. | Case No. 2:20-cv-07665-MCS-RAOx Hon. Mark C. Scarsi **PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DECERTIFY CLASS** *[Filed concurrently with the Declaration of Mindy Dolgoff, Esq. and Exhibits]* Date: May 9, 2022 Time: 9:00 a.m. PST Crtrm.: 7C, 7th Floor |

# TABLE OF CONTENTS

I. INTRODUCTION ............................................................................................. 2

II. LEGAL STANDARD ...................................................................................... 3

III. ARGUMENT .................................................................................................. 5

A. Defendant Does Not Contest that Undergraduate Students Meet Rule 23(a) and Rule 23(b) Requirements of Numerosity, Typicality, Adequacy, and Superiority ....................................................................................................... 5

B. The Class Cannot Be Decertified Based on Ascertainability ........................... 6

   1. Defendant Misconstrues the Class Definition ................................................ 6

   2. Ascertainability is Not An Independent Requirement of Class Certification 9

C. The Class Is Not Overbroad ............................................................................ 12

   1. Plaintiffs' Damages Methodology Remains Susceptible to Class-Wide Measurement ................................................................................................. 14

D. CAPA Students Are Rightfully Members of the Class ................................... 18

   1. The Same Common Questions of Law and Fact Apply and Predominate for CAPA Students .............................................................................................. 18

   2. CAPA Students' Damages Are Capable of Class-Wide Measurement ........ 23

E. The Class Should Not Be Narrowed ............................................................... 25

IV. CONCLUSION .............................................................................................. 26

# TABLE OF AUTHORITIES

**CASES**                                                                    **PAGES**

*Alcantar v. Hobart Serv.*, 800 F.3d 1047, 1053 (9th Cir. 2015)................................4

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013)..............4

*Armstrong v. Davis*, 275 F. 3d 849, 872 n.28 (9th Cir. 2011)...................................4

*Bowerman v. Field Asset Servs., Inc.*, 242 F. Supp. 3d 910, 933 (N.D. Cal. 2017)..5

*Briseno v. ConAgra Foods*, Inc., 844 F.3d 1121, 1124-26 (9th Cir. 2017)..............9

*Brown v. DirecTV, LLC*, No. CV 13-1170 DMG (C.D. Cal. Dec. 1, 2021) ...........11

*Bruton v. Gerber Prods. Co.*, No. 15-15174, 2017 U.S. App. (9th Cir. July 17, 2017) ........................................................................................................................10

*Chavez v. Blue Sky Nat. Bev. Co.*, 268 F.R.D. 365, 379 (N.D. Cal. 2010) .............13

*Comcast Corp. v. Behrend*, 569 U.S. 27, 34-35 (2013)..................................... 13, 23

*Ellis v. Costco Wholesale Corp.*, 657 3d. 970, 981 n.8 (9th Cir. 2011) .................14

*Gaudin v. Saxon Mortg. Servs.*, 297 F.R.D. 417, 429 (N.D. Cal. 2013) .................22

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) .............. 18, 19, 20

*Hernandez v. Cty. of Monterey*, 305 F.R.D. 132, 152 (N.D. Cal. 2015) .................12

*Howell v. Leprino Foods Co.*, No. 1:18-cv-01404-AWI-BAM, 2022 U.S. Dist. (E.D. Cal. Mar. 22, 2022) ...................................................................................10

*In Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017).......................10

*Jordan v. Paul Fin.*, LLC, 285 F.R.D. 435, 466 (N.D. Cal. 2012).................. 16, 17

*Lambert v. Nutraceutical Corp.*, 870 F.3d 1170, 1182 (9th Cir. 2017)..................22

*Leslie Salt Co. v. U. S.*, 55 F.3d 1388, 1393 (9th Cir. 1995) ...................................14

*Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 513-14 (9th Cir. 2013) ......................4

*Lyon v. U.S. Immigration & Customs Enforcement*, 300 F.R.D. 628, 2014 WL 1493846, at *5 (N.D. Cal. 2014) ..........................................................................12

*Meyer v. Bebe Stores, Inc.*, No. 14-cv-00267-YGR, 2017 U.S. Dist. (N.D. Cal. Feb. 10, 2017) ................................................................................................................11

*Overpeck v. FEDEX Corp.*, No. 18-cv-07553-PJH, 2022 U.S. Dist. LEXIS 54285, at *32 (N.D. Cal. Mar. 25, 2022)...........................................................................10

*Rai v. Santa Clara Valley Transp. Auth.*, 308 F.R.D. 245, 263 (N.D. Cal. 2015) ..13

*Risto v. Screen Actors Guild-American Fed'n of TV & Radio Artists*, No. 2:18-cv-07241-CAS(PLAx), 2020 U.S. Dist. (C.D. Cal. Sep. 14, 2020).........................18

*Rosales v. El Rancho Farms*, Case No. 1:09-cv-00707-AWI-JLT, 2014 U.S. Dist. (E.D. Cal. Jan. 29, 2014) .....................................................................................4

*Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1136-37 (9th Cir. 2016) ........................................................................................ 17, 18, 19

*Sandoval v. M1 Auto Collisions Ctrs., Inc.*, No. 13-cv-03230-EDL, 2016 U.S. Dist. (N.D. Cal. Sep. 23, 2016) .....................................................................................4

*Slaven v. BP America, Inc.*, 190 F.R.D. 649, 651 (C.D. Cal. 2000).........................4

*Stockwell v. City & Cnty. of San Francisco*, 749 F.3d 1107, 1112 (9th Cir. 2014) 20

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011)....................................18

*Wiener v. Dannon Co.*, 255 F.R.D. 658, 671 (C.D. Cal. 2009)..............................23

*Wolph v. Acer Am. Corp.*, 272 F.R.D. 477, 481 (N.D. Cal. 2011) ...........................4

**Rules**

Fed. R. Civ. P. 23(a)(3) ..............................................................................................5

Fed. R. Civ. P. 23 .......................................................................................................2

Rule 23(a)(1) ..............................................................................................................5

Plaintiff Arredondo and the certified Class submit this memorandum of law in opposition to Defendant University of La Verne's ("ULV", "University", or "Defendant") motion to decertify the certified class.

## I.    INTRODUCTION

ULV's Motion to Decertify Class is nothing more than a re-hash of the same arguments that this Court rejected in its Order Granting Class Certification. Dkt. 117 ("Class Cert. Order").[1] Class certification was appropriate when the Court granted Plaintiffs' motion and remains appropriate now. Defendant's instant motion is riddled with misdirection and arguments that are either irrelevant or inappropriate to consider on class certification or were previously rejected by the Court. Defendant does not satisfy its burden to show that Federal Rule of Civil Procedure 23 ("Rule 23") is no longer satisfied.

Put simply, the certified Class still meets all of Rule 23's requirements including numerosity, typicality, commonality, predominance and superiority for all the same reasons the Class was certified in accordance with the Court's Feb. 8, 2022 order. *See*, Dkt. 117. Indeed, the same common questions that are capable of common answers still remain and apply to all members of the class. Those common questions still predominate and the same predominance analysis confirms that

---

[1] All documents filed via ECF in this matter are referred to as "Dkt. [Number]" or as otherwise defined.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DECERTIFY CLASS

damages are capable of class-wide measurement. Finally, a class action is still the superior method for litigating these claims. Indeed, Defendant does not (because it cannot) argue that Rule 23's requirements of numerosity, typicality, commonality and superiority are not met.

The fact remains, just as it did when the Court granted class certification, that class treatment is appropriate because every member of the Class entered into the same contract with ULV for the provision of in-person, on-campus educational services when they paid their tuition and fees, based on standardized documents (*e.g.* application, Master Promissory Note, Course Catalog, ULV's website). And, foundationally, all Class Members suffered the same harm when ULV breached that identical contractual covenant AND retained the full amount of tuition and fees as to every member of the Class. The fact also remains that all Class Members signed up for Main Campus educational services and in-person classes, all educational services were converted to online-only, and all Class Members were subject to ULV's "no refund" decision at the end of the semester. Accordingly, Defendant cannot show that Rule 23 is no longer satisfied, and Defendant's motion should be denied in its entirety.

## II. LEGAL STANDARD

The legal standard for decertification is the same as the standard for certification: whether the requirements of Rule 23 are satisfied. *Armstrong v. Davis*,

275 F. 3d 849, 872 n.28 (9th Cir. 2011). On a motion for decertification, the burden shifts from plaintiffs to defendants. *Sandoval v. M1 Auto Collisions Ctrs., Inc.*, No. 13-cv-03230-EDL, 2016 U.S. Dist. LEXIS 156810, at *38-39 (N.D. Cal. Sep. 23, 2016) (*citing Rosales v. El Rancho Farms*, Case No. 1:09-cv-00707-AWI-JLT, 2014 U.S. Dist. LEXIS 11134, 2014 WL 321159, at *4 (E.D. Cal. Jan. 29, 2014) ("The burden is on a party seeking decertification to establish that Rule 23 is not satisfied."). "This burden 'is relatively heavy,' since any 'doubts regarding the propriety of class certification should be resolved in favor of certification.'" *Slaven v. BP America, Inc.*, 190 F.R.D. 649, 651 (C.D. Cal. 2000); *Sandoval*, 2016 U.S. Dist. LEXIS 156810, at *39; *see also Wolph v. Acer Am. Corp.*, 272 F.R.D. 477, 481 (N.D. Cal. 2011) ("Any doubts regarding the propriety of class certification generally should be resolved in favor of certification.").[2]

Plaintiffs need not show that they will prevail on the merits of the claims. *Alcantar v. Hobart Serv.*, 800 F.3d 1047, 1053 (9th Cir. 2015). Instead, the merits should be examined only to the extent needed to examine Rule 23's requirements. *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013). Further, individualized damages are not a bar to class certification, so a court abuses its discretion by not certifying a class because of possible individualized damages inquiries. *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 513-14 (9th Cir. 2013).

---

[2] Internal citations omitted from all cites unless otherwise indicated.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DECERTIFY CLASS

Similarly, "'[m]anageability concerns must be weighed against the alternatives and will rarely, if ever, be sufficient to prevent certification of a class.'" *Bowerman v. Field Asset Servs., Inc.*, 242 F. Supp. 3d 910, 933 (N.D. Cal. 2017).

## III.  ARGUMENT

### A. Defendant Does Not Contest that Undergraduate Students Meet Rule 23(a) and Rule 23(b) Requirements of Numerosity, Typicality, Adequacy, and Superiority

Defendant does not contend (because it cannot) that the Class of undergraduate students no longer meets the Rule 23 requirements of numerosity, typicality, commonality and superiority. Indeed, the class includes over 2,700 students (*see* Dkt. 141-26, 141-27) thus easily satisfying numerosity requirement of Rule 23(a)(1).

Further, typicality is satisfied because Named Plaintiff Briana Arredondo's claims are typical of the claims of class. Fed. R. Civ. P. 23(a)(3). As the Court held in the Class Cert. Order, "Plaintiff identifies the 'same or similar injury' as a breach of contract for the failure to provide on-campus services during the Spring 2020 semester…The injury was not unique to the named plaintiff because the contract at issue was a standardized contract all students signed…All members have the same injury – the inability to use on-campus services for which they paid." Dkt. 117 at 5. Defendant makes no argument that typicality is no longer satisfied. Neither does Defendant contest that a class action remains the superior method of adjudicating

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DECERTIFY CLASS

Plaintiffs' claims due to: (i) Class Members being unlikely to prosecute separate actions due to the cost and risks of litigation; (ii) the lack of other pending litigation on these claims; and (iii) judicial efficiency and reducing the risk of inconsistent adjudications. *See* Dkt. 117 at 8. Finally, Defendant does not argue that Named Plaintiff is no longer an adequate class representative. Thus, the Court's previous ruling on these requirements has not been challenged.

**B. The Class Cannot Be Decertified Based on Ascertainability**

**1. Defendant Misconstrues the Class Definition**

Defendant misconstrues the class definition to invent a requirement that Class Members must have personally paid tuition and fees out of their own pocket in order to be a member of the Class and, thereby, manufactures a so-called "ascertainability" problem. Defendant's argument is disingenuous at best. The Class definition does not require that Class Members personally paid for tuition and fees out of their own pocket. Critically, the only claim in this action is for breach of contract and the contract at issue in this action is between the *student* and the University. The *student* is required to sign the Master Promissory Note, which makes the *student* solely responsible for his/her financial obligations to the University. *See* Dkt. 70-11, Master Promissory Note ("I hearby acknowledge and agree that I am fully responsible for the cost and expense of all tuition, fees, housing, meal plan costs and other related educational expenses associated with my enrollment."). The Master Promissory

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DECERTIFY CLASS

Note further notes that the University may withhold further services *to the student* until payment is rendered including "the issuance of my grades, transcripts, diploma(s) and future enrollments." *Id.* The student is not permitted to register for classes until the student signs the agreement. *Id.* Moreover, if payment is not made, ULV may use a collection agency and report the student's account to the credit bureaus which "may have a negative impact on [the student's] credit rating." *Id.* Moreover, ULV bills the students and applies credits to the student's account when payments are made. *See* Dkt. 141-24. Thus, the student is the party that is in privity with ULV for the at-issue contract, it is the student who is responsible for making sure the tuition and fee payments are made, and it is the student who will suffer the contractual and legal consequences if payment is not made. *See* Dkt. 143-7 at ¶ 4. Whether the actual dollars came from the student's bank account or whether the student made arrangements for another to make payments on his/her behalf is irrelevant.

Indeed, Defendant is well aware that the Class definition was not limited to students who personally paid from their own pockets as the issue was covered fully at the hearing on Plaintiffs' motion for class certification.

> **THE COURT:** But, yeah. And I guess what I'm wondering is, to be in situations where there are other parties that ought to be involved with her.
>
> So, for example, let's take the Rotary Club example. So, if the Rotary Club gives, you know, student Jane Smith a scholarship to attend La Verne, and Jane Smith goes to La Verne but, you know,

doesn't get the, according to your theory, doesn't get the full educational experience because she is not on campus, is that -- I mean, is the Rotary Club harmed because it didn't get value for its money? Or it didn't get -- didn't get the full -- the full value for its money.

**MR. TOMPKINS:** Right, but the agreement in question, and I think that that's a good question because it goes back to whether it's a fundamental nature of the agreement. And the agreement at issue here is the student university agreement in which students pay tuition and mandatory fees in exchange for something, right? For some covenants. And in the simplest terms, we'd say those covenants were instructions, access to campus, and credits. And students received two out of those three things; they just didn't receive the campus, the community, the last of those natures. And so, the -- I think that the fact that some individual has a third-party agreement with a, you know, whether it's a gift from their parents or a student loan, that secondary agreement is as [im]material to that first contract, the contract at issue in the alleged breach of the contract here.

**THE COURT:** But what about a situation like this though. So, I'm not sure if this is touched on in the papers or not, but as you know, a parent or a grandparent can pay tuition to a university, and under the current rules of gift tax, it doesn't eat into the gift tax exemption if it's paid directly to the university.

So, let's say Jane Smith's grandmother pays the University of La Verne tuition, and she does it directly to the University of La Verne because she wants to avoid eating into her gift tax exception for her granddaughter.

Now we have, you know, now, we have the student not paying the tuition at all; it's coming directly from a third-party source. How would you envision that money coming back to the student?

**MR. TOMPKINS:** Yeah, we would, because the student paid the price -- or either paid the price or made arrangements for somebody to pay the price for that. And the fact that they received something less than what they bargained for, there's the breach of the contract.

**THE COURT:** Right, but what I'm wondering is why the student is entitled to that money. Well, I guess your theory is the student is entitled to the money because the student is the primary -- the primary contracting party.

8

**MR. TOMPKINS:** Correct. And –

**THE COURT:** Despite the fact that the student may not have paid for -- despite the fact that the student may not have paid for any of the tuition themselves, and in fact, might not have even been involved in the financial transaction of paying the tuition.

**MR. TOMPKINS:** Right. If they were -- if they were lucky enough to have a grandparent or someone else that was able to do that, then yes, but they were the ones that made arrangements with a third party or another entity to finance their academic pursuit, and that as far as the contract between the university and the student, the student complied when he or she paid tuition or made arrangements to pay tuition through whatever sources and whatever third-party agreements that are out there.

**THE COURT:** Okay…

Dkt. 104. at 8:9-10:23.

As the transcript from the hearing shows, the issue was carefully contemplated by the Court. And, after that careful contemplation, the Court certified the Class without any mention or requirement that the Class be limited to students who personally paid their tuition and fees out of their own pocket.

### 2. Ascertainability is Not An Independent Requirement of Class Certification

Even if the Class were limited to students who personally paid (it is not), ascertainability cannot serve as a bar to certification or as the basis to decertify. *Briseno v. ConAgra Foods*, Inc., 844 F.3d 1121, 1124-26 (9th Cir. 2017) ("the language of Rule 23 does not impose a freestanding administrative feasibility prerequisite to class certification. Mindful of the Supreme Court's guidance, we

9

decline to interpose an additional hurdle into the class certification process delineated in the enacted Rule."). Ninth Circuit law is clear that there is no separate ascertainability requirement for class certification under Rule 23. *Id.*; *Bruton v. Gerber Prods. Co.*, No. 15-15174, 2017 U.S. App. LEXIS 12833, at *2-3 (9th Cir. July 17, 2017) ("The district court erred when it held that the class could not be certified because it was not 'ascertainable'…*In Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017), our court—using different terminology for what the district court called 'ascertainability'—held that there was no separate 'administrative feasibility' requirement for class certification."); *Overpeck v. FEDEX Corp.*, No. 18-cv-07553-PJH, 2022 U.S. Dist. LEXIS 54285, at *32 (N.D. Cal. Mar. 25, 2022) ("the Ninth Circuit has held that the court is not to consider ascertainability at the class certification stage."); *Howell v. Leprino Foods Co.*, No. 1:18-cv-01404-AWI-BAM, 2022 U.S. Dist. LEXIS 52796, at *13 (E.D. Cal. Mar. 22, 2022) ("the Ninth Circuit does not require that the proposed class also be 'administratively ascertainable.'").

In *Briseno v. ConAgra Foods Inc.*, defendant appealed the district court's grant of class certification in a consumer class action arguing that "there would be no administratively feasible way to identify members of the proposed class" because consumers do not generally save receipts or remember low-cost purchases. *Briseno*, 844 F.3d at 1124. The Ninth Circuit held that "the language of Rule 23 does not

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DECERTIFY CLASS

impose a freestanding administrative feasibility prerequisite to class certification." Accordingly, courts within the Ninth Circuit have consistently held that "ascertainability" or "administrative feasibility" cannot serve as a bar to class certification or support decertification. *See, e.g. Brown v. DirecTV, LLC*, No. CV 13-1170 DMG (Ex), 2021 U.S. Dist. LEXIS 231014, at *16-17 (C.D. Cal. Dec. 1, 2021) (denying motion to decertify noting that even in situations where there is "*no meaningful method to identify class members…there is no freestanding ascertainability requirement, and certification may still be appropriate as long as a class action is superior to individual litigation.*") (emphasis added); *Meyer v. Bebe Stores, Inc.*, No. 14-cv-00267-YGR, 2017 U.S. Dist. LEXIS 19522 (N.D. Cal. Feb. 10, 2017) (relying on *Briseno* and denying motion to decertify class based on ascertainability/administrative feasibility).

Defendant's cited authority is misplaced and does not require a different outcome. First, all cases cited by Defendant in support of its ascertainability and administrative feasibility argument were decided pre-*Briseno*. Thus, all of the cases are inapposite as subsequent binding Ninth Circuit precedent requires that administrative feasibility not be considered on class certification. Defendant's cited authority is equally factually inapposite and easily distinguishable.[3]

---

[3] *See, e.g. In re Paxil Litig.*, 212 F.R.D. 539, 545 (C.D. Cal. 2003) (finding the class definition too vague which hampered court's ability to evaluate other certification requirements, i.e. numerosity and typicality, and potential class members could not

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DECERTIFY CLASS

Finally, even if ascertainability was a consideration, the certified class is ascertainable because the definition it is based on *objective* criteria and not *subjective* standards or terms that depend on resolution of the merits. *Hernandez v. Cty. of Monterey*, 305 F.R.D. 132, 152 (N.D. Cal. 2015) ("Class and subclass membership can 'be ascertained by reference to objective criteria,' and the class definitions 'avoid subjective standards (e.g. a plaintiff's state of mind) or terms that depend on resolution of the merits (e.g., persons who were discriminated against).'" (*quoting Lyon v. U.S. Immigration & Customs Enforcement*, 300 F.R.D. 628, 2014 WL 1493846, at *5 (N.D. Cal. 2014)). Here, the Class is ascertainable because ULV credited each Class Member with having paid tuition and fees, as reflected by their bills and account statements and having been given the opportunity to register and take classes that semester.

## C. The Class Is Not Overbroad

Defendant's argument with respect to overbreadth is simply a re-hash of its

_____

know if they would be part of the class); *Tidenberg v. Bidz.com*, No. CV 08-5553 PSG (FMOx), 2010 U.S. Dist. LEXIS 4410, at *8 (C.D. Cal. Jan. 7, 2010) (class definition improper because "[p]laintiff has impermissibly incorporated the substance of her claims into her class definition" requiring resolving the merits of each individual's claim to determine class membership); *O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311, 327-328 (C.D. Cal. 1998) (pre-*Briseno* case that found a medical monitoring class was ascertainable by having prospective members fill out a questionnaire and that a property class was ascertainable because it was not theoretical.); *Gannon v. Network Tel. Servs., Inc.*, CV 12-9777-RGK (PJWx), 2013 U.S. Dist. LEXIS 81250, *6 (C.D. Cal. June 5, 2013) (class definition would require "extensive individual inquiry into the merits of Plaintiff's claim").

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DECERTIFY CLASS

previous predominance argument. Just as it failed there, it once again fails here. Defendant does not dispute (because it cannot) that Plaintiffs have presented a methodology for calculating class-wide damages that stems from Defendant's alleged wrongdoing. *Comcast Corp. v. Behrend*, 569 U.S. 27, 34-35 (2013). Defendant argues only that Plaintiffs' damage theory is wrong, miscalculates damages, and that the Named Plaintiff and a majority of the Class are not injured based on Defendant's competing and flawed theory of damages. Defendant's efforts are wasted as the law is clear that '[a]t class certification, plaintiff must present 'a likely method for determining class damages,' though it is not necessary to show that his method will work with certainty at this time." *Chavez v. Blue Sky Nat. Bev. Co.*, 268 F.R.D. 365, 379 (N.D. Cal. 2010). "Damage calculations at the class certification stage are not required to be 'exact[.]'" *Rai v. Santa Clara Valley Transp. Auth.*, 308 F.R.D. 245, 263 (N.D. Cal. 2015). This Court has already ruled Defendant's arguments are not to be considered on class certification and that "the Court concludes Plaintiff has demonstrated that the damages are capable of measurement on a classwide basis when considering what damages are attributable to Defendant's allegedly harmful conduct." Dkt. 117 at 7-8. Thus, under the doctrine of the law of the case, this Court should only reconsider these arguments if pursuant to an "intervening change of controlling authority" or if "new evidence has surfaced, or the previous disposition was clearly erroneous and would work a manifest

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DECERTIFY CLASS

injustice." *Leslie Salt Co. v. U. S.*, 55 F.3d 1388, 1393 (9th Cir. 1995). Defendant has not satisfied its burden to show that damages are no longer capable of class-wide measurement as is its burden on decertification.

### 1. Plaintiffs' Damages Methodology Remains Susceptible to Class-Wide Measurement

Despite the argument already being rejected by the Court on class certification, Defendant once again impermissibly argues that Plaintiffs' damages methodology is flawed because it does not account for scholarships and grants. Defendant's argument is both inappropriate and plain wrong. First, as discussed *supra*, at class certification the requirement is only a demonstration that damages are capable of class-wide measurement. Defendant's attack on Plaintiffs' damages theory goes to the merits of the methodology -- not to its capability of calculating class-wide damages. *See* Dkt. 117 at 8. Plaintiff is not required to prove the elements of her underlying claims at class certification. *Ellis v. Costco Wholesale Corp.*, 657 3d. 970, 981 n.8 (9th Cir. 2011). Second, Defendant disingenuously argues that Plaintiffs' damages methodology does not account for scholarships and grants. Plaintiffs' expert, Dr. Charles Cowan, has proffered three expert reports as to damages for the Class based on breach of contract theory, even though Defendant failed to produce documents and information related to certified Class Members

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DECERTIFY CLASS

until after April 13, 2022.[4] On January 18, 2022, Plaintiffs served Defendant with their damages expert report that presented a methodology and formula for calculating class-wide damages. *See* Ex. A, Expert Report of Charles D. Cowan, Ph.D.[5] Principally, Dr. Cowan's report focuses on assigning a market value to two portions of the semester: pre-pandemic and post-pandemic. *Id.* at 9. The post-Pandemic portion is based on the market value of online-only services that ULV provided vis-a-vis its La Verne Online program and the pricing that ULV ascribed to this program. *Id.* Importantly, Dr. Cowan's report clearly explains: "From the Total Value Received, I subtract the subsidies or discounts provided by University of La Verne, including scholarships and grants ('ULV Subsidies') to arrive at the 'but-for' payment." *Id.* at 9-10. Dr. Cowan then created a formula for measuring the "but-for" world to compare the portion of the semester that was provided as expected against the portion of the semester that was provided as online only. *Id.* As a result, Dr. Cowan's inputs for the Named Plaintiff are outlined as the following in "Table 1":

---

[4] Defendants made a production of documents on April 14, 2022 after the effectuation of notice pursuant to Your Honor's order on class certification and FERPA.

[5] All Exhibits are attached to the Declaration of Mindy Dolgoff ("Dolgoff Decl.") and referred to as "Ex. [number]" herein or as otherwise defined.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DECERTIFY CLASS

| Description | Dollar |
|---|---|
| Value Contracted For | $21,720.0 |
| Online price for total hours taken | $12,900.0 |
| Value received (in-person portion of semester) | $7,819.2 |
| Value received (online portion of semester) | $8,256.0 |
| Value received | $16,075.2 |
| Total La Verne Subsidies | $12,300.0 |
| But for payment | $3,775.2 |
| Amounts paid and not subsidized by ULV | $9,420.0 |
| **Amount Overpaid** | **$5,644.8** |
| **Prejudgment Interest** | **$1,185.4** |
| **Damages (Including Pre-Judgment Interest)** | **$6,830.2** |

That Defendant disagrees with Dr. Cowan's methodology inherently goes to the merits of the case and is not a basis for decertification. *Jordan v. Paul Fin.*, LLC, 285 F.R.D. 435, 466 (N.D. Cal. 2012).

Defendant's further re-packages its arguments advanced in its opposition to Plaintiffs' motion for class certification arguing, *inter alia*: (i) that Plaintiffs' use the wrong market value for the online classes; (ii) that Plaintiffs' damages model requires a qualitative assessment of the La Verne Online program; (iii) Plaintiffs' damages model incorrectly calculates the portion of the Spring 2020 semester during which Plaintiffs were denied in-person, on-campus educational services.[6] This Court

---

[6] Defendant also argues that Plaintiffs incorrectly calculate compensatory damages when the correct analysis is whether ULV is unjustly enriched because the contract was discharged for impossibility. This argument not only inappropriately goes to the merits of the claim, it also incorrectly (and presumptuously) assumes that ULV's proffered impossibility defense has been established and determined, which it has not. However, this argument supports class certification more than it hurts it.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DECERTIFY CLASS

has already ruled that these arguments do not defeat class certification.

> Defendant does not think this model is sufficient. Defendant first argues that Plaintiff's damages calculation is incorrect. Opp'n 14–15. This argument goes to the merits rather than the ability to answer the damages calculation methodology question on a classwide basis, so it does not rebut Plaintiff's showing that common questions predominate. *Ellis*, 657 F.3d at 981 n.8. Regardless of the correct market value of online classes at University of La Verne, the value is capable of classwide calculation…Defendant's main argument is that damages for some class members could be $0, but this possibility does not turn the damages question into a morass bogging down the common questions with individual ones. Thus, the proposed class satisfies the predominance requirement.

Dkt. 117, at 8; *id*. at 7 ("[i]n the predominance inquiry, 'plaintiffs must show that damages are capable of measurement on a class-wide basis,' though damages calculation issues cannot alone defeat class certification."); *see also Jordan v. Paul Fin.*, LLC, 285 F.R.D. 435, 466 (N.D. Cal. 2012) ("the Court need not decide the precise method for calculating damages at this stage.").

Defendant has provided no basis for the Court to reverse its ruling with respect to class-wide damages and Plaintiffs have, once again, demonstrated that damages are capable of being calculated on a class-wide basis and have provided a methodology for doing so through their expert. Further, even if the class does include members who were not damaged, that would not serve as a basis for decertification. Dkt. 117 at 8; *Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1136-37 (9th Cir.

---

Defendant's impossibility defense applies to all Class Members equally. Thus, whether is succeeds or fails, it will do so for the entire Class.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DECERTIFY CLASS

2016) (when a class definition is "reasonably co-extensive with Plaintiffs' chosen theory of liability" a claim that some absent class members suffered no injury is "a merits dispute about the scope of liability, and is not appropriate for resolution at the class certification stage."); *see also Risto v. Screen Actors Guild-American Fed'n of TV & Radio Artists*, No. 2:18-cv-07241-CAS(PLAx), 2020 U.S. Dist. LEXIS 168372, at *15-16 (C.D. Cal. Sep. 14, 2020).

Accordingly, Defendants have not met their burden to show that the class is overbroad and should be decertified.

**D. CAPA Students Are Rightfully Members of the Class**

**1. The Same Common Questions of Law and Fact Apply and Predominate for CAPA Students**

Rule 23(a)(2) requires "questions of law or fact common to the class." Courts construe this requirement permissively. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). Even a single common question of law or fact will do. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011). In its Class Cert. Order, the Court set forth the numerous common questions in this action that are capable of a common answers:

> These include: (i) whether students were entitled to receive access to Defendant's campus, facilities, in-person technologies, and other in-person and campus-based educational services when they paid main campus tuition and fees; (ii) whether students would reasonably expect to receive in-person and campus-based educational services as part of the student-university contract;

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DECERTIFY CLASS

(iii) whether Defendant breached the covenant to provide on-campus and in-person educational services during the spring 2020 semester when it closed campus, limited access to all campus facilities and services, and delivered emergency remote teaching in an online-only format; (iv) whether Defendant has any affirmative defenses; and (v) whether Defendant breached the student-university contract by failing to provide the services and facilities to which the Mandatory Fees pertained after mid-March 2020.

Dkt. 117 at 4-5. All of these common questions apply with equal force to the CAPA and TUG students. This alone is sufficient to demonstrate that CAPA students are members of the Class.

Predominance is also satisfied with respect to the CAPA students. Indeed, the central factual and legal question is common to all members of the class: did ULV breach its contractual obligation to students when ULV closed its campus and moved all educational services to an online-only format in reaction to the COVID-19 pandemic AND retained the full amount of tuition and most fees? Resolution of this question will resolve Plaintiff's and the Class's claim, including the CAPA students. Accordingly, predominance is satisfied. *Ruiz Torres*, 835 F.3d at 1134 ("[Q]uestions apt to drive the resolution of the litigation are given more weight in the predominance analysis over individualized questions which are of considerably less significance to the claims of the class."); *Hanlon*, 150 F.3d at 1022 ("Predominance is satisfied "[w]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication."). At class

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DECERTIFY CLASS

certification, Plaintiffs are required to show that common questions exist and predominate, they are not required to prove the answers to those questions. *Stockwell v. City & Cnty. of San Francisco*, 749 F.3d 1107, 1112 (9th Cir. 2014). It is not necessary that all questions of fact and law be common in order for commonality to be satisfied. *Hanlon*, 150 F.3d at 1019. Here, Plaintiffs have already shown common questions of law and fact predominate and the Court agreed. It is now the Defendant's burden to show that common questions do not exist and predominate for the CAPA students and it has failed to do so.

Importantly, the CAPA student's contract with ULV was based on many of the same uniform and standardized documents as the traditional undergraduates – including, *inter alia*, the Master Promissory Note, 2019-2020 Course Catalog, ULV's website, and ULV's code of student conduct. *See, e.g.* Dkt. 70-11 (Master Promissory Note); 70-28 (2019-2020 Code of Student Conduct); Dkt. 72-1 (2019-2020 Catalog). And the nature of the breach is common to all class members. Just like the TUG students, CAPA students who registered for in-person classes on the Main Campus and paid their tuition and fees reasonably expected to receive the in-person and on-campus educational services they contracted for and paid for and ULV uniformly failed to provide those services for a material portion of the Spring 2020 semester and still retained the full amount of tuition and fees. *See, e.g.,* Dkt. 141-18; 141-19; Exs. B, Declaration of Marcus Williams ("Williams Decl.") at ¶¶

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DECERTIFY CLASS

4-10, 14-18.; C, Declaration of Katie Wright ("Wright Decl.") at ¶¶ 4-12, 16-20.

Based on documents produced by Defendants, 580 CAPA students are in the Class.[7] Dkt. 141-27. The evidence further shows that 510 CAPA students were enrolled in at least one TUG Main Campus course. *See id*. Thus, the overwhelming majority of the CAPA students were enrolled in TUG Main Campus courses and are factually indistinct from the TUG students with respect to the course(s) taken, timing of course, and the portion of the semester that the student was denied in-person and on-campus educational services. Exs. B ¶¶ 4-5; C at ¶¶ 4-5. That these students paid a different rate of tuition is a damages calculation issue that cannot defeat class certification. *Levya*, 716 F. 3d at 513 ("[i]n this circuit, however, damage calculations alone cannot defeat certification.").

Additionally, 227 CAPA students were enrolled in at least one Main Campus class offered on one of the CAPA calendar cycles.[8] *See* Dkt. 141-27. Again, these students registered for and paid for in-person and on-campus educational services which ULV did not provide for a material portion of the Spring 2020 semester. For these CAPA students the portion of the semester that was affected and the tuition

---

[7] The evidence shows that 75 CAPA students were not enrolled in any Main Campus courses and were enrolled only in online courses for the Spring 2020 Semester. Dkt. 141-27. Therefore, those 75 students would not fall into the definition of the Class.

[8] CAPA students could enroll in both TUG Main Campus and CAPA Main Campus courses during the same semester. *See* Exs. B at ¶ 13; C at ¶ 15.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DECERTIFY CLASS

paid are data points that will be plugged into the damages formula. Notably, the data points will be consistent across each CAPA calendar cycle. The law in the Ninth Circuit is clear: individual damage determinations cannot defeat class certification. *Levya*, 716 F. 3d at 513 (9th Cir. 2013); *see also Gaudin v. Saxon Mortg. Servs.*, 297 F.R.D. 417, 429 (N.D. Cal. 2013) (courts have "uniformly held that the 23(b)(3) predominance requirement is satisfied despite the need to make individualized damage determinations"); *Lambert v. Nutraceutical Corp.*, 870 F.3d 1170, 1182 (9th Cir. 2017).

Finally, ULV itself argued that the class definition should be "composed entirely of ULV's approximately 2700+ undergraduates enrolled for ULV's Spring 2020 Semester classes taught on its Central Campus in La Verne." Dkt. 86 at 3. The Court adopted the class definition advocated for by Defendant by limiting the class to undergraduate students. Dkt. 117 at 3. Defendant, of course, knew of its CAPA student population and did not advance the argument in its opposition to Plaintiffs' motion for class certification and instead argued that the class definition should include all 2700+ undergraduates, which includes the CAPA students. *See* Dkt. 141-26; 141-27 (lists of CAPA and TUG students evidencing 2209 traditional undergraduate students and 655 total CAPA students). All of the bases of Defendant's arguments that CAPA students should be excluded were available to it at the time of its opposition to class certification and ULV had exclusive control of

all evidence concerning CAPA students. It is thus improper for them to argue for their exclusion here. *Wiener v. Dannon Co.*, 255 F.R.D. 658, 671 (C.D. Cal. 2009) ("'[i]lf **later evidence** disproves Plaintiffs' contentions that common issues predominate, the district court can at that stage modify or decertify the class or use a variety of management devices to address the individualized issues that have arisen.'") (emphasis added); *id.* (refusing to decertify class as "Defendants have not supported this argument with either new controlling authority or new evidence."); *Leslie Salt*, 55 F.3d at 1393.

### 2. CAPA Students' Damages Are Capable of Class-Wide Measurement

Plaintiffs have already demonstrated, and this Court has agreed, that damages are susceptible to class-wide determination. That some members of the class are students in the CAPA program does not change the analysis for purposes of class certification. To satisfy predominance, a plaintiff must present a damages model that: (1) identifies damages that stem from the defendant's alleged wrongdoing; and (2) establishes that "'damages are susceptible of measurement across the entire class.'" *Comcast Corp. v. Behrend*, 569 U.S. 27, 34-35 (2013). Defendant has not shown that Plaintiffs proffered damages methodology does not satisfy this standard for CAPA as well as TUG students.

CAPA students are seeking the same damages as the TUG students: a pro-rated amount of tuition and fees that Plaintiff and students enrolled at the Main

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DECERTIFY CLASS

Campus paid for the affected portion of the semester, adjusted for the services the students actually received. Plaintiffs' proffered damages methodology and formula calculates just that. It takes the portion of the semester that was affected and calculates the actual payment (adjusted for the ULV Subsidies), the but-for payment and the amount overpaid to calculate damages. Prior to Dr. Cowan's initial report, Defendants did not provide Plaintiffs with a breakdown of traditional undergraduate students and CAPA students. *See* Ex. D, Supplement to Expert Report (1/18/22) ("Supplemental Report") at 6-7 ("At the time I prepared my first expert report, ULV reported 2,787 undergraduate students in the class while omitting how they split into TUGS and CAPA groups). Dr. Cowan, however, has explained in his Supplemental Report that when he and Plaintiffs receive the necessary data from Defendant (i.e. the number of credits each student took during which cycles) he "will be able to calculate damages for [CAPA] class members using a damages methodology along the lines the one I provided in my first report." *Id.* at 10. These differences in damages calculations do not defeat class certification. *Levya*, 716 F. 3d at 513.[9]

_____

[9] Defendant argues that CAPA students have no damages because they agreed to pay $685 for in-person or online courses. This is just another iteration of Defendant's argument that Plaintiffs' use the wrong market comparator, which is an inappropriate merits argument. *See* Dkt. 117 at 8. While the Court need not even consider this argument on a decertification motion, Defendant is nonetheless wrong. When CAPA students paid tuition and fees, they had the option of taking any combination of in-person or online courses – an option that was not available to La Verne Online students. Exs. B at ¶ 13; C at ¶ 15. CAPA students also had complete access to Main Campus and all of its facilities and services that were no longer available after ULV

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DECERTIFY CLASS

**E. The Class Should Not Be Narrowed**

Defendant argues that if the class is not decertified, it should at least be narrowed either to: (i) students whose per unit tuition was less than $645 per unit and/or (ii) exclude CAPA students. Both arguments for narrowing the class fail.

The class definition cannot be narrowed to students who paid less than $645 per unit as that would require an impermissible evaluation of the merits of the claim. *Ruiz Torres.*, 835 F.3d at 1136-37 (when a class definition is "reasonably co-extensive with Plaintiffs' chosen theory of liability" a claim that some absent class members suffered no injury is "a merits dispute about the scope of liability, and is not appropriate for resolution at the class certification stage."). Plaintiffs' proffered damages methodology and formula issued by their expert offers a systematic and economically sound way to determine the value of what students actually paid versus what they received. *See* Exs. A; D. Defendant casually suggests (with no support) that class membership should be determined by a simple subtraction equation that includes inappropriate offsets (i.e. emergency aid that had nothing to do with the cost of tuition or fees) as the way to determine membership in the class. From this unsupported equation, Defendant claims it can determine that certain Class Members

---

transitioned to online-only education. Exs. B at ¶ 15; C at ¶ 17. That CAPA students could have taken online courses does not mean that they were not damaged when their in-person and on-campus educational services that they contracted for and paid for were no longer provided to them.

25

have no actionable damages and that the Court should overturn its previous ruling and remove those students from the Class. ULV also asks this Court to make an inappropriate merits determination that these Class Members have no damages with respect to fees paid in the Spring 2020 semester when it is clearly contested whether and to what extent campus services to *all* students remained available, if at all, during the entirety of Spring 2020 semester. Accordingly, it would be improper for this Court to reverse class certification and make a merits-based determination that a portion of the Class is not damaged and should be excluded from the certified Class.

Finally, for the reasons explained in section III.D, *supra*, CAPA students should not be excluded from the Class. All requirements of Rule 23 have been met with respect to CAPA students and Defendant has failed to meet its burden to demonstrate that the Court should decertify the CAPA population of the Class.

## IV.    CONCLUSION

For all of the reasons discussed above, Plaintiff requests that the Court deny Defendant's motion to decertify the class in its entirety.

Respectfully submitted this 18th day of April, 2022.

**SULTZER LAW GROUP, P.C.**

/s/ *Mindy Dolgoff*
Mindy Dolgoff, Esq.*
Jason P. Sultzer, Esq.*
85 Civic Center Plaza, Suite 104
Poughkeepsie, New York 12601
Tel. (845) 483-7100

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DECERTIFY CLASS

\*Admitted Pro Hac Vice

**LEEDS BROWN LAW, P.C.**
Jeffrey K. Brown, Esq.*
Michael A. Tompkins, Esq.*
One Old Country Road, Suite 347
Carle Place, NY 11514
Telephone: (516) 873-9550
\*Admitted Pro Hac Vice

**SHOOP A PROFESSIONAL LAW CORPORATION**
David R. Shoop, Esq.
Thomas S. Alch, Esq.
9701 Wilshire Blvd., Suite 950
Beverly Hills, California 90212
Tel. (310) 620-9533

**CHARON LAW**
Perry L. Segal, Esq.
303 Twin Dolphin Drive, Suite 600
Redwood City, California 94065
Tel. (650) 542-7935

*Counsel for Plaintiff Brianna Arredondo and the Certified Class*

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DECERTIFY CLASS