CONFIDENTIAL

# IN THE UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIANNA ARREDONDO, on behalf of herself and all others similarly situated, | |
| Plaintiff, | No.: 2:20-cv-07665-MCS-RAOx |
| vs. | |
| THE UNIVERSITY OF LA VERNE, | |
| Defendant. | |

## SUPPLEMENT TO EXPERT REPORT (1/18/22) OF CHARLES D. COWAN, PH.D.

### April 04, 2022

**CONFIDENTIAL**

# Table of Contents

I.    Damages Calculation for Traditional Undergraduate Students. ................................................. 2

Appendix I.-  Recently Available Information ................................................................................................. 6

    A.    Data for Traditional Undergraduate Students ............................................................................. 7

    B.    Data for Students in the Campus Accelerated Program for Adults ...................................... 9

Appendix II.-  Materials Relied On ........................................................................................................................ 12

**CONFIDENTIAL**

I. Damages Calculation for Traditional Undergraduate Students.

1. On January 18, 2020, I submitted an expert report where I detailed an appropriate methodology to calculate the losses that ULV students incurred in Spring 2020. In that report, using the information available to me at that time about the Plaintiffs' representative, Ms. Arredondo, I applied the proposed methodology and estimated her tuition related damages.

2. At the time I prepared my expert report, detailed information similar to that provided for Ms. Arredondo had not been produced for other class members, including any information on fees. Recently, I received two files that contain student level data that allows me to compute losses for a portion of the students in the certified class, following the methodology I detailed in my first expert report. These files are "ULV 005885 (Spring 2020 TUGS Financial Data)_CONFIDENTIAL.xlsx" and "ULV 005884 (Spring 2020 CAPA Financial Data)_CONFIDENTIAL.xlsx".

3. As result, the damages calculations I report here supplement my first expert report. However, as I explain in the Appendix to this report, using the information that the Defendant has provided so far, I am able to provide damages calculation for part of the class, the traditional undergraduate students, and only the damages related to tuition and lab fees. In the Appendix, I describe the lack of relevant information in the databases

**CONFIDENTIAL**

provided by ULV. I also note the assumptions on which I base my calculations.[1] However, once I have the needed data, I will be able to apply the damages methodology and formula outlined in my first report to the data to calculate the damages for the remaining class members and for the health services fee and I reserve the right to do so.

4. I also explain in the Appendix the reason for providing two estimates of tuition related damages. Following the conservative method to impute students' tuition paid in Spring 2020 included in my first expert report, my estimate of traditional undergraduate students' tuition related damages is $15,634,276. When I include prejudgment interest, the total is $18,917,474. (See Table 1.) A modestly different alternative, using the new information I received regarding the number of credit hours that students undertook, and using the same tuition pricing rates detailed in the ULV course catalog, my estimate of traditional undergraduate students' tuition related damages is $15,707,377.5, and $19,005,926.8 including prejudgment interest. (See Table 2.)

5. My estimate of damages related to traditional undergraduate students' lab fees is $136,179, which becomes $164,776.8 when including prejudgment interest. (See Table 3.) The file "Cowan_Damages_Calculations_TUGS.xlsx" details the damages calculations for each student.

---

[1] For instance, I assume that the credit hours reported by Defendant correspond to face-to-face courses delivered by ULV Main Campus; otherwise, credit hours should be assessed properly before they are included in the calculation of damages. At this time, Defendant has not provided information to distinguish credit hours that did not meet my assumption.

**CONFIDENTIAL**

Table 1:  Calculation of Tuition Damages for the class members who are traditional undergraduate students – Conservative Approach.

| Description | Dollar |
|---|---|
| Value Contracted For | $ 47,264,580 |
| Online price for total hours taken | $ 21,959,670 |
| Value received (in-person portion of semester) | $ 17,015,248 |
| Value received (online portion of semester) | $ 14,054,188 |
| Value received | $ 31,069,437 |
| Total La Verne Subsidies | $ 22,376,290 |
| But for payment | $ 9,259,386 |
| Amounts paid and not subsidized by ULV | $ 24,893,663 |
| **Amount Overpaid** | **$ 15,634,276** |
| Prejudgment Interest | $ 3,283,198 |
| **Damages (Including Prejudgment Interest)** | **$ 18,917,474** |

Table 2:  Calculation of Tuition Damages for the class members who are traditional undergraduate students – Course Catalog Approach

| Description | Dollar |
|---|---|
| Value Contracted For | $ 47,380,500 |
| Online price for total hours taken | $ 21,959,670 |
| Value received (in-person portion of semester) | $ 17,056,980 |
| Value received (online portion of semester) | $ 14,054,188 |
| Value received | $ 31,111,168 |
| Total La Verne Subsidies | $ 22,376,290 |
| But for payment | $ 9,299,685 |
| Amounts paid and not subsidized by ULV | $ 25,007,063 |
| **Amount Overpaid** | **$ 15,707,377** |
| Prejudgment Interest | $ 3,298,549 |
| **Damages (Including Pre-Judgment Interest)** | **$ 19,005,926** |

Table 3:  Calculation of Lab Fees for the class members who are traditional undergraduate students.

| Description | Dollar |
|---|---|
| Value Contracted For | $ 212,780 |
| Value received (in-person portion of semester) | $ 76,600 |
| Value received (online portion of semester) | $ 0 |
| Value received | $ 76,600 |
| **Amount Overpaid** | **$ 136,179** |
| Prejudgment Interest | $ 28,597 |
| **Damages (Including Prejudgment Interest)** | **$ 164,776** |

**CONFIDENTIAL**

April 04, 2022
San Antonio, TX

_____
Charles D. Cowan, Ph.D.

5

**CONFIDENTIAL**

Appendix I.- Recently Available Information

1. I recently received two files that contain student level data intended to be used for damages calculations, following the methodology I detailed in my expert report: "ULV 005885 (Spring 2020 TUGS Financial Data)_CONFIDENTIAL.xlsx" and "ULV 005884 (Spring 2020 CAPA Financial Data)_CONFIDENTIAL.xlsx".

2. While Defendant provided student level data in the two referenced files, ULV did not provide details as to what information was contained in each column or variable in each spreadsheet. Based on the headings of each column and the information that Plaintiffs' counsel informed me was requested from Defendants, I interpret that each row in the spreadsheet corresponds to an undergraduate student who is part of the class; rows have no name or other unique identifier.[2] There are other information omissions that I detail below.

3. Plaintiff's counselor also informed me that the file "ULV 005885 (Spring 2020 TUGS Financial Data)_CONFIDENTIAL.xlsx" contains information for traditional undergraduate students, while the file "ULV 005884 (Spring 2020 CAPA Financial Data)_CONFIDENTIAL.xlsx" corresponds to students in ULV Campus Accelerated Program for Adults (CAPA). Based on these files, the number of undergraduate students who are class members is 2,864: TUGS, 2,209; CAPA, 655. At the time I prepared my first expert

---

[2] Plaintiffs' counsel confirms my interpretation.

6

**CONFIDENTIAL**

report, ULV reported 2,787 undergraduate students in the class while omitting how they split into TUGS and CAPA groups.

### A. Data for Traditional Undergraduate Students

4. I rely on the following information contained in the file "ULV 005885 (Spring 2020 TUGS Financial Data)_CONFIDENTIAL.xlsx" to calculate tuition damages, following the methodology that I detail in my first expert report: [3]

   a. Column named "ST_UNIT", which I understand lists the number of credit hours each student was enrolled in during Spring 2020.[4]

   b. Column named "INST_GRANT", which I understand presents the total financial aid that a student received from University of La Verne, including ULV Grant and ULV Founders Scholarships. That is, this corresponds to what I referred to "ULV Subsidies" in my expert report.

5. The database provided includes a column named "TUITION _SP2020", which I understand is the actual tuition paid by a student in Spring 2020 and, so, it is calculated based on the combined number of credit hours a student enrolled in the January 2020 Interterm and in the Spring 2020 semester. While courses taught in Spring 2020 were disrupted when ULV transitioned to delivering all its course via online, courses delivered

---

[3] Plaintiffs' counsel confirms my interpretation.
[4] It is my understanding that columns JI_UNITS and TOTAL_UNITS also include number of credit hours, however, the first correspond to the January 2020 Interterm whereas the latter refers to the total credit hours during both January 2020 Interterm and Spring 2020. I must also point out that, at the time I prepared my expert report, I was not given this split of total credit hours, by January 2020 Interterm and Spring 2020 semester, for Ms. Arredondo.

7

**CONFIDENTIAL**

in January 2020 Interterm were not. Therefore, I cannot rely on the tuition values reported in column "TUITION _SP2020".

6. The method that I proposed in my expert report is based on obtaining the tuition that students paid for the courses they took in Spring 2020 semester only. This information was not provided by ULV. To proceed, I calculated the proportion of tuition paid based on the number of credit hours students took during Spring 2020 only. In my first report, I mentioned a conservative method to calculate tuition paid based on whether the student's status was full- or part-time. Upon inspection of the data received, as well as the ULV course catalog, I realized that there are full-time students with academic overload in Spring 2020.[5]

7. Thus, I now perform the calculation of tuition damages based on the following two alternative estimates of tuition paid, where HRS stands for number of enrolled credit hours in Spring 2020:

    a. Conservative Approach to Impute Students' Spring 2020 Tuition Paid

        If HRS < 12, tuition paid = HRS × $1,260        (part-time students)
        If HRS ≥ 12, tuition paid = $21,720            (full-time students)

    b. ULV Course Catalog Approach to Impute Students' Spring 2020 Tuition Paid[6]

        If HRS < 12, Tuition = HRS × $1,260           (part-time students)
        If 12 ≤ HRS ≤ 18, Tuition = $21,720          (full-time students)

---

[5] According to ST_UNITS, out of the 2,209 TUGS students in Spring 2020, 52 were part-time, 2,118 full-time and 39 full-time with academic overload.
[6] See "Document 72-1 Exhibit B (University of La Verne Catalog 2019 - 2020) at ULV 000067".

If HRS > 18, Tuition = $21,720 + (HRS-18) × $1,260   (full-time with overload)

8. In terms of ULV students' damages that resulted from their payment of fees in Spring 2020 semester, as I pointed out in my expert report, two student fees are considered: lab fees and health services fees. The data provided for the TUGS group include the following two pieces of information: [7]

   a. Column named "LAB_FEES", which I understand includes the total amount of lab fees that each student paid in Spring 2020.
   b. Column named "HEALTH_INS_FEE", which I understand shows the amount each student paid in health insurance fee in Spring 2020.

9. In relation to lab fees related damages, I follow the proration method that I explained in my expert report.

10. Regarding health insurance fee related damages, Defendant has yet to provide further information, for example, the proportion of the services covered under this fee that were available to students during the second part of Spring 2020 semester when ULV main campus was closed. Therefore, I cannot provide an estimate of the health insurance relates damages at this time. I reserve the right to update my damages calculations should this information become available to me.

   B. Data for Students in the Campus Accelerated Program for Adults

11. Like in the database for the TUGS group, the file "ULV 005884 (Spring 2020 CAPA Financial Data)_CONFIDENTIAL.xlsx" contains information that I could use to calculate

---

[7] Plaintiffs' counsel confirms my interpretation.

9

**CONFIDENTIAL**

damages, assuming my understanding of variables or column names is correct. For instance, columns named "INST_GRANT", "LAB_FEES", "TOTAL UNIT HOURS" and "TUITION".

12. In contrast to the TUGS database, the CAPA database suffers more from lack of details. While the database for the TUGS group provided the number of credit hours a student took in each January 2020 Interterm and Spring 2020 semester, the CAPA database only provides the total number of credit hours, "TOTAL UNIT HOURS". And, as I understand it based on the Course Catalog and as reflected in the CAPA database, there are several different "cycles" in which a CAPA student could had been enrolled in during Spring 2020: "N__CAPA_CYCLE_I_REG", "O__CAPA_CYCLE_II_REG", "X__CAPA_ACCEL_EVENING_REG", "S__MAIN_CAMPUS_REG", "CDL__CAPA_ONLINE_REG", "JN__JAN_INTERSESS_REG", and "CAPA REG CLASS DEF CYCLE".

13. Some of the CAPA sessions listed above were affected when ULV closed its main campus. As a result, in terms of calculating tuition related damages I should be focused on the at-issue credit hours, but I cannot because ULV did not specify the number of credit hours a student enrolled in in each of the possible sessions during Spring 2020. Once I receive the data concerning how many credit hours each student took in each of the cycles, I will be able to calculate tuition related damages for these class members using a damages methodology along the lines the one I provided in my first report.

**CONFIDENTIAL**

14. A similar issue appears in relation to the calculation of lab fees related damages, ULV did not provide them by session. Finally, regarding the calculation of damages due to the health insurance fee, ULV did not provide it in the CAPA database. Once I receive relevant data for lab fees and the health insurance fee, I will be able to calculate these damages for these class members using a damages methodology along the lines the one I provided in my first report.

15. In sum, given that Defendant did not provide all necessary information, at this point I cannot perform any damage calculation regarding the CAPA group of students. I reserve the right to update my damages calculations should this information become available to me.

**CONFIDENTIAL**

Appendix II.- Materials Relied On

- Expert Report of Charles D. Cowan, Ph.D. Brianna Arredondo v. University of La Verne (No.: 2:20-cv-07665-MCS-RAOx) in The United States District Court – Central District of California. January 18, 2020. (Cowan expert report.)
- All materials listed in Exhibit 3 (Materials Relied On) in the Cowan expert report.
- "ULV 005885 (Spring 2020 TUGS Financial Data)_CONFIDENTIAL.xlsx"
- "ULV 005884 (Spring 2020 CAPA Financial Data)_CONFIDENTIAL.xlsx"