1
2
3
4
5
6
7
8                           UNITED STATES DISTRICT COURT

9                           CENTRAL DISTRICT OF CALIFORNIA

10   BRIANNA ARREDONDO, on behalf          Case No. 2:20-cv-07665-MCS-RAO
     of herself and all others similarly
11   situated,
                                           **ORDER RE: CROSS-MOTIONS FOR**
12                                         **SUMMARY JUDGMENT (ECF NOS.**
                   Plaintiff,              **138, 143), MOTION TO DECERTIFY**
13                                         **CLASS (ECF NO. 141), AND EX**
            v.                             **PARTE APPLICATION TO STRIKE**
14                                         **(ECF NO. 160)**
15   UNIVERSITY OF LA VERNE,
16
17                 Defendant.
18

19          Defendant University of La Verne ("Defendant" or "ULV") filed two motions to

20   dispose of this class action. First, Defendant filed a motion for summary judgment in

21   its favor on all remaining claims in the case. Def.'s MSJ, ECF No. 138. Plaintiff and

22   class representative Brianna Arredondo opposed the motion, Def.'s MSJ Opp'n, ECF

23   No. 148, and Defendant replied, Def.'s MSJ Reply, ECF No. 151. Second, Defendant

24   filed a motion to decertify the class in this case. Class Mot., ECF No. 141. Plaintiff

25   opposed the motion, Class Opp'n, ECF No. 147, and Defendant replied, Class Reply,

26   ECF No. 152. Plaintiff cross-moved for partial summary judgment on the existence of

27   an implied contract. Pl.'s MSJ, ECF No. 143. Defendant opposed the motion, Pl.'s MSJ

28   Opp'n, ECF No. 153, and Plaintiff replied, Pl.'s MSJ Reply, ECF No. 157. Finally,

                                           1

Defendant filed an ex parte application to strike several exhibits Plaintiff filed with her motion for summary judgment. Appl., ECF No. 160. Plaintiff opposed the application. Appl. Opp'n, ECF No. 161. The Court deems these matters appropriate for decision without oral argument. Fed. R. Civ. P. 78(b); C.D. Cal. R. 7-15.

## I.    BACKGROUND

Plaintiff filed this putative class action in federal court, alleging breach of contract, unjust enrichment, and conversion after Defendant moved in-person university classes online due to the COVID-19 pandemic. *See generally* SAC, ECF No. 44. Following a motion to dismiss, the breach of contract claim remains. MTD Order, ECF No. 50. The Court previously certified a class for the breach of contract claim. Class Cert. Order, ECF No. 117.

## II.   LEGAL STANDARD

### A.    Motion for Summary Judgment

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). A fact is material when, under the governing law, the resolution of that fact might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The burden of establishing the absence of a genuine issue of material fact lies with the moving party, *see Celotex*, 477 U.S. at 322–23, and the court must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party, *Scott v. Harris*, 550 U.S. 372, 378 (2007). To meet its burden, "[t]he moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1106 (9th Cir. 2000). Once the moving party satisfies its burden, the nonmoving

1    party cannot simply rest on the pleadings or argue that any disagreement or
2    "metaphysical doubt" about a material issue of fact precludes summary judgment.
3    *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). There is
4    no genuine issue for trial where the record taken as a whole could not lead a rational
5    trier of fact to find for the nonmoving party. *Id*. at 587.

6           **B.    Motion for Class Decertification**

7           "An order that grants or denies class certification may be altered or amended
8    before final judgment." Fed. R. Civ. P. 23(c)(1)(C); *see also Rodriguez v. W. Publ'g*
9    *Corp.*, 563 F.3d 948, 966 (9th Cir. 2009) ("A district court may decertify a class at any
10   time."). A party seeking class certification bears the burden of demonstrating
11   compliance with class certification requirements even on a motion to decertify a class.
12   *Marlo v. UPS, Inc.*, 639 F.3d 942, 947 (9th Cir. 2011). A court may also consider
13   subsequent developments in the litigation since an order certifying a class. *Gen. Tel.*
14   *Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982).

15          Federal Rule of Civil Procedure 23 requires a party seeking class certification to
16   "affirmatively demonstrate his compliance with the Rule—that is, he must be prepared
17   to prove that there are *in fact* sufficiently numerous parties, common questions of law
18   or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). This requires a
19   district court to conduct "rigorous analysis" that frequently "will entail some overlap
20   with the merits of the plaintiff's underlying claim." *Id.* at 351 (internal quotation marks
21   omitted). A plaintiff must demonstrate that the four requirements of Rule 23(a) are met:
22   (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation.
23   These requirements effectively "limit the class claims to those fairly encompassed by
24   the named plaintiff's claims." *Id.* at 349 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457
25   U.S. 147, 155 (1982)). The party also must prove the class meets one of the three
26   alternative provisions in Rule 23(b). *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013).

27          Where, as here, the plaintiff seeks certification under Rule 23(b)(3), the plaintiff
28   must show "that the questions of law or fact common to class members predominate

over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In evaluating predominance and superiority, courts consider four factors: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." *Id.*

### C.    Ex Parte Application

Ex parte applications are solely for extraordinary relief and are rarely justified. *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 490 (C.D. Cal. 1995). A party filing an ex parte application must support its request for emergency relief with "evidence . . . that the moving party's case will be irreparably prejudiced if the underlying motion is heard according to regularly noticed motion procedures," and a showing "that the moving party is without fault in creating the crisis that requires ex parte relief, or that the crisis occurred as a result of excusable neglect." *Id.* at 492.

## III.    DISCUSSION

The parties make several evidentiary objections. *See, e.g.*, Objs., ECF No. 154. The Court overrules the objections to the evidence it cites and denies all other objections as moot.

### A.    Application to Strike Exhibits

Defendant moves to strike several exhibits filed by Plaintiff. Specifically, it moves to strike several exhibits Plaintiff refiled to comply with local rules and one apparently new exhibit. Appl. 5. This new document was produced from Defendant's records. *See* Ex. QQ, ECF No. 156-54 (University of La Verne President's Cabinet meeting minutes); *see also* Appl. Opp'n 2 n.1.

The Court denies the application. While the ex parte application is procedurally appropriate, Defendant's argument falls short. Defendant argues that the Court may not

4

consider new evidence filed in support of a reply brief. Appl. 6–8. With the exception of Exhibit QQ, none of this evidence is new. Plaintiff merely refiled exhibits to comply with form requirements imposed by this Court's standing order. *See* Initial Standing Order § 10(c)(ii), ECF No. 30. The Court properly may consider these documents since they merely reflect proper versions of the exhibits filed in support of Plaintiff's motion for summary judgment. Regarding Exhibit QQ, the Court disregards this filing as new evidence presented for the first time with the reply papers. *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief."). The Court deems evidentiary objections made to Plaintiff's original exhibits to apply to Plaintiff's new exhibits.

### B.   Plaintiff's Cross-Motion for Summary Judgment

Plaintiff argues that the undisputed evidence demonstrates the existence of an implied contract. *See generally* Pl.'s MSJ. Defendant disputes that an implied contract exists. Pl.'s MSJ Opp'n 15–27. Defendant also argues that Plaintiff has not adequately proved Defendant breached the contract due to impossibility and failure to perform a condition precedent. *Id.* at 27–30. The breach and impossibility contentions are outside of the scope of Plaintiff's motion for partial summary judgment, which only seeks to address the existence of an implied contract. Defendant's invocation of these matters amounts to procedurally improper requests for adjudication of these issues. The Court declines to address the impossibility and breach issues in Defendant's opposition on this basis. *See* C.D. Cal. R. 6-1 ("[E]very motion shall be presented by written notice of motion."); *Smith v. Premiere Valet Servs., Inc.*, No. 2:19-cv-09888-CJS-MAA, 2020 U.S. Dist. LEXIS 228465, at *42 (C.D. Cal. Aug. 4, 2020) (collecting cases for the proposition that "a request for affirmative relief is not proper when raised for the first time in an opposition"). The Court instead addresses these issues when addressing Defendant's own motion for summary judgment.

"Because a formal contract between a student and university is rarely prepared, 'the general nature and terms of the agreement are usually implied, with specific terms

to be found in the university bulletin and other publications; customs and usages can also become specific terms by implications.'" *Nguyen v. Stephens Inst*., 529 F. Supp. 3d 1047, 1054 (N.D. Cal. 2021) (quoting *Kashmiri v. Regents of Univ. of Cal.*, 156 Cal. App. 4th 809, 828 (2007)). These publications may include a university's website and catalog. *See Kashmiri*, 156 Cal. App. 4th at 828–29. However, not all statements in these publications become contractual obligations. *Id.* To determine whether such statements become part of the implied contract, courts look at the reasonable expectations of the parties at the time the contract. *Id.* at 832. To do so, courts look at the "totality of circumstances." *Id.* (internal quotation marks omitted). This is an objective standard which is "measured by the definiteness, specificity, or explicit nature of the representation at issue." *Id.* To satisfy this standard, a plaintiff must identify specific statements in a university's publications that formed the alleged promise. *See, e.g.*, *Saroya v. Univ. of Pac*., 503 F. Supp. 3d 986, 996–98 (N.D. Cal. 2020) (finding an implied contract for in-person education existed where course catalogs included information about the "days and times" and the "location" of classes and also touted access to campus in exchange for tuition payments); *In re Univ. of San Diego Tuition & Fees Covid-19 Refund Litig.*, No. 20cv1946-LAB-WVG, 2022 U.S. Dist. LEXIS 59220, at *12–13 (S.D. Cal. Mar. 30, 2022) (finding an enforceable implied contract for in-person education existed where a university touted meeting times and physical locations for its courses in its catalog, policies requiring in-person faculty office hours, and general availability of all university facilities on campus); *McCarthy v. Loyola Marymount Univ*., No. 2:20-cv-04668-SB (JEMx), 2021 U.S. Dist. LEXIS 19204, at *9–11 (C.D. Cal. Jan. 8, 2021) (finding an implied contract for in-person education existed where the university's statements that touted in-person teaching and on-campus experiences).

Plaintiff points to several ULV publications that establish the existence of an implied contract, including recruitment and acceptance letters, deposit campaigns, campus tour and preview day promotions, registration materials, and ULV's 2019–2020

Catalog. Pl.'s MSJ 14–25. In its promotional and standardized documents, ULV displayed images of its campus and students on its campus. *See, e.g.*, Ex. J, ECF No. 156-10 (picturing seven images of campus in an admissions packet). In recruitment letters, Defendant told students that "[i]t's important to find a college that's the right fit for you, and there's no better way to do that than to experience a campus for yourself." Ex. L, ECF No. 156-12 Defendant also persuaded admitted students to enroll by mentioning campus access in communications accompanying requests for deposits. *See* Ex. Q, at 55, ECF No. 156-17 ("We encourage you to submit the deposit soon so that we can prepare for [student]'s arrival on campus."); Ex. R, ECF No. 156-18 (mentioning classrooms and new physical buildings on campus that will provide resources "for the entire campus community"); Ex. Y, ECF No. 156-36 (stating "[w]e're excited to see you on campus!" after providing initial deposit information in an acceptance letter). Defendant promoted its "Spotlight Weekend" where admitted students could "tour the campus and neighborhood, dig in at the dining hall, and stay overnight in a residence hall." Ex. S, ECF No. 156-19. In this same promotion, Defendant included a "beautiful, welcoming campus to call home" in its list of "10 reasons to love the University of La Verne." *Id.*

Plaintiff and other class members chose classes on ULV's online web portal which specified the classrooms' physical locations on campus. Henry Decl. ¶¶ 12–13, ECF No. 156-3; Arredondo Decl. ¶¶ 15–16, ECF No. 156-2 After registration, ULV also generated a report listing its "Main Campus" as the location of enrollment. Ex. T, at 2, ECF No. 156-20.

In the ULV Catalog, various marketing materials, admission letters, and the Code of Conduct, Defendant makes a total of 1,043 references to "campus" and includes 605 images of in-person or on-campus experiences at ULV. Pl.'s MSJ Reply 10; *see generally* Ex. G ("Catalog"), ECF No. 156-7; Ex. VV, ECF No. 156-61 (international student welcome packet); Ex. W, ECF No. 156-23 to -34 (ULV promotional materials); Ex. V, ECF No. 156-22 (code of student conduct).

Defendant argues that express disclaimers in its Catalog are contrary to any implied contract obligating ULV to partially refund tuition because Plaintiff could not have reasonably expected such a refund. Pl.'s MSJ Opp'n 24. First, Defendant points to a provision stating that "[t]he University reserves the right to make changes to all published rates of tuition and fees at any time without prior written notice." Catalog 34.[1] The Catalog also states that "the University reserves the right to make necessary changes in policies, requirements, tuition, fees and calendars contained herein at any time without prior notification." Catalog 3. Further, the Catalog states that "[i]t is the responsibility of the student to be familiar with the information presented in this catalog and to know and observe all policies and procedures related to the academic program the student is pursuing." *Id.* While these disclaimers permit ULV to change tuition rates, other fees, and campus policies, they do not mention any power ULV has to change in-person classes to online classes. These disclaimers do not clearly establish that ULV has such power. *See* Cal. Civ. Code § 1649 ("If the terms of a promise are in any respect ambiguous or uncertain, it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promise understood it."); *see also* Cal. Civ. Code § 1654 ("In cases of uncertainty not removed by the preceding rules, the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist."). These disclaimers also do not allocate risk to the students for Defendant's failure to offer in-person classes. *See generally* Catalog; *cf. Lindner v. Occidental Coll.*, No. CV 20-8481-JFW(RAOx), 2020 U.S. Dist. LEXIS 235399, at *22 (C.D. Cal. Dec. 11, 2020) (finding no implied contract when a college stated in its catalog that it reserved the right "to change fees, modify its services, or change its program should economic conditions or national emergency make it necessary to do so.").

/ / /

---

[1] Pinpoint citations of the Catalog refer to the page numbers generated by CM/ECF.

Defendant points to other program pricing and refund provisions in the catalog to justify its position. Pl.'s MSJ Opp'n 26. These provisions do not discuss allowing ULV to retain already-paid tuition and fees without providing in-person services of the traditional undergraduate program which ULV represents in the Catalog. Catalog 34, 39, 42. Rather, ULV's Code of Conduct lists "Interim Suspension" and "Persona Non-Grata Order" as disciplinary actions that may result in removal from campus, but only after due process. Ex. V, at 14–16. Thus, it was still reasonable for Plaintiffs to expect to receive an in-person, on-campus education and receive a partial refund if ULV failed to provide this.

Taken together, ULV's statements in its publications demonstrate a "definiteness, specificity, or explicit nature" of an implied promise for an in-person, on-campus education. *Kashmiri*, 156 Cal. App. 4th at 832. Because Defendant made a substantial number of references to accessing campus facilities in its publications throughout the admissions, payment, and registration process, Plaintiff and class members had a reasonable expectation to access these facilities in exchange for tuition payment. Because Defendant listed physical locations of classes during the registration and payment process, Plaintiff and class members also reasonably understood that they would be receiving access to the Main Campus if they paid Main Campus tuition and fees. *Saroya*, 503 F. Supp. 3d at 996–98; *In re Univ. of San Diego*, 2022 U.S. Dist. LEXIS 59220, at *12–13. Based on Defendant's communications through various university publications, any reasonable student would believe that a tuition deposit would confer in-person access to the ULV campus. *Nguyen*, 529 F. Supp. 3d at 1054. Thus, in-person offerings would be a term of the implied contract between on-campus students and ULV.

The Court grants Plaintiff's motion.

## C.    Defendant's Cross-Motion for Summary Judgment

Defendant argues, among other things, that performance of the contract was impossible because California COVID-19 shutdown orders made in-person education

impossible. Def.'s MSJ 22–24. Under California law, "[t]he want of performance of an obligation . . . in whole or in part . . . is excused . . . [w]hen such performance . . . is prevented or delayed . . . by the operation of law . . . ." Cal. Civ. Code § 1511; *see also Baird v. Wendt Enters., Inc.*, 248 Cal. App. 2d 52, 55 (1967) ("[T]here is no liability for breach of a contract whose performance has been made impossible by operation of law . . . ."). Performance is impossible not only when it is strictly impossible but also when performance is impracticable "because of extreme and unreasonable difficulty, expense, injury or loss involved." *Bd. of Supervisors v. McMahon*, 219 Cal. App. 3d 286, 300 (1990).

The parties agree on the undisputed facts surrounding the shutdown orders. On March 4, 2020, California Governor Gavin Newsom and the County of Los Angeles declared a state of emergency to assist with the protection of health and the safety of their residents in light of the COVID-19 pandemic. Pl.'s Statement of Genuine Disputes of Material Fact ("Pl.'s GDMF") ¶ 2, ECF No. 150. The University of La Verne announced that Main Campus classes would shift to remote instruction starting March 16, 2020. *Id.* ¶ 3. On March 12 and 13, Governor Newsom banned gatherings of more than 250 people. *Id.* ¶ 4. On March 16, the County of Los Angeles banned indoor gatherings of more than 50 people. *Id.* ¶ 6. On March 19, Governor Newsom issued Executive Order N-33-20, which ordered all persons living in California to stay at home, exempting only essential infrastructure workers. *Id.* ¶ 7. On March 19, the County of Los Angeles prohibited indoor gatherings of 10 or more people, exempting only essential businesses. *Id.* ¶ 8. Governor Newsom rescinded his stay-at-home order on June 11, 2021. *Id.* ¶ 11.

Plaintiff notably does not argue that performance of this contract was possible. Def.'s MSJ Opp'n 7–9. Nor could she. The California shutdown order required all persons not working in essential infrastructure sectors to remain at home, and the County shutdown order prohibited indoor gatherings of 10 or more people except for essential businesses. Plaintiff makes no argument that University of La Verne operates

1  an essential business. *Id.* These shutdown orders made performance of the implied

2  contract to offer in-person classes impossible by operation of law. *Baird*, 248 Cal. App.

3  2d at 55.

4  When performance of a contract is rendered impossible, however, a plaintiff can

5  still recover restitutionary damages through a quasi-contract action. *Durell v. Sharp*

6  *Healthcare*, 183 Cal. App. 4th 1350, 1370 (2010) ("[R]estitution may be awarded in

7  lieu of breach of contract damages when the parties have an express contract, but it was

8  procured by fraud or is unenforceable or ineffective for some reason." (internal

9  quotation marks omitted)). "The person receiving the benefit is required to make

10  restitution only if the circumstances are such that, as between two individuals, it is

11  *unjust* for the person to retain it." *Id.* (internal quotation marks omitted). Courts consider

12  policy considerations when determining whether it is unjust to retain a benefit, including

13  whether the benefit is retained because of a person's mistake, whether it is desirable to

14  allow a party to retain the benefit of his or her bargain, and whether it is customary to

15  have the party incurring the loss to assume the risk. *First Nationwide Savings v. Perry*,

16  11 Cal. App. 4th 1657, 1663 (1992). These considerations lead the Court to conclude

17  that it would be unjust for Defendant to retain the monetary benefits specific to in-

18  person classes. Here, Plaintiff made no mistake, and there is no custom dictating that

19  Plaintiff assume the risk of an impossible performance. Moreover, it is not desirable for

20  Defendant to retain the benefits of moving its classes online. At least one party to the

21  implied contract to offer in-person classes has to incur monetary loss due to the COVID-

22  19 shutdown orders. It would be unjust to allow Defendant to retain the benefits of

23  offering in-person services when it did not offer in-person services, even though that

24  performance was impossible. This conclusion is in accord with other courts to consider

25  the issue under other states' analogous laws of unjust enrichment. *E.g.*, *Hannibal-Fisher*

26  *v. Grand Canyon Univ.*, 523 F. Supp. 3d 1087, 1098 (D. Ariz. 2021); *Hiatt v. Brigham*

27  *Young Univ.*, 512 F. Supp. 3d 1180, 1189 (D. Utah 2021); *Rosado v. Barry Univ. Inc.*,

28  499 F. Supp. 3d 1152, 1160 (S.D. Fla. 2020). Thus, Plaintiff can proceed on a quasi-

contract action to recover damages for Defendant moving in-person classes online.[2]

Defendant argues several other points the Court shortly addresses. First, Defendant argues that the Court must grant summary judgment become some class members can show no damages. Def.'s MSJ 28–33. In a breach of contract action, a plaintiff must show damages to survive summary judgment. *See Coles v. Glaser*, 2 Cal. App. 5th 384, 391 (2016) (holding that damages are an element of a breach of contract claim). Because Defendant succeeded on its impossibility defense, however, the claim is now one for quasi-contract. Defendant makes no argument that damages are an element of a quasi-contract claim. The Court declines to make this argument on Defendant's behalf. *See Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003).

Second, Defendant argues the educational malpractice doctrine bars some or all of the damages in this action. Def.'s MSJ 30–31. The Court previously rejected these arguments, and it does so again here for the same reasons. MTD Order 5. Third, Defendant argues that Plaintiff's requests for declaratory and injunctive relief are improper because the requested relief only seeks to remedy past wrongs. Def.'s MSJ 33–34. Plaintiff states that "declaratory and injunctive relief was obtained [by Plaintiff] and implemented by Defendant." Def.'s MSJ Opp'n 24. Plaintiff thus does not oppose Defendant's contentions that the requests for prospective relief exclusively sought to remedy past wrongs. The Court thus accepts Defendant's argument as unopposed and bars Plaintiff's requests for declaratory and injunctive relief. *See City of Arcadia v. EPA*, 265 F. Supp. 2d 1142, 1154 n.16 (N.D. Cal. 2003) ("[T]he implication of this lack of response is that any opposition to this argument is waived."). Fourth, Defendant argues

---

[2] Although the Court previously dismissed the unjust enrichment claim, MTD Order 6, the breach of contract claim turns into a quasi-contract claim under California law. To the extent it does not, the Court construes Plaintiff's claim as alternative pleading of breach of contract and quasi-contract theories. *See Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762–63 (9th Cir. 2015).

that Plaintiff cannot demonstrate the existence of an implied contract. Def.'s MSJ 25–28. For the reasons discussed above, this argument fails.

The Court grants in part and denies in part Defendant's cross-motion for summary judgment. Plaintiff may proceed on a quasi-contract claim for restitution only. Plaintiff may not proceed on her requests for declaratory and injunctive relief.

**D.    Class Decertification**

The Court certified a class of "[a]ll University of La Verne undergraduate students who paid tuition and/or the Mandatory Fees at La Verne's Main/Central campus location during the Spring 2020 term/semester." Class Cert. Order 11. Defendant argues the Court should decertify this class because the class definition is not ascertainable and because several members of the certified class do not have any damages. *See generally* Class Mot. Defendant also argues the Court should clarify that the class definition excludes students in the Campus Accelerated Program for Adults ("CAPA"). *Id.* at 29–30, 32–33.

First, Defendant argues that the proper class members are not ascertainable because it is difficult, if not impossible, to identify the true payer for class members' tuition costs. *Id.* at 22–23. The Court observes that there is no requirement the identification of class members must be administratively feasible above and beyond the requirements of Rule 23. *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1133 (9th Cir. 2017). Defendant's argument runs headlong into this restriction. It makes no difference that Defendant refers to this requirement as ascertainability rather than administrative feasibility. *True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923, 929 (9th Cir. 2018). Even if the Court construed Defendant's argument as an argument about individual issues predominating over common issues, Defendant's argument would fail. Third-party grantors or parents paying for class members' education do not have standing to pursue a contract claim regarding educational expenses with a university because they are not intended beneficiaries. *Lindner*, 2020 U.S. Dist. LEXIS 235399, at *13–15 (collecting cases). A class containing anyone who

1    paid tuition on behalf of a student would thus be overbroad and could not be certified.

2    *Little v. Grand Canyon Univ.*, No. CV-20-00795-PHX-SMB, 2021 U.S. Dist. LEXIS

3    178889, at *7–8 (D. Ariz. Sept. 20, 2021); *see also TransUnion LLC v. Ramirez*, 141

4    S. Ct. 2190, 2214 (2021) (reversing and remanding on class certification where some

5    class members lacked standing to pursue claims). Defendant's ascertainability argument

6    fails.

7       Second, Defendant incorrectly argues that several members of the class cannot

8    demonstrate damages. Class Mot. 23–29.[3] Defendant proposes the following damages

9    calculation: calculate the tuition each student paid for in-person classes, subtract the

10    offsets from scholarships, grants, and emergency relief funds, and then compare that

11    amount to the equivalent cost for online classes. Class Mot. 25. Defendant does not

12    compare the amount paid for in-person classes less offsets to the cost of online classes

13    less offsets because Defendant claims it does not offer scholarships to students who

14    attend classes online. Martinez Decl. ¶ 26, ECF No. 138-34. Defendant incorrectly

15    omits consideration of the tuition offsets in the comparison to the cost for online classes.

16    Although Defendant does not ordinarily offer tuition assistance for online students, it

17    would be unjust for Defendants not to account for tuition assistance in this situation.

18    For the reasons described above, public policy requires this conclusion. Additionally,

19    allowing Defendant to ignore the offsets in the final step of its damages calculation

20    would permit injustice. Under Defendant's theory, it could at any time breach its

21    contract to offer students in-person services and not allow those students to apply the

22    tuition offsets they would normally apply to in-person classes to their online classes.

23    This could allow the unjust scenario where Defendant could breach its contract and then

24    require students to pay more for online classes than they would have for in-person

25

26 _____

27 [3] The Court engages in the following analysis assuming nonzero damages are a requirement for a quasi-contract claim, which, as discussed above, is a dubious

28 proposition.

classes due to the absence of tuition offsets.[4] An appropriate damages calculation takes into account tuition offsets for the calculation of in-person and online tuition costs. Plaintiff's expert appropriately accounts for these costs. Cowan Report ¶¶ 15–34, ECF No. 147-2; Suppl. Cowan Report ¶¶ 1–5, ECF No. 147-5. Defendant's argument the class is overbroad based on a lack of damages is thus incorrect.

Third, Defendant points out that Plaintiff did not present evidence at class certification regarding CAPA students. *See* Class Mot. Reply 8–9. Because Plaintiff did not dispute this issue, the Court deems it conceded. *See, e.g.*, *John-Charles v. California*, 646 F.3d 1243, 1247 n.4 (9th Cir. 2011) (deeming issue waived where party "failed to develop any argument"); *City of Arcadia v. EPA*, 265 F. Supp. 2d 1142, 1154 n.16 (N.D. Cal. 2003) ("[T]he implication of this lack of response is that any opposition to this argument is waived."). The Court thus clarifies that its class definition in its previous class certification order does not include CAPA students. The Court provides the following amended class definition:

"All University of La Verne undergraduate students, excluding students in the Campus Accelerated Program for Adults, who paid tuition and/or the Mandatory Fees at La Verne's Main/Central campus location during the Spring 2020 term/semester."

The Court denies in part Defendant's motion to decertify the class.

///

---

[4] The Court, in using this hypothetical, does not imply that Defendant in any way engaged in similar conduct. The Court only uses this example to illustrate the extreme consequences of Defendant's position.

**IV.   CONCLUSION**

The Court **GRANTS** Plaintiff's motion for summary judgment on the implied contract issue. ECF No. 143. The Court **GRANTS IN PART AND DENIES IN PART** Defendant's motion for summary judgment. ECF No. 138. The Court **GRANTS IN PART AND DENIES IN PART** Defendant's motion to decertify the class. ECF No. 141. The Court **DENIES** Defendant's ex parte application to strike Plaintiff's exhibits. ECF No. 160.

**IT IS SO ORDERED.**

Dated: August 2, 2022

MARK C. SCARSI
UNITED STATES DISTRICT JUDGE