David R. Shoop, Esq. (SBN 220576)
Thomas S. Alch, Esq. (SBN 136860)
**SHOOP | A PROFESSIONAL LAW CORPORATION**
9701 Wilshire Blvd., Suite 950
Beverly Hills, California 90212
Telephone: (310) 620-9533
David.shoop@shooplaw.com
Thomas.alch@shooplaw.com

Jason P. Sultzer, Esq.*
Mindy Dolgoff, Esq.*
**THE SULTZER LAW GROUP P.C.**
85 Civic Center Plaza, Suite 200
Poughkeepsie, NY 12601
Telephone: (845) 483-7100
sultzerj@thesultzerlawgroup.com
Dolgoffm@thesultzerlawgroup.com

Jeffrey K. Brown, Esq.*
Michael A. Tompkins, Esq.*
Brett R. Cohen, Esq.
**Leeds Brown Law, P.C.**
One Old Country Road, Suite 347
Carle Place, NY 11514
Telephone: (516) 873-9550
jbrown@leedsbrownlaw.com
mtompkins@leedsbrownlaw.com

Perry L. Segal (State Bar No. 250947)
**Charon Law**
303 Twin Dolphin Drive, Suite 600
Redwood City, California 94065-1422
(650) 542-7935
perry.segal@charonlaw.com

*Admitted Pro Hac Vice*

*Counsel for Plaintiff and the Certified Class*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIANNA ARREDONDO, on behalf of herself and all others similarly situated, Plaintiff, vs. THE UNIVERSITY OF LA VERNE, Defendant. | Case No. 2:20-cv-07665-MCS-RAOx Hon. Mark C. Scarsi, U.S.D.J. **PLAINTIFFS' NOTICE OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND NOTICE PLAN AND MEMORANDUM OF LAW** Date: December 12, 2022 Time: 9:00 a.m. PST Crtrm.: 7C, 7th Floor |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on December 12, 2022 at 9:00 AM or as soon thereafter as the matter may be heard in Courtroom 7C of the united States District Court for the Central District of California, located as 350 W. 1st Street, Los Angeles, California 90012, Plaintiff Brianna Arredondo, on behalf of herself and the certified Class, will and hereby does move this Court pursuant to Federal Rules of Civil Procedure 23 for an Order: (i) preliminarily approving the proposed Settlement Agreement, including the exhibits attached thereto; (ii) confirming Plaintiff as class representative; (iii) confirming Plaintiff's counsel Leeds Brown Law, P.C., the Sultzer Law Group, P.C., Charon Law, P.C., and Shoop A Professional Law Corporation, as Class Counsel; (iv) approving the notice plan and forms of notice to the class because they meet the requirements of due process and is the best notice practicable under the circumstances (see Fed. R. Civ. P. 23(c)); and (v) setting dates and procedures for opt outs, objections, and a final approval hearing.

Date: November 14, 2022          **THE SULTZER LAW GROUP, P.C.**

/s/ *Jason Sultzer*
Jason P. Sultzer, Esq.*
Mindy Dolgoff, Esq.*
270 Madison Avenue, Suite 1800
New York, NY 10016
Tel. (845) 483-7100
*Admitted Pro Hac Vice

**LEEDS BROWN LAW, P.C.**

Jeffrey K. Brown, Esq.*
Michael A. Tompkins, Esq.*
Brett Cohen, Esq.
One Old Country Road, Suite 347
Carle Place, NY 11514
Telephone: (516) 873-9550
*Admitted Pro Hac Vice

**SHOOP A PROFESSIONAL LAW
CORPORATION**
David R. Shoop, Esq.
Thomas S. Alch, Esq.
9701 Wilshire Blvd., Suite 950
Beverly Hills, California 90212
Tel. (310) 620-9533

**CHARON LAW**
Perry L. Segal, Esq.
303 Twin Dolphin Drive, Suite 600
Redwood City, California 94065
Tel. (650) 542-7935

*Counsel for Plaintiff Brianna Arredondo
and the Certified Class*

iii

NOTICE OF MOTION

# **Table of Contents**

INTRODUCTION ...................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND ..........................................2

  I. THE LITIGATION AND PLAINTIFF'S ALLEGATIONS .............................3

  II.SETTLEMENT NEGOTIATIONS ..................................................................5

  III. THE TERMS OF THE PROPOSED SETTLEMENT...................................7

    A. The Class ..................................................................................................7

    B. Relief for the Class Members..................................................................7

    C. The Release ..............................................................................................9

    D. Attorneys' Fees, Costs and Service Awards ...........................................9

    E. Settlement Administration and the Notice Plan .....................................10

    F. Opt-Outs and Objections .......................................................................11

ARGUMENT .......................................................................................................12

  I. THE PROPOSED SETTLEMENT SHOULD BE APPROVED ....................12

    A. Rule 23(e)(2) Factors Weigh in Favor of Preliminary Approval.................14

    B. The Proposed Settlement Satisfies the *Churchill* Factors............................20

    C. The Views of Experienced Counsel Should be Given Substantial Weight .22

  II. THE PROPOSED NOTICE PLAN SHOULD BE APPROVED .......... **Error! Bookmark not defined.**

    A. The Settlement Provides for the Best Notice Practicable ............................23

    B. The Proposed Notice Adequately Informs Class Members of the The Settlement and Their Rights........................................................................25

CONCLUSION.....................................................................................................25

# TABLE OF AUTHORITIES

**Cases**                                                                                      **Pages**

*Carter v. San Pasqual Fiduciary Tr. Co.*, 2018 U.S. Dist. LEXIS 33834, at *22

    (C.D. Cal. Feb. 28, 2018) ..................................................................................19

*Chin v. DaimlerChrysler Corp.*, 461 F. Supp. 2d 279 (D.N.J. 2006)......................17

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575-76 (9th Cir. 2004)...........14

*Edwards v. Ford Motor Co.*, 2016 U.S. Dist. LEXIS 59651 (S.D. Cal. Jan. 22,

    2016).........................................................................................................................18

*Eisen v. Porsche*, 2014 WL 439006, at *5 (C.D. Cal. Jan. 30 2014) ......................23

*G. F. v. Contra Costa Cnty.*, 2015 U.S. Dist. LEXIS 100512, at *43 (N.D. Cal. July

    30, 2015) ..................................................................................................................15

*Gutierrez v. Stericycle, Inc.*, 2019 U.S. Dist. LEXIS 237817, *12 ........................17

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) ...........................19

*Hopkins v. Stryker Sales Corp.*, 2013 U.S. Dist. LEXIS 16939, at *12 (N.D. Cal.

    Feb. 6, 2013) ...........................................................................................................20

*In re Bluetooth*, 654 F.3d at 946 .............................................................................15

*In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556, 568 (9th Cir. 2019)....13

*In re Nat'l Football League Players' Concussion Injury Litig.*, 961 F. Supp. 2d

    708, 714 (E.D. Pa. 2014) ........................................................................................13

*In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995)............................23

*In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) ...........................13

*In re Toys "R" Us-Del., Inc. FACTA Litig.*, 295 F.R.D. 438, 450 (C.D. Cal. 2014)

    .................................................................................................................................15

*Jones v. Netcom, Inc. (In re Bluetooth Headset Products Liab. Litig.)*, 654 F.3d

    935, 946 (9th Cir. 2011) .........................................................................................14

*Kearney v. Hyundai Motor Am.,* 2013 U.S. Dist. LEXIS 91636, at *17-18 (C.D.

    Cal. June 28, 2013).................................................................................................17

*Lane v. Facebook, Inc.*, 696 F.3d 811, 818 (9th Cir. 2012)........................................16

*Martin v. Lindenwood University*, No. 4:20-cv-01128 (E.D. Mo. 2022)................18

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) ..............24

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) ................................................................................................ 17, 21

*Officers for Justice v. Civil Service Comm'n*, 668 F.2d 615, 625 (9th Cir. 1982) ................................................................................. ..14, 15, 16, 17

*Porter v. Emerson College*, No. 20-CV-11897-RWZ (D. Mass. Jul 21, 2022) 18, 25

*Retta v. Millennium Prods.*, 2017 U.S. Dist. LEXIS 220288, *15 (C.D. Cal. Aug. 22, 2017)..................................................................................................17

*Rodriguez v. West Pub. Corp.*, 463 F.3d 948, 965 (9th Cir. 2009) ........................16

*Rosado v. Barry University*, Inc., No. 1:20-cv-21813 (S.D. Fla. 2021)................18

*Ruch v. AM Retail Group, Inc.*, 2016 WL 1161453, at *7 (N.D. Cal. Mar. 24, 2016) ...............................................................................................................13

*Wright v. Southern New Hampshire University*, No. 1:20-cv-00609 (D. NH. 2021) ...............................................................................................................18

**Rules**

Fed R. Civ. P. 23(e)...............................................................................................13

Fed. R. Civ. P. 23 ...................................................................................................19

Fed. R. Civ. P. 23(c)(2)(B) ...................................................................................25

Fed. R. Civ. P. 23(c)(2)(B) ...................................................................................25

Fed. R. Civ. P. 23(e)......................................................................................... 12, 13

Fed. R. Civ. P. 23(e)(1)(B) ...................................................................................23

Fed. R. Civ. P. 23(e)(2)..................................................................................... 12, 20

**Treatises**

3 Conte & Newberg, Newberg on Class Actions, § 7.20 (4th ed. 2002)..................13

4 Conte & Newberg, Newberg on Class Actions, § 11:45 at 129 (4th ed. 2002) ...22

5 Moore's Federal Practice, § 23.85[2][e]...............................................................21

## MEMORANDUM IN SUPPORT

Plaintiff Brianna Arredondo ("Plaintiff") and the certified Class (together, "Plaintiffs") respectfully submit this memorandum of law in support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement and Notice Plan.[1]

## __INTRODUCTION__

This proposed class action settlement would resolve the claims of students, like Plaintiff, who paid Defendant University of La Verne ("Defendant" or "ULV") tuition and fees for the Spring 2020 Semester for educational services that Plaintiffs claim were not delivered, and whose tuition and fees have not been refunded. Plaintiffs have asserted that ULV breached its contract with students and was unjustly enriched when it failed to provide in-person and on-campus educational services to its students for the entirety of the Spring 2020 semester as a result of the COVID-19 pandemic and it failed to refund any of the tuition and fees paid by students. ULV has defended the action arguing, *inter alia*, that no contract for in-person and on-campus educational services existed and asserted various affirmative defenses including excused performance and impossibility. Dkt. 37, 44. The Parties have vigorously litigated this Action for over two years, completed fact and expert discovery and briefed and/or argued many motions. The Parties also participated in

---

[1] Unless otherwise indicated, capitalized terms shall have the same meaning as they do in the Settlement Agreement.  References to "§ __" are to sections in the Settlement Agreement, submitted as Exhibit 1 to the Declaration of Jason P. Sultzer, In Support of Plaintiff's Motion for Preliminary Approval (the "Sultzer Decl.") and all Exhibits are referred to as "Ex #."

two private mediation sessions before they were ultimately able to reach a settlement while simultaneously preparing for trial.

The Court should grant preliminary approval because the Settlement provides a fair, reasonable, and adequate recovery for the Class. The Settlement creates an $8,895,759.00 Conferred Benefit to the Class. Specifically, the Settlement includes: (1) a New Cash Settlement Fund of $2,000,000 which will create a common fund to pay students a *pro rata* share of the tuition and fees they paid for the Spring 2020 semester; (2) Increased Financial Aid Benefit of $6,348,847.00 in increased financial aid previously distributed as a direct result of the initiation of this Action; and (3) Non-Cash Benefits including post-settlement access for all Participating Class Members to ULV's Career Center services, Academic Success services and a 10% tuition discount on ULV graduate programs valued at approximately $546,912.00 (plus the 10% future tuition discount). §§ 3.1-3.4. Class Members will receive notice directly by email or regular mail. § 2.3.2. Class Members do not have to take any action to participate in the Settlement but will have the opportunity to submit an Election Form to choose the method by which they would like to receive payment. § 2.3.4. The numerous benefits provided by the Settlement, together with the provision of a direct notice program and a simplified payment process, makes the Settlement highly favorable for Class Members.

**FACTUAL AND PROCEDURAL BACKGROUND**

MEMORANDUM OF LAW

## I.    THE LITIGATION AND PLAINTIFF'S ALLEGATIONS

Plaintiff filed her initial Complaint on August 23, 2020, alleging breach of contract, unjust enrichment and conversion and taking of property based on ULV's transition from in-person and on-campus educational services to virtual educational services for a portion of the Spring 2020 semester and the retention of the full tuition and fees for that time. Dkt. 1; Sultzer Decl. ¶ 3. On December 4, 2020, ULV filed a motion to dismiss and Plaintiff responded with her First Amended Complaint ("FAC") filed on December 18, 2021. Dkt. 33, 34; Sultzer Decl. ¶ 4. ULV filed a motion to dismiss the FAC on January 11, 2021, on the grounds that, *inter alia*, Plaintiff failed to allege a contractual obligation and that her claims were non-cognizable claims of educational malpractice. Dkt. 37; Sultzer Decl. ¶ 5. Plaintiff then filed her Second Amended Complaint ("SAC") on February 22, 2021 which ULV moved to dismiss on March 8, 2021 on similar grounds to its previous motion to dismiss. Dkt. 44, 45; Sultzer Decl. ¶ 6. Plaintiff opposed that motion. *Id.;* Dkt. 46.

On April 21, 2021, the Court granted ULV's motion to dismiss with respect to Plaintiff's claims for unjust enrichment and conversion but allowed her contract claim to go forward. Dkt. 50; Sultzer Decl. ¶ 7. The Parties then engaged in full fact and expert discovery for almost a year. Sultzer Decl. ¶ 8. ULV made extensive document productions, the Parties litigated several discovery disputes, took fifteen depositions, and exchanged expert reports and rebuttal reports. *Id.*

On Feb. 8, 2022, the Court appointed Plaintiff as Class Representative, appointed The Sultzer Law Group, P.C., Leeds Brown Law P.C., Shoop Law APLC, and Charon Law as Class Counsel, and certified a class of "[a]ll University of La Verne undergraduate students who paid tuition and/or the Mandatory Fees at La Verne's Main/Central campus location during the Spring 2020 term/semester." Dkt. 117; Sultzer Decl. ¶ 9. On August 2, 2022, upon ULV's motion to decertify, the Court amended the class definition to "[a]ll University of La Verne undergraduate students, excluding students in the Campus Accelerated Program for Adults, who paid tuition and/or the Mandatory Fees at La Verne's Main/Central campus location during the Spring 2020 term/semester." Dkt. 163; Sultzer Decl. ¶ 10.

On April 4, 2022, ULV moved for summary judgment and to decertify the class. Dkt. 138; Sultzer Decl. ¶ 11. On April 11, 2022, the Plaintiffs' moved for partial summary judgment on the existence and breach of an implied contract. Dkt. 143; Sultzer Decl. ¶ 11. The Court issued its Order on Cross Motions for Summary Judgment and to Decertify the Class on August 2, 2022: (i) finding the existence of an implied contract that included a term for in-person offerings; (ii) amending the class definition to exclude CAPA students; and (iii) finding that Plaintiffs could proceed on a quasi-contract action to recover damages. Dkt. 163; Sultzer Decl. ¶ 11.

During the course of the litigation, the Parties participated in two private mediation sessions on August 10, 2021 and March 14, 2022 through ADR Services,

MEMORANDUM OF LAW

Inc. Dkt. 164; Sultzer Decl. ¶ 12. Those mediation sessions did not result in a settlement, however the Parties continued to engage in settlement discussions as they prepared for trial and successfully resolved the claims in this Action. *Id*. On August 26, 2022, the Parties advised the Court that they had settled the Class Action. Dkt. 165; Sultzer Decl. ¶ 13.

## II.    SETTLEMENT NEGOTIATIONS

The Settlement was reached as a result of extensive arm's-length negotiations between the Parties and counsel over several months. Sultzer Decl. ¶ 14. Before and during these settlement discussions, the Parties had arm's-length exchange of sufficient information, including full-blown written discovery and numerous depositions, to permit Plaintiff and her counsel to evaluate the claims and defenses and to meaningfully conduct informed settlement discussions. *Id*. ¶ 15. The Parties did not discuss Attorneys' Fees and Costs or any potential Service Awards until they first agreed on the substantive terms of this settlement. *Id*. ¶ 16. Defendant denies all of Plaintiff's allegations and all charges of wrongdoing or liability against it arising out of any of the conduct or decisions alleged, or that could have been alleged against it, in the Action. § B.

Class Counsel worked together to thoroughly analyze the legal landscape, including conducting research into California contract and restitution laws and the available remedies in order to fully evaluate the risks and benefits to a potential

resolution prior to trial.  Sultzer Decl. ¶ 17.

During the course of the litigation, the Parties agreed to participate in two separate private mediation sessions. *Id*. ¶ 12. Class Counsel requested, and ULV produced, additional mediation discovery prior to the second mediation including the amount of tuition paid by students in the Spring 2020 Semester and the amount of ULV funded scholarships and grants that were awarded in order to better evaluate the claims and position themselves to negotiate a settlement that would be fair and reasonable on behalf of the Class. *Id.* ¶ 18. The mediation sessions did not result in a settlement. *Id.* ¶ 12. However, as they prepared for trial, the Parties continued to engage in settlement discussions to resolve the claims in this Action. *Id.*

Having conducted full-blown fact and expert discovery and with the Court's ruling on the Parties' cross-motions for summary judgment and ULV's motion for decertification, the Parties were in an ideal position to analyze and evaluate the remaining claims and defenses and the risks associated with proceeding to trial, including the risk that a trial may result in no recovery or recovery that is less favorable and would not occur for several years. *Id.* ¶ 19. During the course of negotiations, Class Counsel learned the precise amount of money that was distributed by ULV and that it did so as a direct result of the pendency of this Action, including approximately $6.4 million in increased financial aid for the 2020-2021 academic year to Traditional Undergraduate Students ("TUGS"). *Id.* ¶ 20; § 3.1.

Such increased aid would not have been distributed if not for this Action. *Id.*

Moreover, Class Counsel considered the financial condition of ULV, supported by

discovery obtained on this issue, and its ability to withstand a greater settlement or

judgment. *Id* ¶ 21. Class Counsel also considered the possibility that obtaining a

greater judgment may also impact future educational services for Class Members

still enrolled, including the loss of future services. *Id.* ¶ 22.

## III. THE TERMS OF THE PROPOSED SETTLEMENT

The Settlement's terms are detailed in the Settlement Agreement and Release

("Settlement Agreement"). *See* Sultzer Decl., Ex. 1. A summary of the Settlement's

key terms follows:

### A. The Class

The "Settlement Class" is defined in the Settlement Agreement as:

All University of La Verne undergraduate students, excluding students in the
Campus Accelerated Program for Adults, who paid tuition and/or the Mandatory
Fees, or on whose behalf payment was made, at University of La Verne's
Main/Central campus location during the Spring 2020 term/semester. [2] § 1.34

### B. Relief for the Class Members
#### 1. Cash Benefit

ULV will pay $2,000,000.00 into a common fund to create the New Cash

---

[2] Excluded from the Settlement Class are (1) any District Judge or Magistrate Judge presiding over this Action and members of their families; (2) the Defendant, Defendant's subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former officers, directors, agents, attorneys, and employees; (3) persons who properly execute and file a timely request for exclusion from the class; and (4) the legal representatives, successors or assigns of any such excluded persons.

MEMORANDUM OF LAW

Settlement Fund which will be used to pay Class Members and any Court-approved Attorneys' Fees and Costs, Service Awards, and all costs and fees associated with the Settlement Claims Administrator. § 3.2. Class Members do not need to submit a claim form but may submit an Election Form to choose the method of payment. § 2.3.4. The parties agreed upon an allocation formula and methodology that provides payment on a prorated basis based on a percentage of tuition and fees paid to ULV, not including any grants and/or scholarships that did not require repayment. § 3.8.1. Additionally, as a direct result of this Action, ULV distributed an Increased Financial Aid Benefit that consisted of $6,348,847.00 of increased financial aid dispersed to 97% of TUGS beginning in the fall of the 2020-2021 academic year. § 3.1. Of the Increased Financial Aid Benefit, $2,200,000.00 was specifically distributed to all TUGS regardless of merit or financial need. *Id.* The remainder of $6,348,847.00 was awarded to TUGS based on merit and/or financial need. *Id.* Importantly, this relief was obtained without any requirement of repayment by any Class Member and no ancillary obligation on them.

### 2.     *Non-Cash Benefits*

In addition to the cash benefits, all Class Members shall be granted access to ULV's Career Center and its services and to ULV's Academic Success Center and its services, so long as such facilities and services are operational and available to ULV students. § 3.3.1; 3.3.2. The Non-Cash Benefits are valued at approximately

$546,912.00. § 3.3.4. Additionally, Class Members are entitled to a 10% tuition discount for enrollment in a ULV graduate program, so long as such program is operational and available to ULV's students. § 3.3.3.

## C. The Release

In exchange for the benefits conferred by the Settlement, Class Members who do not opt out will be deemed to have released ULV from all Released Claims. § 3.91. The detailed release language is set forth in § 3.9 of the Settlement Agreement.

## D. Attorneys' Fees, Costs and Service Awards

Within the time period established by the Court, Class Counsel will file a Motion for Approval of Attorneys' Fees, Costs and Service Awards to be paid from the New Cash Settlement Fund. Class Counsel will petition the Court for no more than $1,100,000.00 which represents a small portion of the Gross Settlement Fund, which shall include attorneys' fees, costs and expenses other than the Settlement Claims Administrator incurred in connection with the Action. § 3.6.1.

In recognition of their time, costs, and effort in the Action, Plaintiffs will make an application to the Court for payment of Service Awards of up to $5,000 to the Named Plaintiff and $1,500 each to Class Members Kaylen Henry, Jovanni Echevarria, and Savanah Gherir. §§ 3.7.1; 3.7.2. These individuals provided declarations in support of class certification and testified during the course of discovery by sitting for full-day depositions – in support of the entire class.

MEMORANDUM OF LAW

### E. Settlement Administration and the Notice Plan

The Parties seek the appointment of CPT Group ("CPT") as the settlement administrator to effectuate and administer the notice plan. § 1.33. The Parties had previously engaged CPT to issue a notice of pendency upon certification of the Class, in accordance with the Court's prior orders. Before selecting CPT for effectuating notice, the parties engaged in a competitive bidding process whereby the reviewed bids from multiple services administrators. Sultzer Decl. ¶ 24.  The parties selected CPT based on its reputation for excellent work and breadth of experience administering class actions. *Id*. The costs of notice and claims administration is expected to be approximately $26,792.00 and will be paid from the Qualified Settlement Fund. § 2.1.1.

Within fourteen days after the Preliminary Approval Order is signed by the Court, Defendant will provide CPT with the Class List. § 2.3.1. The Class List will be an electronic list of each Class Member that provides names, last known addresses, last known email addresses, last known telephone numbers, along with tuition and fee payment totals, amount scholarships/grants received, and other information related to the calculation and distribution of settlement proceeds. § 1.5.

The Notice will inform the Settlement Class about this Settlement, and will also advise them of their rights, including their ability to object to, opt-out of, or participate in the Settlement. Within fourteen days after receipt of the Class List, or

MEMORANDUM OF LAW

as otherwise ordered by the Court, the Settlement Claims Administrator shall: (1) email a copy of the Notice to all Class Members for whom the Settlement Claims Administrator has a valid email address; and (2) send through regular U.S. Mail a copy of the Notice and Election Form to all Class Members not presently enrolled at ULV for whom the Settlement Claims Administrator does not have a valid email address but has, from ULV's records, a mailing address. § 2.3.2. The Notice Response Deadline for Election Forms shall be (i) thirty days from the date of the initial mailing or as otherwise set by the Court, and (ii) an additional fifteen days later for any Class Members who were unable to file a timely Election Form, due to certain factors explained in the Agreement. *Id.*

The Settlement Administrator will establish a Settlement Website that will provide additional information on the Settlement and this Action. On the same date as initial mailing of Notices, notice shall also be provided the Settlement Website. § 2.3.5. Copies of this Settlement Agreement, the Notice, and other pertinent documents shall be provided on the Settlement Website. *Id.* Defendant will comply (through the Settlement Administrator) with the obligation to give notice of the Settlement to federal and state governmental entities as required pursuant the Class Action Fairness Act, 28 U.S.C. § 1715.

**F. Opt-Outs and Objections**

Any Class Member wishing to opt out of the Class can do so. To opt out, a

MEMORANDUM OF LAW

Class Member must submit a request in writing to the Settlement Administrator by the Notice Response Deadline. § 2.4.1. Any Class Member wishing to object to any aspect of the Settlement, including Plaintiff's application for attorneys' fees, can do so. Class Members who wish to present objections to the proposed settlement must do so in writing. § 2.5.1. To be considered, such statement must be mailed to the Settlement Claims Administrator on or before the Notice Response Deadline. *Id*. To be valid, the statement must include all of the information listed in Section 2.5.1 of the Settlement Agreement.

## **ARGUMENT**

As set forth below, the proposed Settlement is fair, reasonable and adequate under Rule 23(e)(2). This Court has already certified a class in this Action which conforms to the proposed Settlement Class. Dkt. 163; § H. Accordingly, the relevant consideration for this motion is whether the settlement is fair, reasonable and adequate under Rule 23(e)(2).

## I.    THE PROPOSED SETTLEMENT SHOULD BE APPROVED

Under Rule 23(e), a proposed class settlement should be approved when it is fair, reasonable, and adequate based several enumerated factors. Fed R. Civ. P. 23(e).  As described below, this Settlement meets all of the Rule 23(e) factors.

Moreover, in the Ninth Circuit, "there is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re*

*Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556, 568 (9th Cir. 2019) (en banc); *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008). The Court must evaluate whether the settlement is within the "range of reasonableness," and whether notice to the class and the scheduling of a final approval hearing should be ordered. *See generally*, 3 Conte & Newberg, Newberg on Class Actions, § 7.20 (4th ed. 2002). "At the preliminary approval stage, the bar to meet the 'fair, reasonable and adequate' standard is lowered." *In re Nat'l Football League Players' Concussion Injury Litig.*, 961 F. Supp. 2d 708, 714 (E.D. Pa. 2014); Newberg, § 11:25. Preliminary approval should be granted if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *Ruch v. AM Retail Group, Inc.*, 2016 WL 1161453, at *7 (N.D. Cal. Mar. 24, 2016)[3]. Indeed, Courts in the Ninth Circuit apply several additional factors in evaluating the adequacy of a class action settlement: (1) the strength of the plaintiffs' case; (2) the extent of discovery completed and the stage of the proceedings; (3) the presence of a governmental participant; and (4) the reaction of the class members of the proposed settlement. *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575-76 (9th Cir. 2004); *see also Jones v. Netcom, Inc. (In re Bluetooth Headset Products Liab. Litig.)*,

---

[3] All internal citations omitted unless otherwise noted.

MEMORANDUM OF LAW

654 F.3d 935, 946 (9th Cir. 2011). Here, these factors weigh in favor of preliminary approval.

**A. Rule 23(e)(2) Factors Weigh in Favor of Preliminary Approval**

> *1.    The Class Representative and Class Counsel Have Adequately Represented the Class*

This Court has already determined that Class Counsel are qualified with substantial experience litigating complex class actions. Dkt. 117. Additionally, the Court has already found the Class Representative has no conflicts with the Class, has participated actively in the case, and is represented by attorneys experienced in class action litigation. *Id.* Accordingly, this factor favors preliminary approval.

> *2.    The Proposed Settlement Was Negotiated at Arm's Length*

In reviewing what is "otherwise a private consensual agreement negotiated between the parties to a lawsuit," the court's scrutiny should be "limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice v. Civil Service Comm'n*, 668 F.2d 615, 625 (9th Cir. 1982). A non-collusive settlement, negotiated by experienced class counsel with the involvement of a respected mediator, is entitled to "a presumption of fairness." *In re Toys "R" Us-Del., Inc. FACTA Litig.*, 295 F.R.D. 438, 450 (C.D. Cal. 2014).

The proposed Settlement is the product of many months of negotiations

between counsel, including two mediation sessions with an experienced mediator. Sultzer Decl. ¶¶ 12, 14. While the parties were quite far apart, the private mediation sessions provided a foundation for the settlement. *Id.*; *G. F. v. Contra Costa Cnty.*, 2015 U.S. Dist. LEXIS 100512, at *43 (N.D. Cal. July 30, 2015). Additionally, the Settlement does not bear any signs that the Ninth Circuit has identified as potentially indicating collusion or conflicts of interest:

> (1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded;
>
> (2) when the parties negotiate a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds; and
>
> (3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund.

*In re Bluetooth*, 654 F.3d at 946. Here, Class Counsel will be paid from the same non-reversionary fund as members of the Class and thus had every reason to negotiate the largest fund possible. § 3.6.1. And, the Settlement Agreement does not allow any of the settlement funds to revert to Defendant. § 3.2.2. This factor weighs strongly in favor of the Court preliminarily approving the Settlement.

### 3.     The Relief Provided to the Class is Adequate

#### (a)     The Costs, Risks, and Delay of Trial and Appeal

In its evaluation of the Settlement, "the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations, and rough justice." *Officers for Justice*, 688 F.2d at 625. There is "no single formula" to

---

be applied, but the court may presume that the parties' counsel arrived at a reasonable range of settlement by considering the plaintiffs' likelihood of recovery. *Rodriguez v. West Pub. Corp.*, 463 F.3d 948, 965 (9th Cir. 2009). Moreover, the Ninth Circuit has expressly rejected any requirement that the settling parties value maximum damages that can be obtained at trial, as that figure would be inherently speculative. *Lane v. Facebook, Inc.*, 696 F.3d 811, 818 (9th Cir. 2012) ("[N]ot only would such a requirement be onerous, it would often be impossible...").

In light of the risks and uncertainties presented by a trial, the $2,000,000.00 New Cash Settlement Fund along with the Increased Financial Aid Benefit and Non-Cash Benefits achieved for the Class for a total settlement value of $8,895,759 is an extraordinary result. "[T]he very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice*, 688 F.2d at 624. Indeed, "it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Id.* at 625. Rather, any analysis of a fair settlement amount must account for the risks of further litigation and trial, as well as expenses and delays associated with continued litigation. *See Retta v. Millennium Prods.*, 2017 U.S. Dist. LEXIS 220288, *15 (C.D. Cal. Aug. 22, 2017).

The Settlement offers substantial cash and non-cash benefits to the Class. The

MEMORANDUM OF LAW

monetary recovery is in line with similar settlements in similar cases. The Non-Cash Benefits provide ongoing recovery to Class Members that they otherwise would not have access to and adds significant value to the Settlement. *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) (approving settlement that provides no monetary benefit but "other valuable benefits not measured in terms of monetary recovery" and holding "It is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness.") (quoting *Officers for Justice*, 688 F.2d at 628). The New Cash and Non-Cash Benefits are all in addition to the benefit of the approximately $6.4 million in Increased Financial Aid for the 2020-2021 academic year that Class Members already received. *See Kearney v. Hyundai Motor Am.,* 2013 U.S. Dist. LEXIS 91636, at *17-18 (C.D. Cal. June 28, 2013) (using cost of auto recall as a metric for valuing settlement); *see also Gutierrez v. Stericycle, Inc.*, 2019 U.S. Dist. LEXIS 237817, *12 (crediting the value of individual settlements to the value of the class-wide settlement); *Chin v. DaimlerChrysler Corp.*, 461 F. Supp. 2d 279 (D.N.J. 2006) (court found that Plaintiffs complaint was a material factor in motivating Defendant's decision to recall vehicles); *Edwards v. Ford Motor Co.*, 2016 U.S. Dist. LEXIS 59651 (S.D. Cal. Jan. 22, 2016) ("the plaintiff's lawsuit was a catalyst that motivated the defendant to provide the primary relief sought).

Additionally, this Settlement exceeds that reached in other COVID tuition

cases, further confirming this Settlement is in the range of reasonableness. *See Rosado v. Barry University*, Inc., No. 1:20-cv-21813 (S.D. Fla. 2021) (final approval with an estimated award of approximately $400 per student, before costs and fees.); *Wright v. Southern New Hampshire University*, No. 1:20-cv-00609 (D. NH. 2021) (final approval with an estimated award of approximately $407 per student, before costs and fees); *Martin v. Lindenwood University*, No. 4:20-cv-01128 (E.D. Mo. 2022) (final approval with an award of approximately $275 per student, before costs and fees); *Porter v. Emerson College*, No. 20-CV-11897-RWZ (D. Mass. Jul 21, 2022) (preliminary approval of $2.06 million common fund settlement).

While Plaintiff and the Class believe that their case is strong, the Court's ruling on the cross-motions for summary judgment has narrowed the case for trial to essentially a determination of whether and to what extent Plaintiffs have been damaged. ULV has vigorously contested Plaintiffs' damages model and calculations, including through expert testimony and reports. If the case goes to trial, ULV will undoubtedly continue to contest Plaintiffs' damages model, calculations, and the testimony and opinions of ULV's damages expert. ULV will also present its own expert testimony and argue, as it has from the inception of this Action, that Plaintiff and the Class are not entitled to any damages. Moreover, if Plaintiffs were to obtain a favorable verdict, ULV would likely contest and/or appeal the verdict and thus, create a risk that the verdict will be overturned or reduced and further delay

recovery while increasing costs. Given the substantial risks of continued litigation and the significant relief secured for the Class, the proposed Settlement should be viewed as a fair, reasonable, and adequate compromise of the issues in dispute.

*(b)    Effectiveness of the Class Notice and Processing of Claims*

A "claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding." Fed. R. Civ. P. 23, 2018 Advisory Committee Notes. For the reasons set forth in Section II below, the proposed method of processing claims here strikes that delicate balance, and this factor weighs in favor of final approval.

*(c)    The Proposed Attorneys' Fees*

The Settlement Agreement provides that the Class Counsel may apply for an award of attorneys' fees and reasonable litigation costs of no more than $1,100,00.00 § 3.6.1. Such a request represents 12% of the Gross Settlement Fund, which is below the benchmark for awards in this Circuit. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998); *Carter v. San Pasqual Fiduciary Tr. Co.*, 2018 U.S. Dist. LEXIS 33834, at *22 (C.D. Cal. Feb. 28, 2018). Moreover, the requested amount is less than Class Counsel's current lodestar of $1,074,431.75 and reasonable expenses of $233,118.05. Courts routinely grant requests for attorneys' fees with a lodestar multiplier of 1 to 4, however Plaintiffs' request here results in a negative multiplier. *Hopkins v. Stryker Sales Corp.*, 2013 U.S. Dist. LEXIS 16939, at *12 (N.D. Cal.

MEMORANDUM OF LAW

Feb. 6, 2013). Class Counsel have prosecuted this action, with no guarantee of recovery, and have advanced all costs to date. Sultzer Decl. ¶ 33.

> (d)    *There Exists no Agreement Required to Be Identified Under Rule 23(e)(3)*

There are no additional agreements in connection with the Settlement.

> 4.    *The Proposal Treats Members of the Settlement Class Equitably*

Each member of the Settlement Class is treated in the same manner with respect to the claims they are releasing and their eligibility for an award, with the amount of the award dependent on the amount of tuition and fees paid for the Spring 2020 Semester by the Class Member. This approach provides Class Members the ability to obtain a payment commensurate with their potential losses, as compared to other members of the Class.

**B. The Proposed Settlement Satisfies the *Churchill* Factors**

*Churchill* sets forth the factors that the Ninth Circuit considers in evaluating class actions settlement. *See Churchill*, 361 F.3d 566, 575-76. Many of those factors overlap with the Rule 23(e)(2) requirements and are discussed above. *Churchill* sets forth several additional factors which also weigh in favor of preliminary approval in this case: a) the strength of the Plaintiff's case; b) the extent of discovery completed and the stage of the proceedings; c) the presence of a governmental participant; and d) the reaction of the class members of the proposed settlement.

1.    *The Strength of Plaintiff's Case*

Plaintiffs believe that they have built a strong case for damages, the dominant issue remaining in the case. Plaintiffs have presented a damages model and expert reports that support its argument that students are entitled to a pro rata refund of tuition and fees for the portion of the Spring 2020 semester that ULV did not provide on-campus educational services. Plaintiffs believe that through their expert reports and evidence gathered through discovery they could prove damages at trial. Nonetheless, significant litigation risks and risks of delay exist, which militate in favor of settlement. *See* Section I.A.3.a, *supra*

2.    *The Extent of Discovery Completed and the State of Proceedings*

"A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair." *Nat'l Rural Telecomms.*, 221 F.R.D. 523, 527-528. "A court is more likely to approve a settlement if most of the discovery is completed because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case." 5 Moore's Federal Practice, § 23.85[2][e] (Matthew Bender 3d ed.). "If all discovery has been completed and the case is ready to go to trial, the court obviously has sufficient evidence to determine the adequacy of settlement." *See* 4 A. Conte & H. Newberg, Newberg on Class Actions, § 11:45 at 129 (4th ed. 2002).

MEMORANDUM OF LAW

Here, the Parties have completed all discovery that has included extensive written discovery plus numerous depositions. *See* Sultzer Decl. ¶ 8. ULV produced approximately 5,900 pages of documents in response to multiple requests for production *Id*. Plaintiffs conducted ten depositions of Defendant's representatives and Defendant deposed Named Plaintiff and three individual Class Members. *Id.* Plaintiffs also produced approximately 3,350 pages of documents in response to ULV's requests. *Id.* Additionally, the Parties exchanged expert reports and rebuttal reports and Defendant deposed Plaintiffs' expert. *Id*. ¶ 8. The Parties have also litigated discovery disputes. Moreover, with the Court's ruling on summary judgment motions in hand, the Parties have "exhaustively examined the factual and legal bases of the disputed claims. This fact strongly militates in favor of the Court's approval of the settlement." *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 527-528. Accordingly, the Parties are now well aware of the strengths and weaknesses of their claims and defenses and are well-equipped to negotiate the Settlement Agreement.

### 3. *The Presence of a Government Participant*

As there is no governmental participant in this action, this factor is irrelevant.

### 4. *The Reaction of the Class to the Proposed Settlement*

This factor is premature. Before the final approval hearing, the Court will have the opportunity to review any objections and a full accounting of opt-out requests.

## C. The Views of Experienced Counsel Should be Given Substantial Weight

"Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). Here, the Parties achieved a settlement after a thorough analysis of the facts and issues, including a rigorous analysis of the Parties' claims and defenses and after extensively litigating the issues. The expectations of all Parties are embodied by the Settlement, which is non-collusive, being the product of extensive arms' length negotiations. The Parties were represented by experienced counsel possessing significant experience in complex commercial and class action matters. Dkt. 117; Sultzer Decl., Ex. 2.[4] Likewise, ULV's counsel, Call & Jensen PC, is a renowned law firm. The Parties' recommendation to approve this Settlement should therefore "be given great weight." *Eisen v. Porsche*, 2014 WL 439006, at *5 (C.D. Cal. Jan. 30, 2014) .

## II.    THE PROPOSED NOTICE PLAN SHOULD BE APPROVED

### A. The Settlement Provides for the Best Notice Practicable

"Rule 23(e)(1)(B) requires the court to direct notice in a reasonable manner to all class members who would be bound by a proposed settlement…" Manual for Complex Lit. § 21.312   The best practicable notice is that which is "reasonably

---

[4] *See also* Declaration of Michael A. Tompkins; Declaration of Thomas S. Alch; and Declaration of Perry L. Segal contemporaneously filed herewith.

MEMORANDUM OF LAW

calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

The proposed Notice satisfies all of these criteria. The Notice informs Class Members of the substantive terms of the Settlement. It advises Class Members of their options for opting out of or objecting to the Settlement, and how to obtain additional information about the Settlement. The Class Notice is presented in plain English to ensure Class Members read and understand it. *See* Ex. B.

As part of the Settlement, Defendant will provide a Class List containing the names and last known addresses, e-mail addresses, and telephone numbers for each Class Member. § 1.5. The Settlement Claims Administrator shall (1) email a copy of the Notice to all Class Members for whom the Settlement Claims Administrator has a valid email address, and (2) send by regular U.S. Mail a copy of the Notice and Election Form to all Class Members not presently enrolled at ULV for whom the Settlement Claims Administrator does not have a valid email address but has, from ULV's records, a mailing address. § 2.2.3.  Moreover, on the same date as initial mailing of Notices, notice shall be provided on a Settlement Website. Copies of this Settlement Agreement, Notice, and other pertinent documents and Court filings shall be provided on the Settlement Website. § 2.3.5. For these reasons, the Court should approve the notice plan and form of Notice. *See* Ex. B.

**B. The Proposed Notice Adequately Informs Class Members of the The Settlement and Their Rights.**

The form of notice proposed by the Parties complies with those requirements of Rule 23(c)(2)(B). *See* Fed. R. Civ. P. 23(c)(2)(B); Ex. B. Plaintiffs believe that the proposed method and form of notice is the most effective way to alert Settlement Class Members to the existence of the Settlement and convey detailed information about the election and the settlement approval process. Other courts have approved similar notice plans in similar cases. *See, e.g. Porter v. Emerson College*, No. 20-CV-11897-RWZ (D. Mass. Jul 21, 2022).

## CONCLUSION

Plaintiffs respectfully request that the Court enter the accompanying proposed Preliminary Approval Order granting preliminary approval of the proposed settlement; confirming certification of the Settlement Class and appointment of Class Representative and Class Counsel; directing dissemination of notice to the Class pursuant to the proposed notice plan; appointing a Settlement Administrator for the dissemination of notice and establishment of a Settlement Fund; and setting a schedule for final approval and related deadlines.

Date: November 14, 2022            **THE SULTZER LAW GROUP, P.C.**

/s/ *Jason Sultzer*
Jason P. Sultzer, Esq.*
Mindy Dolgoff, Esq.*
270 Madison Avenue, Suite 1800
New York, NY 10016

MEMORANDUM OF LAW

Tel. (845) 483-7100
*Admitted Pro Hac Vice

**LEEDS BROWN LAW, P.C.**
Jeffrey K. Brown, Esq.*
Michael A. Tompkins, Esq.*
Brett R. Cohen, Esq.
One Old Country Road, Suite 347
Carle Place, NY 11514
Telephone: (516) 873-9550
*Admitted Pro Hac Vice

**SHOOP A PROFESSIONAL LAW CORPORATION**
David R. Shoop, Esq.
Thomas S. Alch, Esq.
9701 Wilshire Blvd., Suite 950
Beverly Hills, California 90212
Tel. (310) 620-9533

**CHARON LAW**
Perry L. Segal, Esq.
303 Twin Dolphin Drive, Suite 600
Redwood City, California 94065
Tel. (650) 542-7935

*Counsel for Plaintiff Brianna Arredondo and the Certified Class*

MEMORANDUM OF LAW