1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

CENTRAL DISTRICT OF CALIFORNIA

10
11

BRIANNA ARREDONDO, on behalf of herself and all others similarly situated,

Case No. 2:20-cv-07665-MCS-RAO

12

Plaintiffs,

**ORDER PRELIMINARILY APPROVING CLASS SETTLEMENT AND AUTHORIZING CLASS NOTICE**

13

v.

14
15

THE UNIVERSITY OF LA VERNE,

16

Defendant.

17
18
19

The parties jointly moved for an order preliminarily approving class settlement

20

and authorizing class notice.  (Mot., ECF No. 170.)  The Court heard oral argument on

21

December 12, 2022.

22

## I.    BACKGROUND

23

This case arises from the University of La Verne's ("ULV") decision to transition

24

from in-person instruction to an online learning environment during the initial outbreak

25

of the COVID-19 pandemic during the Spring 2020 semester.  (Mot. 1.)  Plaintiff

26

contends that ULV breached its contract with students when it failed to provide in-

27

person instruction.  (*Id.*)  ULV defended the action, arguing that no contract of in-person

28

or on-campus educational services existed.  (*Id.*)  The Court certified a class of "[a]ll

1

1   University of La Verne undergraduate students, excluding students in the Campus
2   Accelerated Program for Adults, who paid tuition and/or the Mandatory Fees at La
3   Verne's Main/Central campus location during the Spring 2020 term/semester." (Order
4   Re: Cross-Mots. for Summ. J. 15, ECF No. 163.)

5       After more than two years of litigation, the parties reached a preliminary
6   settlement.  The settlement includes a cash Settlement Fund of $2,000,000 which will
7   be used to pay students a *pro rata* share of the tuition and fees Class Members paid for
8   the Spring 2020 semester. (Mot. 2; Settlement Agreement § 1.17, ECF No. 170-2.)  The
9   agreement also provides non-cash benefits allowing all participating Class Members to
10  access ULV's Career Center and Academic Success Center and obtain a 10% tuition
11  discount for all graduate-level education at ULV.  (Mot. 2; Settlement Agreement
12  § 1.20.)

13      The parties also contend that $6,348,847 of increased financial aid was awarded
14  to 97% of all traditional undergraduate students in the Fall of 2020 as "a direct result of
15  this Action" and should be included in the total value of the settlement.  (Mot. 8.)  The
16  Court grants preliminary approval irrespective of whether the financial aid
17  disbursement is formally counted as part of the settlement.   Regardless of the
18  motivation, the Court reiterates that ULV's decision to place over $6.3 million directly
19  in the hands of students so quickly is truly commendable and should serve as an example
20  to other universities.

21  **II.   LEGAL STANDARD**

22      At the preliminary approval stage, "courts must peruse the proposed compromise
23  to ratify both the propriety of the certification and the fairness of the settlement." *Staton*
24  *v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).

25      As to fairness, Federal Rule of Civil Procedure 23(e) provides that "[t]he claims,
26  issues, or defenses of a certified class—or a class proposed to be certified for purposes
27  of settlement—may be settled, voluntarily dismissed, or compromised only with the
28  court's approval."  "[S]trong judicial policy . . . favors settlements, particularly where

complex class action litigation is concerned." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *Pilkington v. Cardinal Health, Inc. (In re Syncor ERISA Litig.)*, 516 F.3d 1095, 1100 (9th Cir. 2008). Review of the settlement is "extremely limited," and courts should examine "the settlement taken as a whole, rather than the individual component parts, . . . for overall fairness." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

At the preliminary approval stage, courts in this circuit consider whether the settlement: "(1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval." *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 319 (C.D. Cal. 2016) (internal quotation marks omitted). Further, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B).

## III.   ANALYSIS

The settlement class is nearly coextensive with the class the Court previously certified, but it appends appropriate, customary exclusions not expressly made in prior orders. (Settlement Agreement § 1.34; *see* Order Granting Class Certification 11, ECF No. 117; Order Re: Cross-Mots. for Summ. J. 15.) For the same reasons discussed in the Court's prior orders, the Court determines that the class properly may be certified for settlement purposes. The Court turns to the fairness of the settlement.

### A.   The Settlement Process

"The Court first considers the means by which the parties reached their settlement." *Thio v. Genji, LLC*, 14 F. Supp. 3d 1324, 1334 (N.D. Cal. 2014). Here, the settlement was reached following more than two years of litigation and robust motion practice. The case has seen several rounds of pleadings and dispositive motions.

Plaintiff filed her initial Complaint in August 2020.  (Compl., ECF No. 1.)  In December 2020, ULV filed a motion to dismiss, and Plaintiff filed a First Amended Complaint. (First Mot. to Dismiss, ECF No. 33; FAC, ECF No. 34.)  Following another motion to dismiss in January 2021, Plaintiff filed a Second Amended Complaint in February 2021. (Second Mot. to Dismiss, ECF No. 37; SAC, ECF No. 44.)  ULV again moved to dismiss the operative SAC in March 2021.  (Third Mot. to Dismiss, ECF No. 45.)  In April 2021, the Court granted ULV's motion to dismiss the SAC's claims for unjust enrichment and conversion but allowed the contract claim to proceed.  (Order Re: Third Mot. to Dismiss, ECF No. 50.)  In April 2022, the parties filed cross–motions for summary judgment.  (See Def's Mot. for Summ. J, ECF No. 138; Pl's Mot. for Summ. J., ECF No. 143.)

Class certification also was strongly contested.  In November 2021, Plaintiff moved for class certification, which was subject to a number of Defendant's substantive and procedural objections.  (See, e.g., Mot. for Class Certification, ECF No. 70; Opp'n to Mot. for Class Certification, ECF No. 86.)  The Court granted class certification and defined the Class as "[a]ll University of La Verne undergraduate students who paid tuition and/or the Mandatory Fees at La Verne's Main/Central campus location during the Spring 2020 term/semester."  (Order Granting Class Certification 11.)  On August 2, 2022, in response to ULV's motion to decertify the Class, the Court amended the Class definition to "[a]ll University of La Verne undergraduate students, excluding students in the Campus Accelerated Program for Adults, who paid tuition and/or the Mandatory Fees at La Verne's Main/Central campus location during the Spring 2020 term/semester."  (Order Re: Cross-Mots. For Summ. J. 15.)

The parties engaged in two mediation sessions "on August 10, 2021 and March 14, 2022" facilitated by ADR Services, Inc.  (Sultzer Decl. ¶ 12, ECF No. 170-1.)  These "private mediation sessions provided a foundation for the settlement."  (Mot. 15 (citing Sultzer Decl. ¶¶ 12, 14).)

4

1    Based on the lengthy record, "the proposed settlement appears to be the product

2    of serious, informed, non-collusive negotiations." *Haralson v. U.S. Aviation Servs.*

3    *Corp.*, 383 F. Supp. 3d 959, 966 (N.D. Cal. 2019) (internal quotation marks omitted).

4    The parties negotiated this settlement after more than two years of intensive litigation

5    and factual discovery.  The proposed settlement itself appears to be the product of arm's

6    length bargaining, facilitated by a disinterested mediator, who could rely on a robust

7    record developed over the course of numerous motions.  Consequently, the nature of

8    the settlement process weighs in favor of granting preliminary approval of the proposed

9    settlement.

10           **B.    No Obvious Deficiencies or Preferential Treatment**

11           Subject to concerns outlined below, the Court sees no obvious deficiencies in the

12    settlement nor a likelihood that any Class Member will receive preferential treatment.

13    The Settlement Agreement includes financial and nonmonetary provisions available to

14    all Class Members.  The Settlement Agreement establishes a cash Settlement Fund

15    totaling "$863,708.00, after payment of Attorneys' Fees and Costs, Service Awards,

16    and costs of the Settlement Claims Administrator." (Settlement Agreement § 3.8.2.)

17    These funds will be used to pay Class Members "a *pro rata* share of the tuition and fees

18    they paid for the Spring 2020 semester." (Mot. 1.)  Additionally, all Class Members

19    will be entitled to access ULV's "Career Center and its services and to [ULV's]

20    Academic Success Center and its services, so long as such facilities and services are

21    operational and available to La Verne students." (Settlement Agreement § 1.20.)

22    Finally, all Class Members are entitled to a "a 10% tuition discount" should they

23    continue their education in one of ULV's graduate programs. (*Id.*)

24           The Court expresses some concern over Class Counsel's anticipated motion for

25    fees and costs for "no more than $1,100,000," which figure represents more than half

26    of the monetary portion of the settlement. (Mot. 9; *see* Settlement Agreement §§ 1.17,

27    3.6.1.)  The Court observes that the benchmark for a reasonable fee award in the Ninth

28    Circuit is typically 25% of a settlement fund. *Jones v. GN Netcom, Inc. (In re Bluetooth*

1    *Headset Prods. Liab. Litig.)*, 654 F.3d 935, 942 (9th Cir. 2011).  Notwithstanding, the

2    Court acknowledges that the total value of the settlement here likely exceeds its

3    monetary portion significantly.  Issues pertaining to the fee award can be adjudicated

4    upon the anticipated motion, and the Court's concerns do not impede preliminary

5    approval of the settlement.

6          The Settlement Agreement authorizes a $5,000 service award for the named

7    plaintiff and a $1,500 service award for three other individual plaintiffs who provided

8    declarations and sat for deposition.  (Settlement Agreement §§ 3.7.1–2.)  These awards,

9    should they be granted final approval, do not render the settlement unfair.  The Ninth

10   Circuit has recognized service awards are "fairly typical" in class action cases.

11   *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009).  Additionally, these

12   payments do not appear to be excessive given "the number of named plaintiffs receiving

13   incentive payments, the proportion of the payments relative to the settlement amount,

14   and the size of each payment."  *Staton*, 327 F.3d at 977.

15         The lack of obvious deficiencies and equal treatment for all Class Members

16   weigh in favor of granting preliminary approval of the proposed settlement.

17   **C.     The Settlement Falls within the Range of Possible Approval**

18         To determine whether a class action settlement falls within the range of possible

19   approval, a court "must consider plaintiffs' expected recovery balanced against the

20   value of the settlement offer."  *Spann*, 314 F.R.D. at 319. (internal quotation marks

21   omitted).  At the same time, "it is well-settled law that a proposed settlement may be

22   acceptable even though it amounts to only a fraction of the potential recovery that might

23   be available to the class members at trial." *Nat'l Rural Telecomms. Coop. v. DIRECTV,*

24   *Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004).  As part of this evaluation,

25              the Court may preview the factors that ultimately inform final

26              approval:  [1] the strength of plaintiff's case; [2] the risk,

27              expense, complexity, and likely duration of further litigation;

28              [3] the risk of maintaining class action status throughout the

6

trial; [4] the amount offered in settlement; [5] the extent of discovery completed, and the stage of the proceedings; [6] the experience and views of counsel; [7] the presence of a governmental participant; and [8] the reaction of the class members to the proposed settlement.

*Genji*, 14 F. Supp. 3d at 1335 (internal quotation marks omitted).

### 1. The Strength of Plaintiff's Case and Risk of Further Litigation

Plaintiff's claims have survived multiple motions to dismiss and a motion for summary judgment. Given these claims have made it through the crucible of pretrial motion practice, the Court has every reason to believe they could succeed on the merits at trial. At the same time, the scope of Plaintiff's recovery was narrowed by this Court's ruling on the cross–motions for summary judgment. (*See generally* Order Re: Cross-Mots. for Summ. J.) Further, damages awards cannot always be predicted with great accuracy, meaning any potential recovery is inherently speculative. As a result, the Court concludes the parties have proposed a reasonable settlement given the strength of Plaintiff's case and risks of further litigation.

### 2. Stage of Litigation and Extent of Discovery

As the parties make clear in their motion, this suit is mature. In addition to the motions discussed above, the parties engaged in "extensive written discovery plus numerous depositions." (Mot. 22 (citing Sultzer Decl. ¶ 8).) ULV has "produced approximately 5,900 pages of documents," and Plaintiff produced "approximately 3,350 pages of documents." (*Id.*) The Court concludes that the parties have "exhaustively examined the factual and legal bases of the disputed claims" and that this "militates in favor of the Court's approval of the settlement." *DIRECTV, Inc.*, 221 F.R.D. at 527.

### 3. The Amount Offered in Settlement

The Settlement Agreement offers monetary and nonmonetary benefits to all participating Class Members. At the hearing, counsel stated that approximately 2,000

7

1    Class Members will be covered by the proposed settlement.  Even if the $6.3 million in

2    increased financial aid is not included as part of the settlement, Class Members will

3    receive a *pro rata* share of the $863,708 Net Settlement Fund, resulting in an average

4    share of $430 per member *after* fees and costs.[1]

5        This figure is in line with other COVID-19 tuition-related class action

6    settlements.  *See, e.g.*, *Rosado v. Barry Univ., Inc.*, No. 20-21813-CIV-MARTINEZ-

7    OTAZO-REYES, 2021 U.S. Dist. LEXIS 169196, at *7, 9, 22–23 (S.D. Fla. Sept. 7,

8    2021) (granting final approval of $2,400,000 settlement fund before costs and fees for

9    class of 6,076 students); *Wright v. S. N.H. Univ.*, 565 F. Supp. 3d 193, 202, 206 (D.N.H.

10   2021) (granting preliminary approval of $1,250,000 settlement fund before costs and

11   fees for class of over 2,800 students).  Further, the settlement also guarantees access to

12   ULV's Career Center and Academic Success Center so long as these services remain

13   available to ULV students.  (Settlement Agreement § 1.20.)  The parties estimate these

14   services are valued at approximately $546,912.  (*Id.* § 3.3.4.)  Finally, all Class

15   Members will be entitled to a 10% tuition discount for all graduate education at ULV.

16   (*Id.* § 1.20.)

17       The Court concludes these factors counsel granting preliminary approval of the

18   settlement.

19              4.    The Experience and Views of Counsel

20       The settlement agreement represents the manifest judgment of counsel on both

21   sides of this dispute.  "Parties represented by competent counsel are better positioned

22   than courts to produce a settlement that fairly reflects each party's expected outcome in

23   litigation."  *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).  At this

24   point, the Court sees no evidence of any "conflict of interest," or that that the settlement

---

[1] The Court assumes for the purpose of the analysis that Class Counsel's motion for fees and costs will be granted in full and that the Net Settlement Fund will align with the parties' estimate.

8

1  was the "product of fraud or overreaching by, or collusion among, the negotiating

2  parties." *Id.* (internal quotation marks omitted).  As a result, this factor weighs in favor

3  of granting preliminary approval.

4        5.    The Risk of Maintaining Class Action Status Throughout the Trial

5        Plainitiffs faced a risk of losing class status given "[a] district court may decertify

6  a class at any time." *Rodriguez*, 563 F.3d at 966.  The parties vigorously contested class

7  certification.  (*See e.g.,* Mot. to Certify Class, ECF No. 70; Opp'n to Class Cert, ECF

8  No. 86).  As a result, Plaintiff would need to consider the ongoing risk of losing class

9  certification status if the Settlement had not been reached.  Therefore, this factor weighs

10 in favor of granting preliminary approval.

11       6.    Remaining Factors

12       The remaining factors are not applicable to the analysis at this stage in the

13 proceedings.  There is no governmental participant in this lawsuit and the reaction of

14 the Class Members to the proposed settlement cannot yet be ascertained.  Consequently,

15 neither of these factors counsel against granting preliminary approval.

16                                ***

17       Based on the analysis above, the settlement appears to have been "the product of

18 serious, informed, non-collusive negotiations." *Haralson*, 383 F. Supp. 3d at 966.  The

19 Court does not see any "obvious deficiencies," nor does the settlement appear to

20 "improperly grant preferential treatment to class representatives or segments of the

21 class." *Id.*  Finally, an analysis of the factors required for final approval shows the

22 settlement "falls within the range of possible approval." *Id.*  The Court determines that

23 the proposed settlement is fair and reasonable enough for preliminary approval.

24 **D.    Adequate Notice**

25       For a Rule 23(b)(3) class, "the court must direct to class members the best notice

26 that is practicable under the circumstances, including individual notice to all members

27 who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).  "The

28 yardstick against which we measure the sufficiency of notices in class action

proceedings is one of reasonableness." *Low v. Trump Univ., LLC*, 881 F.3d 1111, 1117 (9th Cir. 2018) (quoting *In re Bank of Am. Corp.*, 772 F.3d 125, 132 (2d Cir. 2014)). "Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (internal quotation marks omitted).  Notice "does not require detailed analysis of the statutes or causes of action forming the basis for the plaintiff class's claims, and it does not require an estimate of the potential value of those claims." *Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012).

Here, the Court agrees with the parties' characterization of the proposed notice. It "informs Class Members of the substantive terms of the Settlement" and "advises Class Members of their options for opting out of or objecting to the Settlement, and how to obtain additional information." (Mot. 24; *see also* Settlement Agreement Ex. B.) Additionally, the class notice is written in plain English and uses nontechnical terms. (*See* Settlement Agreement Ex. B.)

The parties' proposed notice plan seems calculated to maximize Class Members' awareness of the settlement.  Defendant will provide the Settlement Administrator with a list containing the names and last known addresses, email addresses, and telephone numbers for each Class Member. (Settlement Agreement §§ 1.5, 2.3.1.)  The Settlement Administrator will then send, by email or regular mail, a copy of the notice to all Class Members. (*Id.* § 2.3.2.)  The Settlement Administrator will also establish a website with additional information regarding the Settlement.  (*Id.* § 2.3.5.)

The Court finds that the proposed notice procedure provides all the information required by Rule 23(c)(2)(B), constitutes the best practicable notice to class members, and comports with the requirements of due process.

///

///

///

10

## IV.   CONCLUSION

Having considered all matters submitted to it including the complete record of the Litigation, the Court grants preliminary approval of the Settlement and hereby finds and concludes as follows:

1.     This Order incorporates by reference the definitions in the Settlement Agreement dated November 14, 2022.

2.     The capitalized terms used in this section of the Order shall have the same meaning as defined in the Settlement Agreement except as otherwise expressly provided.

3.     The Court has subject-matter jurisdiction over the Litigation pursuant to 28 U.S.C. §§ 1332 and 1367 and personal jurisdiction over the Parties before it.  Venue is proper in this District pursuant to 28 U.S.C. § 1391.

4.     The Court preliminarily approves the Settlement Agreement as within the range of possible final approval, and as meriting submission to the Settlement Class for its consideration.

5.     The Court also preliminarily finds that the plan for distribution of the Settlement Fund, as set forth in the Settlement, is fair and equitable, subject to issues raised by any Class Members after Notice is conducted.

6.     The Court also confirms its ruling appointing Brianna Arredondo as Class Representative and the law firms of The Sultzer Law Group, P.C., Leeds Brown Law P.C., Shoop Law APLC, and Charon Law as Class Counsel and certifying the class that is aligned with the Settlement Class.  (Order Granting Mot. For Class Certification, ECF No. 117.)

7.     In consultation with, and with the approval of, Defendant, Class Counsel is hereby authorized to establish the means necessary to administer the proposed Settlement and implement the Claim process, in accordance with the terms of the Settlement Agreement.  CPT Group is hereby appointed by the Court as the Claim Administrator, whose reasonable fees and costs are to be paid from the New Cash

Settlement Fund in accordance with the Settlement Agreement.  The Claim Administrator shall perform and comply with all notice and administration duties ascribed to it in the Settlement Agreement, this Preliminary Approval Order, and subsequent orders that may be entered by this Court in this case.

8.      The Court approves, as to form and content, the Election Form and Notice, attached as Exhibits to the Settlement Agreement.  The Election Form and Notice are written in plain English, are easy to comprehend, and fully comply with the requirements of the Due Process Clause of the United States Constitution, Rule 23 of the Rules of Civil Procedure, and any other applicable law.  The Parties shall have discretion to jointly make non-material minor revisions to the Election Form or Notice. Responsibility regarding settlement administration, including, but not limited to, notice and related procedures, shall be performed by the Claim Administrator, subject to the oversight of the Parties and this Court as described in the Settlement Agreement.

9.      The Court finds that Notice and Election Process is reasonably calculated to provide notice to the Settlement Class of the pendency of the Litigation, certification of the Settlement Class, the terms of the Settlement Agreement, and applicable deadlines, complies fully with the requirements of the Due Process Clause of the United States Constitution, Rule 23 of the Rules of Civil Procedure, and any other applicable law, and is the best notice practicable under the circumstances and shall constitute due and sufficient notice to all persons entitled thereto.  The Parties and the Claim Administrator shall comply with the Notice and Election Process and other deadlines as set forth in the Settlement Agreement and this Order.

10.      The Settlement Claims Administrator shall implement the Notice and Election Form process, as set forth below and in the Settlement, using the forms of Notice and Election Form appended as Exhibits to the Settlement Agreement and approved by this Order.

11.      No later than fourteen (14) days after entry of this Order, Defendant shall provide Class Counsel and the Settlement Claims Administrator the names of any Class

Members that can be identified through Defendant's records, any available physical mailing addresses and/or e-mail address for such Class Members, plus the information outlined in the Settlement Agreement.

12.     Within fourteen (14) days after receipt of the Class List, or as otherwise ordered by the Court, the Settlement Claims Administrator shall (i) email a copy of the Notice and Election Form to all Class Members for whom the Settlement Claims Administrator has a valid email address, and (ii) mail a copy of the Notice and Election Form to all Class Members not presently enrolled at La Verne for whom the Settlement Claims Administrator does not have a valid email address through regular U.S. Mail to such students' mailing address as listed in La Verne's records.

13.     If a Notice is returned as undeliverable via email, then the Settlement Claims Administrator shall take all reasonable steps to obtain a mailing address, including performing a skip trace, and shall email the Notice to any other email address obtained or mail Notice to any physical address.  If a Notice is returned as undeliverable via mail, then the Settlement Claims Administrator shall take all reasonable steps to obtain a mailing address, including requesting such information from Defendant, performing a skip trace, and/or remailing the Notice to any address.   The Settlement Claims Administrator shall also mail a Notice and Election Form to any Class Member who requests them after the initial emailing of Notice and before the Notice Response Deadline.   The Settlement Claims Administrator will notify Class Counsel and Defendant's Counsel of any Notices and Election Forms returned as undeliverable after the first mailing, including those returned as undeliverable after any subsequent mailing. All costs of locating Class Members will be paid from the Qualified Settlement Fund.  To assist in obtaining a more accurate email or physical address for any Class Member, Class Counsel may provide such to the Settlement Claims Administrator to be used for the purposes of mailing of Notice.

14.     Additionally pursuant to the terms of the Settlement Agreement, Notice and Election Form shall be provided on a website at an available settlement URL to be

agreed upon by the Parties, which shall be obtained, administered, and maintained by the Settlement Claims Administrator.  Copies of the Settlement Agreement, Notice, and other pertinent documents and Court filings pertaining to the Settlement shall be provided on the Settlement Website.

15.     Class Members who wish to opt-out to the proposed Settlement must do so in writing by the Notice Response Deadline.  To be considered, such statement must submit to the Settlement Claims Administrator via First Class Mail, postage pre-paid, and postmarked by the United States Postal Service or via verification through the Settlement Website on or before the Notice Response Deadline stating:

> I WISH TO OPT-OUT FROM THE SETTLEMENT CLASS IN THE ARREDONDO V. ULV LAWSUIT. I UNDERSTAND THAT IF I ASK TO OPT-OUT FROM THE SETTLEMENT CLASS, I WILL NOT RECEIVE ANY MONEY FROM THE SETTLEMENT OF THIS LAWSUIT.

In order to be valid, the Opt-out Statement must include the name, address, telephone number, date of birth, and signature of the Class Member.  To be effective, an Opt-out Statement must be sent by mail to the Settlement Claims Administrator at the specified address and must be postmarked by United States Postal Service or via verification through the settlement website on or before the Notice Response Deadline.

16.     Class Members who wish to present objections to the proposed settlement must do so in writing by the Notice Response Deadline.  To be considered, such statement must be mailed to the Settlement Claims Administrator via First Class Mail, postage pre-paid, and postmarked by the United States Postal Service on or before the Notice Response Deadline.  The statement must include: (1) the objector's name, address and telephone number; (2) an explanation of the basis upon which the objector claims to be a Settlement Class Member; (3) all grounds for the objection, including all citations to legal authority and evidence supporting the objection; (4) the name and

contact information of any and all attorneys representing, advising, or in any way assisting the objector in connection with the preparation or submission of the objection or who may profit from the pursuit of the objection; (5) a statement indicating whether the objector intends to appear at the Final Approval Hearing (either personally or through counsel who files an appearance with the Court in accordance with the Local Rules); (6) copies of any papers, briefs, declarations, affidavits or other documents upon which the objection is based; (7) a detailed list of any other objections submitted by the Settlement Class member, or his/her counsel, to any class actions submitted in any state or federal court in the United States in the previous five years (or affirmatively stating that no such prior objection has been made); and (8) the objector's signature, in addition to the signature of the objector's attorney (if any) - an attorney's signature alone shall not be deemed sufficient to satisfy this requirement.  Failure to include any of the information or documentation set forth in this paragraph shall be grounds for overruling and/or striking the objection.  The Settlement Claims Administrator will stamp the date received on the original and send copies of each objection, supporting documents, as well as a copy of the Notice mailed to the Objector, to Class Counsel and Defendant's Counsel by email delivery no later than three (3) days after receipt of the objection.

17.    An Objector may withdraw his or her objections at any time.  Any Class Member who has elected to opt-out may not submit objections to the settlement.

18.  To the extent that the issue raised by the Objector has not been resolved, the Objector or either Party may seek relief from the Court including declaring that the Objector has opted out or that her/his objection has been overruled.

19.    Any Class Member who does not timely submit an Opt-out Statement pursuant to the Settlement Agreement will be deemed to have accepted the settlement and the terms of the Settlement Agreement, will be bound by the Final Approval Order, and will have any Released Claims released and dismissed with prejudice.

20.    Class Members are not required to take any affirmative steps to participate in this Action and upon approval, Settlement Checks will be mailed to all Class Members

by the dates set forth in the Settlement Agreement or in this Order.  However, Class Members shall be given the opportunity via the Election Form to decide upon a reasonably convenient method for them to receive their settlement proceeds among several reasonable options (i.e. mailing of checks, Venmo, PayPal, etc.).  Class Members may submit their Election Forms via first class mail, fax, email, or through the website established by the Settlement Claims Administrator for this Settlement, by the Notice Response Deadline.  The Notice Response Deadline for Election Forms shall be (i) thirty (30) days from the date of the initial mailing and/or e-mailing of the Notice or as otherwise set by the Court, and (ii) an additional fifteen (15) days later for any Class Members who were unable to file a timely Election Form, due to factors such as change of address, military service, hospitalization, or other extraordinary circumstances.  If an envelope does not contain a postmark, it shall be deemed received on the date that the Settlement Claims Administrator stamps the envelope or Election Form as "received."

21.    No later than thirty (30) days after the Notice Response Deadline, the Settlement Claims Administrator shall certify jointly to Class Counsel and Defendant's Counsel: (a) a list of all Class Members, (b) a list of all Objectors, (c) a list of all Class Members who timely submitted an Opt-out Statement, and (d) an estimated calculation of the Settlement Proceeds to Class Members in accordance with the formulas and allocation amounts discussed below.

22.    All proceedings in the Action are hereby stayed until further Order of the Court, except as may be necessary to implement the terms of the Settlement.

///

///

///

1    23.    Upon entry of this Order, all Class Members will be preliminarily barred and

2    enjoined from asserting, instituting, or prosecuting, directly or indirectly, any Released

3    Claim in any court or other forum against any of the Releasees.  Upon entry of a Final

4    Approval Order, all Class Members will be forever barred and enjoined from taking any

5    action in violation of this provision.

6

7    **IT IS SO ORDERED.**

8

9     Dated: December 21, 2022            _____

10                                        MARK C. SCARSI
                                          UNITED STATES DISTRICT JUDGE
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28