David R. Shoop, Esq. (SBN 220576)
Thomas S. Alch, Esq. (SBN 136860)
**SHOOP | A PROFESSIONAL LAW CORPORATION**
9701 Wilshire Blvd., Suite 950
Beverly Hills, California 90212
Telephone: (310) 620-9533
David.shoop@shooplaw.com
Thomas.alch@shooplaw.com

Jason P. Sultzer, Esq.*
Mindy Dolgoff, Esq.*
**THE SULTZER LAW GROUP P.C.**
85 Civic Center Plaza, Suite 200
Poughkeepsie, NY 12601
Telephone: (845) 483-7100
sultzerj@thesultzerlawgroup.com
Dolgoffm@thesultzerlawgroup.com

Jeffrey K. Brown, Esq.*
Michael A. Tompkins, Esq.*
Brett R. Cohen, Esq.
**Leeds Brown Law, P.C.**
One Old Country Road, Suite 347
Carle Place, NY 11514
Telephone: (516) 873-9550
jbrown@leedsbrownlaw.com
mtompkins@leedsbrownlaw.com

Perry L. Segal (State Bar No. 250947)
**Charon Law**
303 Twin Dolphin Drive, Suite 600
Redwood City, California 94065-1422
(650) 542-7935
perry.segal@charonlaw.com

*Admitted Pro Hac Vice*

Counsel for Plaintiff and the Certified Class

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIANNA ARREDONDO, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br><br>THE UNIVERSITY OF LA VERNE,<br><br>Defendant. | Case No. 2:20-cv-07665-MCS-RAOx<br>Hon. Mark C. Scarsi, U.S.D.J.<br><br>**PLAINTIFFS' NOTICE OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND NOTICE PLAN AND MEMORANDUM OF LAW**<br><br>Date: April 10, 2023<br>Time: 9 a.m.<br>Crtrm.: 7C, 7th Floor |

i

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on April 10, 2023 at 9:00 AM in Courtroom 7C of the United States District Court for the Central District of California, located as 350 W. 1st Street, Los Angeles, California 90012, Plaintiff Brianna Arredondo, on behalf of herself and the certified Class, will and hereby does move this Court pursuant to Federal Rules of Civil Procedure 23 for a Final Order and Judgment: (i) finally approving class action settlement; (ii) confirming Plaintiff's appointment as as class representative; (iii) confirming appointment of Class Counsel; and (iv) confirming certification of the Class (see Fed. R. Civ. P. 23(c)).

Date: March 13, 2023      **THE SULTZER LAW GROUP, P.C.**

_/s/ Jason Sultzer_
Jason P. Sultzer, Esq.*
Mindy Dolgoff, Esq.*
270 Madison Avenue, Suite 1800
New York, NY 10016
Tel. (845) 483-7100
*Admitted Pro Hac Vice

**LEEDS BROWN LAW, P.C.**
Jeffrey K. Brown, Esq.*
Michael A. Tompkins, Esq.*
Brett Cohen, Esq.
One Old Country Road, Suite 347
Carle Place, NY 11514
Telephone: (516) 873-9550
*Admitted Pro Hac Vice

**PLAINTIFFS' NOTICE OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND NOTICE PLAN AND MEMORANDUM OF LAW**

**SHOOP A PROFESSIONAL LAW
CORPORATION**
David R. Shoop, Esq.
Thomas S. Alch, Esq.
9701 Wilshire Blvd., Suite 950
Beverly Hills, California 90212
Tel. (310) 620-9533

**CHARON LAW**
Perry L. Segal, Esq.
303 Twin Dolphin Drive, Suite 600
Redwood City, California 94065
Tel. (650) 542-7935

*Counsel for Plaintiff Brianna Arredondo
and the Certified Class*

**PLAINTIFFS' NOTICE OF MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT AND NOTICE PLAN AND MEMORANDUM OF LAW**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND ...............................................3

I. HISTORY OF THE LITIGATION.......................................................3

II. SETTLEMENT NEGOTIATIONS .................................................5

III. THE MATERIAL TERMS OF THE SETTLEMENT ...................................8

    A. The Class ..........................................................................8

    B. Relief for the Class Members.......................................................8

    C. The Release ........................................................................9

    D. Attorneys' Fees, Costs and Service Awards ...............................................10

ARGUMENT ................................................................................10

I. THE PROPOSED SETTLEMENT SHOULD BE APPROVED .....................10

    A. Rule 23(e)(2) Factors Weigh in Favor of Preliminary Approval................12

    B. The Proposed Settlement Satisfies the *Churchill* Factors............................20

    C. The Views of Experienced Counsel Should be Given Substantial Weight .23

II. THE NOTICE TO SETTLEMENT CLASS WAS PROPER ........................24

CONCLUSION ................................................................................25

# TABLE OF AUTHORITIES

**Cases**                                                                       **PAGES**

*Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 975 (E.D. Cal. 2012)........14

*Carter v. San Pasqual Fiduciary Tr. Co.*, 2018 U.S. Dist. LEXIS 33834, at *22

    (C.D. Cal. Feb. 28, 2018) ....................................................................19

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575-76 (9th Cir. 2004).......3, 12

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) ................10

*Edwards v. Ford Motor Co.*, 2016 U.S. Dist. LEXIS 59651 (S.D. Cal. Jan. 22,

    2016) ........................................................................................................17

*Eisen v. Porsche*, 2014 WL 439006, at *5.............................................................24

*Eisen v. Porsche*, 2014 WL 439006, at *5 (C.D. Cal. Jan. 30, 2014) .....................24

*Franco v. Ruiz Food Prods.*, No. 1:10-cv-02354-SKO, 2012 U.S. Dist. LEXIS

    169057, at *39 (E.D. Cal. Nov. 27, 2012)...........................................................22

*G. F. v. Contra Costa Cnty.*, 2015 U.S. Dist. LEXIS 100512, at *43 (N.D. Cal. July

    30, 2015) ...............................................................................................13

*Gutierrez v. Stericycle, Inc.*, 2019 U.S. Dist. LEXIS 237817, *12 ................. 16, 17

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) ..................... 10,19

*In re Bluetooth*, 654 F.3d at 946 .............................................................................13

*In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).............................23

TABLE OF AUTHORITIES

*In re Toys "R" Us-Del., Inc. FACTA Litig.*, 295 F.R.D. 438, 450 (C.D. Cal. 2014) ...............................................................................................................12

*Jiangchen v. Rentech, Inc.*, No. CV 17-1490-25-GW(FFMx), 2019 U.S. Dist. LEXIS 180474, at *22 (C.D. Cal. Oct. 10, 2019) ...............................22

*Jones v. Netcom, Inc. (In re Bluetooth Headset Products Liab. Litig.)*, 654 F.3d 935, 946 (9th Cir. 2011) ...............................................................12

*Kearney v. Hyundai Motor Am.,* 2013 U.S. Dist. LEXIS 91636, at *17-18 (C.D. Cal. June 28, 2013) ...................................................................16

*Lane v. Facebook, Inc.*, 696 F.3d 811, 818 (9th Cir. 2012)....................................15

*Linney v. Cellular Alaska P'ship*, 151 F. 3d 1234, 1239 (9th Cir. 1998)...............21

*Martin v. Lindenwood University*, No. 4:20-cv-01128 (E.D. Mo. 2022)...............17

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) ..........................................................................................16

*Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 527-528 .................................... 21,22

*Officers for Justice v. Civil Service Comm'n*, 668 F.2d 615, 625 (9th Cir. 1982)  12, 13

*Retta v. Millennium Prods.*, 2017 U.S. Dist. LEXIS 220288, *15 (C.D. Cal. Aug. 22, 2017) ............................................................................................16

*Rodriguez v. West Pub. Corp.*, 463 F.3d 948, 965 (9th Cir. 2009) ........................14

*Rosado v. Barry University*, Inc., No. 1:20-cv-21813 (S.D. Fla. 2021).................17

TABLE OF AUTHORITIES

*Wright v. Southern New Hampshire University*, No. 1:20-cv-00609 (D. NH. 2021) .................................................................................................17

**Rules**

Fed. R. Civ. P. 23 ..............................................................................18

Fed. R. Civ. P. 23(c)..........................................................................25

Fed. R. Civ. P. 23(c)(2)(B) ...............................................................24

Fed. R. Civ. P. 23(e)(2)......................................................................11

*Fed. R. Civ. P. 23(e)(2)(A)* ...............................................................12

*Fed. R. Civ. P. 23(e)(2)(B)* ...............................................................12

*Fed. R. Civ. P. 23(e)(2)(C)* ...............................................................14

*Fed. R. Civ. P. 23(e)(2)(C)(i)* ...........................................................14

*Fed. R. Civ. P. 23(e)(2)(C)(ii)* ..........................................................18

*Fed. R. Civ. P. 23(e)(2)(C)(iv)* .........................................................19

*Fed. R. Civ. P. 23(e)(2)(D)* ...............................................................19

Federal Rule of Civil Procedure 23(e)(2) ...............................................3

Rule 23(e)(2) ............................................................................ 10, 12

TABLE OF AUTHORITIES

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff Brianna Arredondo ("Plaintiff") and the certified Class (together, "Plaintiffs") respectfully submit this memorandum of law in support of Plaintiffs' Motion for Final Approval of Class Action Settlement.[1]

## **INTRODUCTION**

This proposed class action settlement ("Settlement") is an excellent result for the Settlement Class.  The proposed Settlement was preliminarily approved by this Court on December 21, 2022. Dkt 180. Class Notice was timely disseminated pursuant to the Court-approved Notice Plan, and we are pleased to advise that <u>NONE</u> of the approximate 2,061 Settlement Class Members in this case have objected to any aspect of this Settlement. As discussed *infra*, this overwhelmingly shows that the Settlement Class Members favor the Settlement. In addition, there have only been three (3) requests for exclusion, which, likewise, shows the Settlement Class Members' almost-unanimous support for this Settlement.

The Settlement would resolve the claims of undergraduate students, like Plaintiff, who paid Defendant University of La Verne ("Defendant" or "ULV") tuition and fees for the Spring 2020 Semester for educational services that Plaintiffs claim were not delivered, and whose tuition and fees have not been refunded. The

---

[1] Unless otherwise indicated, capitalized terms shall have the same meaning as they do in the Settlement Agreement.  References to "§ __" are to sections in the Settlement Agreement, Dkt. 171-2 and all Exhibits to the Settlement Agreement are referred to as "Ex #."

Settlement provides a fair, reasonable, and adequate recovery for the Class and creates an $8,895,759.00 Conferred Benefit to the Class. The Settlement provides Class Members with immediate, valuable relief in the form of: (1) a New Cash Settlement Fund of $2,000,000 which will create a common fund to pay students a *pro rata* share of the tuition and fees they paid for the Spring 2020 semester; (2) Increased Financial Aid Benefit of $6,348,847.00 in Increased Financial Aid previously distributed as a direct result of the initiation of this Action; and (3) Non-Cash Benefits including post-settlement access for all Participating Class Members to ULV's Career Center services, Academic Success services, and a 10% tuition discount on ULV graduate programs valued at approximately $546,912.00 (plus the 10% future tuition discount). §§ 3.1-3.4. The Settlement was reached after vigorously litigating the Action for over two years, completing fact and expert discovery, and briefing and arguing numerous motions including motions for summary judgment.

The Court has previously found that the Settlement satisfies all of the criteria for preliminary settlement approval. Dkt. 180. Notably, no Settlement Class Member has objected to any aspect of this settlement. As detailed below, Plaintiffs now request that the Court grant final approval of the Settlement Agreement, as the terms are fair, reasonable and adequate, providing substantial benefits to Settlement Class Members, and because the proposed Settlement Class satisfies the requirements of

Federal Rule of Civil Procedure 23(e)(2), as well as the standards set forth by the Ninth Circuit for the procedural and substantive fairness of the Settlement, including in *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575-76 (9th Cir. 2004).

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    HISTORY OF THE LITIGATION

Plaintiff filed her initial Complaint on August 23, 2020, alleging breach of contract, unjust enrichment and conversion and taking of property based on ULV's transition from in-person and on-campus educational services to virtual educational services for a portion of the Spring 2020 semester and the retention of the full tuition and fees for that time. Dkt. 1; Declaration of Jason P. Sultzer in Support of: Plaintiffs' Motion for Final Approval of Class Action Settlement; and (ii) Plaintiffs' Motion for Attorneys' Fees, Costs and Service Awards ("Sultzer Decl.") ¶ 10. On December 4, 2020, ULV filed a motion to dismiss and Plaintiff responded with her First Amended Complaint ("FAC") filed on December 18, 2021. Dkt. 33, 34; Sultzer Decl. ¶11. ULV filed a motion to dismiss the FAC on January 11, 2021, on the grounds that, *inter alia*, Plaintiff failed to allege a contractual obligation and that her claims were non-cognizable claims of educational malpractice. Dkt. 37; Sultzer Decl. ¶ 12. Plaintiff then filed her Second Amended Complaint ("SAC") on February 22, 2021, which ULV moved to dismiss on March 8, 2021, on similar grounds to its previous motion to dismiss. Dkt. 44, 45; Sultzer Decl. ¶ 13. Plaintiff opposed that motion. *Id.;* Dkt. 46.

On April 21, 2021, the Court granted ULV's motion to dismiss with respect to Plaintiff's claims for unjust enrichment and conversion but allowed her contract claim to go forward. Dkt. 50; Sultzer Decl. ¶ 14. The Parties then engaged in full fact and expert discovery for almost a year. Sultzer Decl. ¶ 15. ULV made extensive document productions, the Parties litigated several discovery disputes, took fifteen depositions, and exchanged expert reports and rebuttal reports. *Id*.

On Feb. 8, 2022, the Court appointed Plaintiff as Class Representative, appointed The Sultzer Law Group, P.C., Leeds Brown Law P.C., Shoop, A Professional Law Corporation, and Charon Law as Class Counsel, and certified a class of "[a]ll University of La Verne undergraduate students who paid tuition and/or the Mandatory Fees at La Verne's Main/Central campus location during the Spring 2020 term/semester." Dkt. 117; Sultzer Decl. ¶ 16. On August 2, 2022, upon ULV's motion to decertify the Class, the Court amended the class definition to "[a]ll University of La Verne undergraduate students, excluding students in the Campus Accelerated Program for Adults, who paid tuition and/or the Mandatory Fees at La Verne's Main/Central campus location during the Spring 2020 term/semester." Dkt. 163; Sultzer Decl. ¶ 17.

On April 4, 2022, ULV moved for summary judgment and to decertify the class. Dkt. 138; Sultzer Decl. ¶ 18. On April 11, 2022, the Plaintiffs' moved for partial summary judgment on the existence and breach of an implied contract. Dkt.

143; Sultzer Decl. ¶ 18. The Court issued its Order on Cross Motions for Summary Judgment and to Decertify the Class on August 2, 2022: (i) finding the existence of an implied contract that included a term for in-person offerings; (ii) amending the class definition to exclude CAPA students; and (iii) finding that Plaintiffs could proceed on a quasi-contract action to recover damages. Dkt. 163; Sultzer Decl. ¶ 18.

During the course of the litigation, the Parties participated in two private mediation sessions on August 10, 2021 and March 14, 2022 through ADR Services, Inc. Dkt. 164; Sultzer Decl. ¶ 19; Declaration of Michael A. Tompkins Decl. ¶19. Those mediation sessions did not result in a settlement, however the Parties continued to engage in settlement discussions as they prepared for trial and successfully resolved the claims in this Action. *Id.* On August 26, 2022, the Parties advised the Court that they had settled the Class Action. Dkt. 165; Sultzer Decl. ¶ 20.

Plaintiffs filed their motion for preliminary approval on November 14, 2022 (Dkt. 170, Sultzer Decl. ¶ 21) and the Court issued its Order granting preliminary approval and approving the Notice Plan on December 21, 2022, after the parties appeared before Your Honor on Dec. 13, 2022 and provided further context on the settlement. (Dkt. 180); *See*, *generally*, Sultzer Decl., Ex. A.

## II.    SETTLEMENT NEGOTIATIONS

The Settlement was reached as a result of extensive arm's-length negotiations

between the Parties and counsel over several months. Sultzer Decl. ¶ 22. Before and during these settlement discussions, the Parties had an arm's-length exchange of information, including full-blown written and expert discovery and numerous depositions, to permit Plaintiff and her counsel to evaluate the claims and defenses and to meaningfully conduct informed settlement discussions. *Id*. ¶ 23. The Parties did not discuss Attorneys' Fees and Costs or any potential Service Awards until they first agreed on the substantive terms of this settlement. *Id*. ¶ 24. Defendant denies all of Plaintiff's allegations and all charges of wrongdoing or liability against it arising out of any of the conduct or decisions alleged, or that could have been alleged against it, in the Action. § B.

In connection with the Settlement negotiations, Class Counsel worked together to thoroughly analyze the legal landscape, including conducting research into California contract, quasi-contract, and restitution laws and the available remedies in order to fully evaluate the risks and benefits to a potential resolution prior to trial. Sultzer Decl. ¶ 25.

During the course of the litigation, the Parties agreed to participate in two separate private mediation sessions. *Id*. ¶ 26. Class Counsel requested, and ULV produced, discovery prior to the second mediation including the amount of tuition paid by students in the Spring 2020 Semester and the amount of ULV funded scholarships and grants that were awarded in order to better evaluate the claims and

position themselves to negotiate a settlement that would be fair and reasonable on behalf of the Class. *Id*. The mediation sessions did not result in a settlement. *Id*. ¶ 19. However, as they prepared for trial, the Parties continued to engage in settlement discussions in an effort to resolve the claims in this Action. *Id*.

Having conducted full-blown fact and expert discovery and with the Court's ruling on the Parties' cross-motions for summary judgment and ULV's motion for decertification, the Parties were in an ideal position to analyze and evaluate the remaining claims and defenses and the risks associated with proceeding to trial, including the risk that a trial may result in no recovery or recovery that is less favorable and would not occur for several years. *Id*. ¶ 23.

During the course of negotiations, Class Counsel learned the precise amount of money that was distributed by ULV and that it did so as a direct result of the pendency of this Action, including approximately $6.34 million in increased financial aid for the 2020-2021 academic year to Traditional Undergraduate Students ("TUGS"). *Id*. ¶ 28; § 3.1; Sultzer Dec., Ex. A at 20:5-22. As confirmed by ULV's counsel, such increased aid would not have been distributed if not for this Action. *Id*. Moreover, Class Counsel considered the financial condition of ULV, supported by discovery obtained on this issue, and its ability to withstand a greater settlement or judgment. *Id*. ¶ 29. Class Counsel also considered the possibility that obtaining a greater judgment may also impact future educational services for Class Members

still enrolled, including the loss of future services. *Id.* ¶ 30.

## III.   THE MATERIAL TERMS OF THE SETTLEMENT

The Settlement's terms are detailed in the Settlement Agreement and Release. *See* Dkt. 170-2. A summary of the Settlement's key terms follows:

### A. The Class

The "Settlement Class" is defined in the Settlement Agreement as:

> All University of La Verne undergraduate students, excluding students in the Campus Accelerated Program for Adults, who paid tuition and/or the Mandatory Fees, or on whose behalf payment was made, at University of La Verne's Main/Central campus location during the Spring 2020 term/semester. [2]

§ 1.34.

### B. Relief for the Class Members

#### 1.   Cash Benefit

ULV will pay $2,000,000.00 into a common fund to create the New Cash Settlement Fund that will be used to pay Class Members and any Court-approved Attorneys' Fees and Costs, Service Awards, and all costs and fees associated with the Settlement Claims Administrator. § 3.2. Class Members did not need to submit a claim form but were provided the option to submit an Election Form to choose the method of payment. § 2.3.4. The parties agreed upon an allocation formula and

---

[2] Excluded from the Settlement Class are (1) any District Judge or Magistrate Judge presiding over this Action and members of their families; (2) the Defendant, Defendant's subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former officers, directors, agents, attorneys, and employees; (3) persons who properly execute and file a timely request for exclusion from the class; and (4) the legal representatives, successors or assigns of any such excluded persons.

methodology that provides payment on a prorated basis based on a percentage of tuition and fees paid to ULV, not including any grants and/or scholarships that did not require repayment. § 3.8.1. Additionally, as a direct result of this Action, ULV distributed an Increased Financial Aid Benefit that consisted of $6,348,847.00 of increased financial aid dispersed to 97% of TUGS beginning in the fall of the 2020-2021 academic year. § 3.1. Of the Increased Financial Aid Benefit, $2,200,000.00 was specifically distributed to all TUGS regardless of merit or financial need. *Id.* The remainder of $6,348,847.00 was awarded to TUGS based on merit and/or financial need. *Id.* Importantly, this relief was obtained without any requirement of repayment by any Class Member and no ancillary obligation on them.

### 2.   *Non-Cash Benefits*

In addition to the cash benefits, all Class Members shall be granted access to ULV's Career Center and its services and to ULV's Academic Success Center and its services, so long as such facilities and services are operational and available to ULV students. § 3.3.1; 3.3.2. The Non-Cash Benefits are valued at approximately $546,912.00. § 3.3.4. Additionally, Class Members are entitled to a 10% tuition discount for enrollment in a ULV graduate program, so long as such program is operational and available to ULV's students. § 3.3.3. These provide for substantial benefits in addition to the other benefits detailed above.

### C. The Release

In exchange for the benefits conferred by the Settlement, Class Members who

did not opt out are deemed to have released ULV from all Released Claims. § 3.91. The detailed release language is set forth in § 3.9 of the Settlement Agreement.

### D. Attorneys' Fees, Costs and Service Awards

Subject to Court approval, the Parties separately negotiated, after having already reached agreement on the class benefits, sums for reasonable Class Counsel fees and expenses, and a class representative incentive award, which is subject of Plaintiffs' contemporaneously filed motion for attorneys' fees, costs and service awards. §§ 3.6.1., 3.7.1; 3.7.2.

### ARGUMENT

As set forth below, the proposed Settlement is fair, reasonable and adequate under Rule 23(e)(2). This Court has already certified a class in this Action which conforms to the proposed Settlement Class. Dkt. 163; § H. Accordingly, the relevant consideration for this motion is whether the settlement is fair, reasonable and adequate under Rule 23(e)(2).

### I.     THE PROPOSED SETTLEMENT SHOULD BE APPROVED

Upon final approval, the Court's duty is to determine whether the proposed Settlement is "fundamentally fair, adequate, and reasonable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). In evaluating the Settlement, the Court is guided by several important policies. First, federal courts favor settlements, particularly in class actions, where the costs, delays and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting the

"strong policy that favors settlements, particularly where complex class action litigation is concerned"). Second, for settlements reached through arms'-length negotiations, courts are to give:

> [P]roper deference to the private consensual decision of the parties. . . . [T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.

*Hanlon*, 150 F.3d at 1027. Under that backdrop, Fed. R. Civ. P. 23(e)(2) sets forth specific criteria that the Court must consider in determining whether a proposed settlement is fair, reasonable and adequate:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>   (i) the costs, risks, and delay of trial and appeal;
>   (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>   (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>   (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). Moreover, Courts in the Ninth Circuit apply several additional factors in evaluating the adequacy of a class action settlement: (1) the

strength of the plaintiffs' case; (2) the extent of discovery completed and the stage of the proceedings; (3) the presence of a governmental participant; and (4) the reaction of the class members of the proposed settlement. *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575-76 (9th Cir. 2004); *see also Jones v. Netcom, Inc. (In re Bluetooth Headset Products Liab. Litig.)*, 654 F.3d 935, 946 (9th Cir. 2011). Most of these factors were also addressed in Plaintiffs' Motion for Preliminary Approval (Dkt. 170) and still weigh strongly in favor of final approval.

**A.    Rule 23(e)(2) Factors Weigh in Favor of Preliminary Approval**
*1.    The Class Representative and Class Counsel Have Adequately Represented the Class – Fed. R. Civ. P. 23(e)(2)(A)*

This Court has already determined that Class Counsel are qualified with substantial experience litigating complex class actions. Dkt. 117, 180; *see also* Dkt. 170-3, 170-7, 170-9, 170-11 (Class Counsel firm resumes). Additionally, the Court has already found the Class Representative has no conflicts with the Class, has participated actively in the case, and is represented by attorneys experienced in class action litigation. Dkt. 117, 180. Accordingly, this factor favors final approval.

*i.    The Proposed Settlement Was Negotiated at Arm's Length– Fed. R. Civ. P. 23(e)(2)(B)*

A non-collusive settlement, negotiated by experienced class counsel with the involvement of a respected mediator, is entitled to "a presumption of fairness." *In re Toys "R" Us-Del., Inc. FACTA Litig.*, 295 F.R.D. 438, 450 (C.D. Cal. 2014); *see also Officers for Justice v. Civil Service Comm'n*, 668 F.2d 615, 625 (9th Cir. 1982)

(court's scrutiny should be "limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.").

The Settlement is the product of many months of negotiations between counsel, including two mediation sessions with an experienced mediator. Sultzer Decl. ¶ 22, Tompkins Decl. ¶ 19. While the parties were quite far apart during the mediations, the private mediation sessions provided a foundation for the settlement. *Id.*; *G. F. v. Contra Costa Cnty.*, 2015 U.S. Dist. LEXIS 100512, at *43 (N.D. Cal. July 30, 2015). Additionally, the Settlement does not bear any signs that the Ninth Circuit has identified as potentially indicating collusion or conflicts of interest:

> (1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded;

> (2) when the parties negotiate a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds; and

> (3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund.

*In re Bluetooth*, 654 F.3d at 946. But in applying "all of these factors, considerations, 'subtle signs,' and red flags, the underlying question remains this: Is the settlement fair?" *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 895 F.3d 597, 611 (9th Cir. 2018). These factors "in the end are just guideposts." *Id.*

As already recognized in the Preliminary Approval Order, there was no collusion with respect to the negotiation of this Settlement. Here, Class Counsel will be paid from the same non-reversionary fund as members of the Class and thus had every reason to negotiate the largest fund possible. § 3.6.1. And, the Settlement Agreement does not allow any of the settlement funds to revert to Defendant (§ 3.2.2) nor is there a "clear sailing" arrangement for the payment of attorneys' fees. This factor weighs strongly in favor of the Court finally approving the Settlement.

ii. *The Relief Provided to the Class is Adequate– Fed. R. Civ. P. 23(e)(2)(C)*

1. *The Costs, Risks, and Delay of Trial and Appeal– Fed. R. Civ. P. 23(e)(2)(C)(i)*

In its evaluation of the Settlement, "the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations, and rough justice." *Officers for Justice*, 688 F.2d at 625. There is "no single formula" to be applied, but the court may presume that the parties' counsel arrived at a reasonable range of settlement by considering the plaintiffs' likelihood of recovery. *Rodriguez v. West Pub. Corp.*, 463 F.3d 948, 965 (9th Cir. 2009); *Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 975 (E.D. Cal. 2012) ("a court assesses "objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach [a settlement]."). Moreover, the Ninth Circuit has expressly rejected any requirement that the settling parties

value maximum damages that can be obtained at trial, as that figure would be inherently speculative. *Lane v. Facebook, Inc.*, 696 F.3d 811, 818 (9th Cir. 2012).

Plaintiffs believe that their claims are meritorious, however the Court's ruling on the cross-motions for summary judgment has narrowed the case for trial to essentially a determination of whether and to what extent Plaintiffs have been damaged. ULV has vigorously contested Plaintiffs' damages model and calculations, including through expert testimony and reports. If the case goes to trial, ULV will undoubtedly continue to contest Plaintiffs' damages model, calculations, and the testimony and opinions of ULV's damages expert. ULV will also present its own expert testimony and argue, as it has from the inception of this Action, that Plaintiff and the Class are not entitled to any damages. Moreover, if Plaintiffs were to obtain a favorable verdict, ULV would likely contest and/or appeal the verdict and thus, create a risk that the verdict will be overturned or reduced and further delay recovery while increasing costs.

In light of the risks and uncertainties presented by a trial, the $2,000,000.00 New Cash Settlement Fund, along with the Increased Financial Aid Benefit and Non-Cash Benefits that have been achieved for the Class for a total settlement value of $8,895,759 is an extraordinary result. "[T]he very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice*, 688 F.2d at 624. Any analysis of a fair settlement amount must account

for the risks of further litigation and trial, as well as expenses and delays associated with continued litigation. *See Retta v. Millennium Prods.*, 2017 U.S. Dist. LEXIS 220288, *15 (C.D. Cal. Aug. 22, 2017).

The Settlement offers substantial cash and non-cash benefits to the Class. The monetary recovery is in line with similar settlements in similar cases. The Non-Cash Benefits provide ongoing recovery to Class Members that they otherwise would not have access to and adds significant value to the Settlement. *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) (approving settlement that provides no monetary benefit but "other valuable benefits not measured in terms of monetary recovery" and holding "It is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness.") (quoting *Officers for Justice*, 688 F.2d at 628). The New Cash and Non-Cash Benefits are all in addition to the benefit of the approximately $6.34 million in Increased Financial Aid for the 2020-2021 academic year that Class Members already received. Indeed, at the hearing on Plaintiff's motion for preliminary approval, ULV's counsel confirmed that the Increased Financial Aid benefit was created as a direct result of the institution of this Action. Sultzer Dec., Ex. A at 20:7 ("As he said, the lawsuit was a catalyst …"). *See Kearney v. Hyundai Motor Am.,* 2013 U.S. Dist. LEXIS 91636, at *17-18 (C.D. Cal. June 28, 2013) (using cost of auto recall as a metric for valuing settlement); *see also Gutierrez v.*

*Stericycle, Inc.*, 2019 U.S. Dist. LEXIS 237817, *12 (crediting the value of individual settlements to the value of the class-wide settlement); *Edwards v. Ford Motor Co.*, 2016 U.S. Dist. LEXIS 59651 (S.D. Cal. Jan. 22, 2016) ("the plaintiff's lawsuit was a catalyst that motivated the defendant to provide the primary relief sought); *see also* Dkt. 180 (""[T]he Court acknowledges that the total value of the settlement here likely exceeds its monetary portion significantly.").

Not including the benefits already obtained by Class Members through the Increased Financial Aid, Class Members will receive a *pro rata* share of the Net Settlement Fund, which is expected to amount to, on average, approximately $423.71 per Class Member, *after* fees and costs. Declaration of Emilio Confinco Regarding Class Notification and Claim Administration ("CPT Decl.") ¶ 16. Additionally, this Settlement is in line with or exceeds settlements reached in other COVID tuition cases, further confirming the reasonableness of the Settlement. *See Rosado v. Barry University*, Inc., No. 1:20-cv-21813 (S.D. Fla. 2021) (final approval with an estimated award of approximately $400 per student, before costs and fees.); *Wright v. Southern New Hampshire University*, No. 1:20-cv-00609 (D. NH. 2021) (final approval with an estimated award of approximately $407 per student, before costs and fees); *Martin v. Lindenwood University*, No. 4:20-cv-01128 (E.D. Mo. 2022) (final approval with an award of approximately $275 per student, before costs and fees).

Given the substantial risks of continued litigation and the significant relief secured for the Class, the proposed Settlement should be viewed as a fair, reasonable, and adequate compromise of the issues in dispute.

### 2. Effectiveness of the Class Notice and Processing of Claims – Fed. R. Civ. P. 23(e)(2)(C)(ii)

A "claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding." Fed. R. Civ. P. 23, 2018 Advisory Committee Notes. The Settlement is particularly strong because Class Members were not required to take any action to participate in the Settlement or receive their monetary benefit. § 2.3.4. However, they were offered the option to receive payment via more modern distribution mechanisms, such as Venmo and PayPal, via an election form provided in the Notice. The cash benefits provided by the Settlement, together with the direct notice program and a simplified claims process, makes the Settlement highly favorable for Class Members.

### 3. The Proposed Attorneys' Fees– Fed. R. Civ. P. 23(e)(2)(C)(iii)

Plaintiffs are seeking attorneys' fees and reasonable litigation costs of $1,100,00.00, which includes $861,587.43 in fees and reimbursement of litigation expenses in the amount of $238,412.57. Such a request represents 9.7% of the Gross

Settlement Fund, which is below the benchmark for awards in this Circuit.[3] *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998); *Carter v. San Pasqual Fiduciary Tr. Co.*, 2018 U.S. Dist. LEXIS 33834, at *22 (C.D. Cal. Feb. 28, 2018). Plaintiffs additionally seek a service award of $5,000 for Named Plaintiff Arredondo and $1,500 each to Class Members Kaylen Henry, Jovanni Echevarria, and Savanah Gherir in recognition of their contributions in support of the Class. Under the Agreement, Class Counsel will receive the applied-for fees and expenses only upon notice and this Court's scrutiny and approval. Because the attorneys' fees and expenses Plaintiffs seek are in line with awards in this Circuit, and for the reasons set forth in Plaintiffs' contemporaneously filed Motion for Attorneys' Fees, Costs, and Service Awards, this factor weighs in favor of final approval.

### 4. There Exists no Agreement Required to Be Identified Under Rule 23(e)(3) – Fed. R. Civ. P. 23(e)(2)(C)(iv)

There are no additional agreements in connection with the Settlement.

### iii. The Proposal Treats Members of the Settlement Class Equitably– Fed. R. Civ. P. 23(e)(2)(D)

The 2018 Committee Notes explain that this factor "calls attention to a concern that may apply to some class action settlements—inequitable treatment of some class members vis-a-vis others. Matters of concern could include whether the

---

[3] *See* concurrently filed Memorandum of Law in Support of Motion for Attorneys' Fees, Litigation Costs, and Service Awards, which discusses in detail the reasonableness of Plaintiffs' application for attorneys' fees and costs as well as why incentive awards are justified.

MEMORANDUM OF POINTS

apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." *Id*.

None of the concerns raised by the 2018 Committee Notes are present here. Each member of the Settlement Class is treated in the same manner with respect to the claims they are releasing and their eligibility for an award, with the amount of the award dependent on the amount of tuition and fees paid for the Spring 2020 Semester by the Class Member, taking into account their financial aid. This approach provides Class Members the ability to obtain a payment commensurate with their potential losses, as compared to other members of the Class.

**B.    The Proposed Settlement Satisfies the *Churchill* Factors**

*Churchill* sets forth the factors that the Ninth Circuit considers in evaluating class action settlements. *See Churchill*, 361 F.3d 566, 575-76. Many of those factors overlap with the Rule 23(e)(2) requirements and are discussed above. *Churchill* sets forth several additional factors which also weigh in favor of preliminary approval in this case: a) the strength of the Plaintiff's case; b) the extent of discovery completed and the stage of the proceedings; c) the presence of a governmental participant; and d) the reaction of the class members of the proposed settlement.

*1.    The Strength of Plaintiff's Case*

Plaintiffs believe that they have built a strong case for damages, the dominant issue remaining in the case. Plaintiffs have presented a damages model and expert

reports that support its argument that students are entitled to a pro rata refund of tuition and fees for the portion of the Spring 2020 semester that ULV did not provide on-campus educational services. Plaintiffs believe that through their expert reports and evidence gathered through discovery they could prove damages at trial. Nonetheless, significant litigation risks and risks of delay exist, which militate in favor of settlement. *See* Section I.A.3.a, *supra*

### iv. The Extent of Discovery Completed and the State of Proceedings

Before entering into settlement discussions on behalf of class members, counsel should have "sufficient information to make an informed decision about settlement." *Linney v. Cellular Alaska P'ship*, 151 F. 3d 1234, 1239 (9th Cir. 1998). "A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair." *Nat'l Rural Telecomms.*, 221 F.R.D. 523, 527-528. "A court is more likely to approve a settlement if most of the discovery is completed because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case." 5 Moore's Federal Practice, § 23.85[2][e] (Matthew Bender 3d ed.).

Here, the Parties have completed all discovery that has included extensive written discovery plus numerous depositions. *See* Sultzer Decl. ¶ 15. ULV produced approximately 5,900 pages of documents in response to multiple requests for production *Id*. Plaintiffs conducted ten depositions of Defendant's representatives

and Defendant deposed Named Plaintiff and three individual Class Members. *Id.* Plaintiffs also produced approximately 3,350 pages of documents in response to ULV's requests. *Id.* Additionally, the Parties exchanged expert reports and rebuttal reports and Defendant deposed Plaintiffs' expert. *Id.* The Parties have also litigated several discovery disputes. Moreover, with the Court's ruling on summary judgment motions in hand, the Parties have "exhaustively examined the factual and legal bases of the disputed claims. This fact strongly militates in favor of the Court's approval of the settlement." *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 527-528.

### v.   The Presence of a Government Participant

As there is no governmental participant in this action, this factor is irrelevant.

### vi.   The Reaction of the Class to the Proposed Settlement

The Settlement Class has reacted entirely favorably to the Settlement, with **zero** objections and only three (3) requests for exclusion out of 2,061 Class Members (which amounts to less than .15% of the Class). *See* CPT Decl. ¶¶ 12-13. The positive reaction of the class supports approval of the settlement. *See, e.g., Jiangchen v. Rentech, Inc.*, No. CV 17-1490-25-GW(FFMx), 2019 U.S. Dist. LEXIS 180474, at *22 (C.D. Cal. Oct. 10, 2019) ("The absence of any objections to the Settlement Agreement among Class Members supports final approval")*; Franco v. Ruiz Food Prods.*, No. 1:10-cv-02354-SKO, 2012 U.S. Dist. LEXIS 169057, at *39 (E.D. Cal. Nov. 27, 2012) ("Where a settlement agreement enjoys overwhelming support from

the class, this lends weight to a finding that the settlement agreement is fair, adequate, and reasonable."); *DIRECTV, Inc.*, 221 F.R.D. at 529 ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members.").

    **C.**    **The Views of Experienced Counsel Should be Given Substantial Weight**

The fact that sophisticated parties with experienced counsel have agreed to settle their dispute should be given considerable weight by courts, since "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). Here, the Parties achieved a settlement after a thorough analysis of the facts and issues, including a rigorous analysis of the Parties' claims and defenses after extensively litigating the issues. The Parties were represented by experienced counsel possessing significant experience in complex commercial and class action matters. Dkt. 117; 170-3; 170-7; 170-9; 170-11. Similarly, Class Counsel, including LBL and SLG, are litigating several similar actions across the country and are acutely aware of the risks associated with the COVID-19 refund litigation cases, including claims related to tuition and/or fees. Likewise, ULV's counsel, Call & Jensen PC, is a renowned law firm. The Parties' recommendation to approve this Settlement should therefore "be

MEMORANDUM OF POINTS

given great weight." *Eisen v. Porsche*, 2014 WL 439006, at \*5 (C.D. Cal. Jan. 30, 2014) .

## II.   THE NOTICE TO SETTLEMENT CLASS WAS PROPER

The federal rules require that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Where the settlement class is certified pursuant to Rule 23(b)(3), the notice must also be the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

The Court Appointed settlement administrator, CPT Group ("CPT"), successfully implemented the Court approved Notice Plan and sent direct email or mail Notice to the 2,061 Class Members identified in the Class List provided by Defendant. *See* § 2.3.1; CPT Decl. ¶9. The Notice informed Class Members of the substantive terms of the Settlement. It advised Class Members of their options for opting out of or objecting to the Settlement, and how to obtain additional information about the Settlement. *See* Ex. B.

CPT also established a Settlement Website that provided additional information on the Settlement, and provided copies of this Settlement Agreement, Notice, and other pertinent documents and Court filings. § 2.3.5; CPT Decl. ¶ 10. All Class Members had a full opportunity to object or exclude themselves from the Settlement. Additionally, as noted above, Class Members were not required to take

any action to participate in the Settlement and will receive settlement checks in the mail upon final approval of the Settlement (§ 2.3.4), but they were offered the option to submit an election form to opt to receive payment via electronic distribution mechanisms. The notice methods utilized here complied with the direction of the Preliminary Approval Order. *See, generally*, CPT Decl. Accordingly, the Settlement meets the requirements for reasonable notice in order to obtain final approval.

## **CONCLUSION**

Plaintiffs respectfully request that the Court enter the accompanying proposed Final Approval Order and Judgment: (i) finally approving class action settlement; (ii) confirming Plaintiff's appointment as class representative; (iii) confirming appointment of Class Counsel; and (iv) confirming certification of the Class (see Fed. R. Civ. P. 23(c)).

Date: March 13, 2023          **THE SULTZER LAW GROUP, P.C.**

/s/ *Jason Sultzer*
Jason P. Sultzer, Esq.*
Mindy Dolgoff, Esq.*
270 Madison Avenue, Suite 1800
New York, NY 10016
Tel. (845) 483-7100
*Admitted Pro Hac Vice

**LEEDS BROWN LAW, P.C.**
Jeffrey K. Brown, Esq.*
Michael A. Tompkins, Esq.*
Brett R. Cohen, Esq.
One Old Country Road, Suite 347

25

Carle Place, NY 11514
Telephone: (516) 873-9550
*Admitted Pro Hac Vice

**SHOOP, A PROFESSIONAL LAW CORPORATION**
David R. Shoop, Esq.
Thomas S. Alch, Esq.
9701 Wilshire Blvd., Suite 950
Beverly Hills, California 90212
Tel. (310) 620-9533

**CHARON LAW**
Perry L. Segal, Esq.
303 Twin Dolphin Drive, Suite 600
Redwood City, California 94065
Tel. (650) 542-7935

*Counsel for Plaintiff Brianna Arredondo and the Certified Class*

MEMORANDUM OF POINTS